**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN OF TEXAS**

| | |
|---|---|
| AARON HIRSCH, individually and on behalf of all others similarly situated, | : <br> : NO. 4:18-cv-245 <br> : |
| Plaintiff, | : <br> : <br> : COMPLAINT - CLASS ACTION |
| v. | : <br> : |
| USHEALTH ADVISORS, LLC and USHEALTH GROUP, INC., | : JURY TRIAL DEMANDED <br> : <br> : |
| Defendants. | : |

**CLASS ACTION COMPLAINT**

Plaintiff Aaron Hirsch, ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint") against Defendants USHealth Group, Inc. and USHealth Advisors, LLC ("Defendants" or "USHealth"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

**INTRODUCTION**

1. Plaintiff brings this Complaint against Defendants to secure redress because Defendants willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA") and Maryland Telephone Consumer Protection Act, Md. Code, Com. Law, § 14-3201, *et seq.* ("MD TCPA"), and invaded Plaintiff's privacy by causing unsolicited calls to be made to Plaintiff, as well as to members of the Classes (defined below), through the use of an auto-dialer and/or artificial or prerecorded voice message.

2. Defendants made their unauthorized calls without the recipient's consent either using an automatic telephone dialing system ("ATDS") and/or a prerecorded voice. The calls were for the purpose of telemarketing and soliciting business from Plaintiff and members of the Classes.

1

3. The TCPA and MD TCPA were enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Classes under the TCPA and MD TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

**PARTIES**

4. Plaintiff Aaron Hirsch is a citizen of Maryland and resides in Montgomery County, Maryland.

5. Defendant USHealth Group, Inc. is a corporation organized under the laws of Delaware and maintains its principal place of business in Ft. Worth, Texas. It is an insurance holding company that purports to focus on providing innovative health coverage for self-employed individuals and small business owners. The Company sells insurance from its wholly-owned subsidiary health insurance, Freedom Life Insurance Company of America and National Foundation Life Insurance Company, through its wholly-owned subsidiary USHealth Advisors LLC.

6. Defendant USHealth Advisors, LLC is a limited liability company organized under the laws of Texas and maintains its principal place of business in Ft. Worth, Texas. It is a wholly-owned national health insurance distribution arm of USHealth Group, Inc. that sells individual health coverage and supplementary products underwritten by The Freedom Life Insurance Company of America and National Foundation Life Insurance Company.

7. Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was

2

committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

9. The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of each of the Classes is a citizen of a state different from Defendants'. Further, each of the Classes include at least 100 members.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12. Defendants are subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its principal offices which are located in this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## THE TCPA AND REGULATIONS

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can

be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

15. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place prerecorded telemarketing calls to residential lines. Amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption. Therefore, all prerecorded telemarketing calls to residential lines and all ATDS or prerecorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

16. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

4

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit certain calls to members of the National Do Not Call Registry ("NDNC").

17. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012).

18. Accordingly, an entity may be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity that directly placed the call.

19. Finally, the TCPA established the NDNC, as well as the requirement that all businesses that place calls for marketing purposes maintain an "internal" Do Not Call list ("IDNC list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC

list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the NDNC. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC violates the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

20. The NDNC allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the NDNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the NDNC. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

## COMMON FACTUAL ALLEGATIONS

22. Defendants operate a health insurance services business that purportedly offers insurance products to individuals and others. Unfortunately for consumers, Defendants utilized (and continue to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their goods and services. Defendants are believed to have obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

23. In Defendants' overzealous attempt to market their services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendants. Defendants knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients, and continued to make calls after requests that the calls stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Classes, but also intentionally and repeatedly violated the TCPA.

## FACTUAL BACKGROUND AS TO PLAINTIFF

24. On June 30, 2003, Plaintiff registered on the NDNC his cellular telephone assigned a number ending in 8313, and that telephone number has remained on the NDNC since that time.

25. Plaintiff uses the cellular telephone assigned a number ending in 8313 as his personal and residential telephone number.

26. During the period from November to December of 2017, Defendants contacted Plaintiff on his cellular telephone number ending in 8313 using an ATDS which had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers, as defined by 47 U.S.C. § 227(a)(1), multiple times without first obtaining Plaintiff's written consent and in violation of the NDNC.

27. Plaintiff received all calls as described above on his cellular telephone assigned a number ending in 8313.

28. On November 10, 2017, Plaintiff received on his cellular telephone a telemarketing call made by or on behalf of Defendants. In making that call, the caller used an ATDS. Plaintiff's caller ID showed "443-328-4533".

29. During the call on November 10, 2017, Plaintiff spoke with an operator who touted potential savings on health insurance and sought to have another operator make a call back with further details on an offer for health insurance. Plaintiff did not object to speaking to another operator so that he could identify the company that was calling him. Thereafter, the caller identified the company calling as USHealth Advisors and advised that the company's website address is "ushealthfamily.com," plaintiff then asked to be added on the company's do-not-call list and disconnected the call.

30. The website at "www.ushealthfamily.com" is the corporate website for defendant USHealth Group, Inc. The home page includes a picture of Troy McQuagge, the Chief Executive Officer of the company, and the pictures and names of "some our [its] Dedicated Agents", who

7

are located across the country, including in Arizona, Colorado, Florida, North Carolina, Oklahoma, Tennessee, and Texas, among others. The website provides additional information about the company and its products, and allows users to seek a free quote on insurance and to talk with a company representative. The website states that it is copyrighted by USHealth Group.

31. A related website for USHealth Group at "www.ushealthgroup.com" includes additional information about USHealth products, as well as about the business operations and personnel of USHealth, including press releases that state:

32. "USHEALTH Group, Inc. is an insurance holding company based in Ft. Worth, Texas focused on providing innovative health coverage for self-employed individuals and small business owners. The goal of USHEALTH is to combine the talents of its employees and agents to market competitive and profitable insurance products, while providing superior customer service in every aspect of the company's operations."; and

33. "USHEALTH Advisors was founded in 2009 as Security Health Advisors, L.L.C. It is a wholly-owned national health insurance distribution arm of USHEALTH Group, Inc. The company sells individual health coverage and supplementary products underwritten by The Freedom Life Insurance Company of America and National Foundation Life Insurance Company, wholly-owned subsidiaries of USHEALTH Group, Inc. The company is focused on serving America's self-employed, small business and individual insurance market through its captive Agent sales force."

34. On November 13, 2017, Plaintiff received on his cellular telephone a telemarketing call made by or on behalf of Defendants. In making that call, the caller used an ATDS. Plaintiff's caller ID showed "813-300-2446," which is listed on one of the USHealth company websites for USHealth Advisors Agent RJ Martin, http://www.ushagent.com/rjmartin, where US Health also prominently holds RJ Martin out as part of USHealth Group:





http://www.ushagent.com/rjmartin[1/24/2018 1:09:47 PM]

35. During the call on November 13, 2017, Plaintiff spoke with an operator, who based on the facts in paragraph 34 was likely RJ Martin, who was following up on the November 10, 2017 call. The caller sought to market and sell USHealth insurance products to Plaintiff. The caller identified the company calling as USHealth Advisors and that the company's website address is "ushealthfamily.com."

9

36. Plaintiff requested that the caller put Plaintiff on the company's do-not-call list. Plaintiff then disconnected the call.

37. On December 1, 2017, Plaintiff received on his cellular telephone a telemarketing call made by or on behalf of Defendants. In making that call, the caller used an ATDS. Plaintiff's caller ID showed "443-328-4533."

38. During the call on December 1, 2017, Plaintiff spoke with an operator who identified himself as Jim White. White sought to market and sell USHealth insurance products to Plaintiff. White identified the company calling as USHealth and advised that the company's website address is "ushealthfamily.com".

39. Plaintiff requested that White put Plaintiff on the company's do-not-call list. White asked "why" and plaintiff responded with frustration that he was already on the do-not-call list. Plaintiff then disconnected the call.

40. White is a corporate officer of both US Health Advisory and USHealth Group. Specifically, he is, for the past 16 years, Senior Vice President of Agency Services for USHealth Advisory, and for the past six years, Vice President of Agency Services for USHealth Group.

41. White's LinkedIn online profile states as follows:



Jim White • 3rd
Sr Vice President Field Sales at USHEALTH Advisors
USHEALTH Advisors • East Carolina University
Dallas/Fort Worth Area • 468



Experience

Sr Vice President Field Sales
USHEALTH Advisors
Dec 2016 – Present • 1 yr 4 mos

Sr Vice President Agency Services
USHEALTH Advisors
Mar 2012 – Present • 6 yrs 1 mo

VP Agency Services
USHealth Group
2002 – Present • 16 yrs

https://www.linkedin.com/in/jim-white-896b90a/[3/5/2018 12:14:11 PM]

42. Plaintiff did not have a prior business relationship with Defendants, nor was Plaintiff interested in Defendants' services.

43. Plaintiff did not consent to being called by Defendants for telemarketing purposes and the calls received from Defendants were an intrusion into Plaintiff's privacy and caused Plaintiff annoyance and an unnecessary expenditure of his time and efforts.

44. Plaintiff is the exclusive user of the cellular telephone assigned the number ending in 8313 and the account holder of record for that Verizon account.

## LEGAL BASIS FOR CLAIMS

45. With respect to Plaintiff, Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

46. Plaintiff did not provide Defendants prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or prerecorded voice, pursuant to 47 U.S.C. § 227(b)(1)(A).

47. All calls Defendants made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1) and/or 47 U.S.C. § 227(c).

48. Plaintiff has reason to believe that Defendants have called, and continue to call, thousands of wireless telephone customers to market their products and services without the consent required by the TCPA and/or in violation of the NDNC.

49. Defendants' repeated violations of the NDNC demonstrate that Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA and the rules and regulations promulgated thereunder.

50. In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls to cellular phones and to residential phones that have been registered on the NDNC.

51. On behalf of Plaintiff and the Classes, Plaintiff seeks an injunction requiring Defendants to cease all telemarketing to consumers on their cellular telephones and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Classes, which include:

   a. The "ATDS Class," consisting of all individuals in the United States who received a call made by or on behalf of USHealth to the individual's cellular telephone through the use of an automatic telephone dialing system, or prerecorded or artificial voice, or any other device having the capacity to dial numbers without human intervention, within four years prior to the commencement of this litigation through the date that class notice is disseminated, where Defendants' records fail to indicate prior express written consent from the recipient to make such call;

   b. The "NDNC Class," consisting of all persons in the United States who, within four years prior to the commencement of this litigation through the date that class notice is disseminated, received two or more calls during a twelve month period made by or on behalf of USHealth on their residential telephone number that had been registered on the National Do Not Call Registry;

   c. The "Maryland ATDS Class," consisting of all individuals in Maryland who received a call made by or on behalf of USHealth to the individual's cellular telephone through the use of an automatic telephone dialing system, or prerecorded or artificial voice, or any other device having the capacity to dial numbers without human intervention, within three years prior to the commencement of this litigation through the date that class notice is disseminated, where Defendants' records fail to indicate prior express written consent from the recipient to make such call; and

   d. The "Maryland NDNC Class," consisting of all persons in Maryland who, within three years prior to the commencement of this litigation through the date that class notice is disseminated, received two or more calls during a twelve month period made by or on behalf of USHealth on their residential telephone number that had been registered on the National Do Not Call Registry.

53. Plaintiff reserves the right to modify the Class definitions as warranted as additional facts became known upon further investigation and discovery.

54. Plaintiff and the Class members were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Classes *via* their cellular and residential telephones by using an ATDS, thereby causing Plaintiff and the Classes to incur certain telephone charges or reduce telephone time for which Plaintiff and the Class members paid, and by invading the privacy of Plaintiff and the Classes.

55. The exact size of each of the Classes is presently unknown but can be ascertained through a review of Defendants' records and the NDNC, and it is clear that individual joinder is impracticable. Defendants made telephone calls to thousands of consumers who fall into the definition of each of the Classes.

56. There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

57. Common questions for the Classes include, without limitation:

    a. Whether Defendants' conduct violated the TCPA and MD TCPA;

    b. Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after October 16, 2013, and/or continued to make calls after being requested to stop;

    c. Whether Class members are entitled to treble damages based on the knowing and willfulness of Defendants' conduct;

    d. Whether Defendants systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made

    with the prior express written consent of the called party) using any automatic dialing system or prerecorded voice to any telephone number assigned to a cellular phone service;

  e. Whether Defendants violated the TCPA by making telemarketing calls to telephone numbers that had been registered on the NDNC; and

  f. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

  58. Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

  59. Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions.

  60. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

  61. This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole.

  62. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

  63. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

64. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

65. Thus, without class certification it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct.

66. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

67. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

68. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

69. Defendants, either directly or through its agents, made unsolicited and unauthorized calls using an ATDS or pre-recorded/artificial voice to Plaintiff's and the ATDS Class members' cellular telephones for the purpose of marketing Defendants' products and/or services.

70. Defendants, either directly or through their agents, made the calls without obtaining prior express written consent from Plaintiff and the ATDS Class.

71. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

72. Defendants' conduct invaded the privacy of and caused annoyance to, Plaintiff and the ATDS Class.

73. As a result of Defendants' violations of the TCPA, Plaintiff and the ATDS Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Plaintiff and the ATDS Class are also entitled to, and seek injunctive relief prohibiting, such conduct in the future.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

75. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

76. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants, Plaintiff and members of the ATDS Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## THIRD CAUSE OF ACTION
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)

77. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

78. Defendants made telemarketing calls to Plaintiff and the NDNC Class without obtaining prior express written consent and in violation of the NDNC.

79. Defendants made telemarketing calls to the residential telephone numbers of Plaintiff and the NDNC Class.

80. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to the above-cited provisions of 47 U.S.C. § 227, *et seq*.

81. Defendants' conduct invaded the privacy of Plaintiff and the NDNC Class.

82. As a result of Defendants' violations of the TCPA, Plaintiff and the NDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

83. Plaintiff and the NDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### FOURTH CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)

84. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

85. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the NDNC Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5)(B).

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE MD TCPA, MD. CODE, COM. LAW, § 14-3201

86. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

87. As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendants, Plaintiff and members of the Maryland ATDS Class are entitled to damages of up to $500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF THE MD TCPA, MD. CODE, COM. LAW, § 14-3201

88. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

89. As a result of violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the Maryland NDNC Class are entitled to damages of up to $500 for each and every telemarketing call made to their residential telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c).

### JURY DEMAND

Plaintiff and the Classes demand a jury trial on all issues so triable.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests the following relief:

    a. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Butzel Long, P.C. and Berger & Montague, P.C. as Class Counsel;

    b. An award of actual or statutory damages for each and every violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B), § 227(c)(5)(B), and MD. Code, Com. Law, § 14-3202;

    c. An award of treble actual or statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B), and § 227(c)(5)(B);

    d. Injunctive relief prohibiting Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A), and § 227(c)(5);

   e. An award to Plaintiff and the Classes for their reasonable costs and expenses incurred in this action, including attorney's fees and expert fees to the full extent permitted by law, including without limitation MD Code, Com. Law, § 14-3202;

   f. Pre-judgment and post-judgment interest on monetary relief; and

   g. All other and further relief as the Court deems necessary, just and proper.

Dated: March 29, 2018       Respectfully submitted,

*/s/ Warren T. Burns*
Warren T. Burns, Texas Bar No. 24053119
Daniel Charest, Texas Bar No. 24057803
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904.4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

Michael Dell'Angelo
Arthur Stock
Lane L. Vines
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
mdellangelo@bm.net
lvines@bm.net

Max F. Maccoby
Thomas Bick
**BUTZEL LONG, P.C.**
1909 K Street, NW, Suite 500
Washington, D.C. 20006
Telephone: (202) 454-2800
Facsimile: (202) 454-2805
maccoby@butzel.com
bick@butzel.com

*Attorneys for Plaintiff and Proposed Classes*