**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 4:18-cv-245-Y** |
| | : | |
| **USHEALTH ADVISORS, LLC and USHEALTH GROUP, INC.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF/COUNTERCLAIM
DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS**

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 5

ARGUMENT ................................................................................................................ 7

I.  Defendants Fail to State a Claim for Fraud .......................................................... 9

    A.  Defendants Fail to Particularize Allegations as to Actionable False Statements or Omissions and Any Intent by Plaintiff to Defraud ................................................. 10

    B.  Defendants Fail to Plausibly Allege Detrimental Reliance .................................. 12

II.  Defendants Improperly Attempt to Shoehorn as Fraud Counterclaims Their Own Denials of Wrongdoing and Related Affirmative Defenses .................................................. 13

III.  Defendants' Additional Averments Are Baseless and Irrelevant ......................... 14

    A.  Defendants' Assertion that Plaintiff Is a Professional Litigant is Baseless ........... 14

    B.  Plaintiff's Alleged Use of His Phone for Business Purposes is Irrelevant ........... 17

    C.  Plaintiff's Alleged "Friendship" with His Counsel is Irrelevant, Although the Veiled Insinuations of Attorney Misconduct are Scandalous and Improper. ........ 18

IV.  Defendants' Contrived Counterclaims Amount to Vexatious Litigation ............. 20

CONCLUSION ............................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Abramson v. CWS Apt. Homes*,
   No. 16-cv-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016) ............................ 16

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975)........................................................................................................ 13

*Ammons v. Ally Fin., Inc.*,
   326 F. Supp. 3d 578 (M.D. Tenn. 2018) ................................................................................ 8

*Aranda v. Caribbean Cruise Line, Inc.*,
   202 F. Supp. 3d 850 (N.D. Ill. 2016) .................................................................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................... 7, 10

*Augustus v. Bd. of Pub. Instruction*,
   306 F.2d 862 (5th Cir. 1962) ............................................................................................ 14

*Avdeef v. Rockline Indus., Inc.*,
   No. 4:12-cv-879-Y, 2013 WL 12099295 (N.D. Tex. Apr. 4, 2013)........................................... 5

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*,
   No. 13-cv-4577, 2019 U.S. Dist. LEXIS 43985 (S.D.N.Y. Mar. 18, 2019)............................ 16

*Barragan v. Gen. Motors LLC*,
   No. 4:14-cv-93-DAE, 2015 WL 5734842 (W.D. Tex. Sept. 30, 2015)................................. 2, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................... 7

*Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*,
   461 F. Supp. 2d 757 (S.D. Ill. 2006).................................................................................. 13

*Carmichael v. Nissan Motor Acceptance Corp.*,
   291 F.3d 1278 (11th Cir. 2002) .......................................................................................... 8

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)......................................................................................................... 20

*Choi v. 8th Bridge Capital, Inc.*,
   No. 2:17-cv-08958CASAFMX, 2018 WL 3469053 (C.D. Cal. July 16, 2018) ...................... 19

ii

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
    654 F. Supp. 2d 536 (N.D. Tex. 2009) ..................................................................... 8

*Cunningham v. Mark D. Guidubaldi & Assocs., LLC*,
    No. 4:18-cv-00118ALMCAN, 2019 WL 1119365 (E.D. Tex. Jan. 11, 2019) ......................... 16

*Cunningham v. Rapid Response Monitoring Servs.*,
    251 F. Supp. 3d 1187 (M.D. Tenn. 2017)................................................................. 16

*Daniels v. Ortolani*,
    No. 3:14-CV-2665-L, 2015 WL 783689 (N.D. Tex. Feb. 24, 2015).................................. 9

*Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*,
    121 F.R.D. 284 (1988) .......................................................................................... 4

*Edwards v. General Motors Corp.*,
    153 F.3d 242 (5th Cir. 1998) ............................................................................... 20

*FDIC v. F.S.S.S.*,
    829 F. Supp. 317 (D. Alaska 1993) ....................................................................... 13

*FDIC v. Niblo*,
    821 F. Supp. 441 (N.D. Tex. 1993) ....................................................................... 14

*Federal Deposit Ins. Corp. v. Patel*,
    46 F.3d 482 (5th Cir. 1995) ................................................................................. 12

*Ferguson v. Extraco Mortg. Co.*,
    264 Fed. Appx. 351 (5th Cir. 2007)......................................................................... 5

*Fitzhenry v. ADT Corp.*,
    No. 14-cv-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ...................................... 16

*Ginsburg v. ICC Holdings, LLC*,
    No. 3:16-cv-2311-D, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) ............................. 7, 10

*Heard v. Nationstar Mortg. LLC*,
    No. 16-cv-00694-MHH, 2018 WL 4028116 (N.D. Ala. Aug. 23, 2018) ............................. 8

*Hinfin Realty Corp. v. Pittston Co.*,
    206 F.R.D. 350 (E.D.N.Y. 2002) .......................................................................... 13

*Hitchman v. National Enter. Sys., Inc.*,
    No. 12-cv-61043, 2014 WL 912363 (S.D. Fla. Mar. 10, 2014) ...................................... 8

*In re Smith*,
    No. 11-adv-05136, 2012 WL 1123049 (Bankr. W.D. Tex. Apr. 3, 2012) ........................ 2, 3

*Ingram v. Glast, Phillips & Murray*,
    196 F. App'x 232 (5th Cir. 2006) ......................................................... 20

*Ins. Co. of N. Am. v. Morris*,
    981 S.W.2d 667 (Tex. 1998).................................................................. 8

*Johansen v. GVN Michigan, Inc.*,
    No. 15-cv-00912, 2015 WL 3823036 (N.D. Ill. June 18, 2015)........................................ 10, 11

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ................................................................ 14

*Kron v. Grand Bahama Cruise Line, LLC*,
    328 F.R.D. 694 (S.D. Fla. 2018)............................................................... 11

*Low v. Robb*,
    No. 11-cv-2321 JPO, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ......................................... 19

*McCully v. Stephenville Indep. Sch. Dist.*,
    No. 4:13-cv-702-A, 2013 WL 6768053 (N.D. Tex. Dec. 23, 2013)........................................ 20

*McCurley v. Royal Seas Cruises, Inc.*,
    No. 17-cv-00986-BAS-AGS, 2019 WL 1383804 (S.D. Cal. Mar. 27, 2019) ........................ 17

*Mey v. Venture Data, LLC*,
    245 F. Supp. 3d 771 (N.D.W. Va. 2017) ...................................................... 17

*MidAmerican Communications Corp. v. U.S. West Communications, Inc.*,
    857 F. Supp. 772 (D. Colo.1994)............................................................... 13

*Morris v. Unitedhealthcare Ins. Co.*,
    No. 4:15-cv-00638-ALM-CAN, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016)...................... 16

*Nat'l Cas. Co. v. Gonzalez*,
    No. 5:13-cv-226-C, 2014 WL 11515563 (N.D. Tex. June 11, 2014)....................................... 14

*Plotkin v. IP Axess, Inc.*,
    407 F.3d 690 (5th Cir. 2005) ...................................................................... 8

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ............................................................ 1, 2, 5, 6

*Reece v. U.S. Bank Nat. Ass'n*,
    No. 4:13-cv-982-O, 2014 WL 301022 (N.D. Tex. Jan. 28, 2014)............................................ 1

*Shelton v. Nat'l Gas & Elec., LLC*,
    No. 17-cv-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019)............................................ 15, 16

*Telerep Carbide, Inc. v. Zambrano,*
    266 F. Supp. 2d 284 (D.P.R. 2003) .......................................................................... 11

*Williams v. WMX Techs., Inc.,*
    112 F.3d 175 (5th Cir. 1997) ...................................................................................... 9

**Statutes**

28 U.S.C. § 1927 .................................................................................................................. 4, 20

47 U.S.C. § 227 .................................................................................................................... 3, 15

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................... 7, 9, 10, 11

Fed. R. Civ. P. 12 .......................................................................................................... 1, 14, 19

Fed. R. Evid. 201(b) .............................................................................................................. 2, 5

Fed. R. Evid. 801(d)(2) .............................................................................................................. 2

**Regulations**

47 C.F.R. § 64.1200 ................................................................................................................ 3, 4

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Plaintiff-Counterclaim Defendant Aaron Hirsch ("Plaintiff") respectfully submits this memorandum of law in support of his Motion to Dismiss the Counterclaims (Dkt. 43) filed by Defendant-Counterclaim Plaintiff USHealth Advisors, LLC ("USHA") and USHealth Group, Inc.'s ("USHG") (collectively, "USHealth").[1]

## INTRODUCTION

This class action arises under the Telephone Consumer Protection Act ("TCPA") for unsolicited telemarketing calls and texts made by Defendants to Plaintiff and other consumers in violation of the National Do Not Call Registry ("NDNC") and Defendant's internal do not call list ("IDNC"). Dkt. 42, Amended Complaint at ¶ 2.[2] As Plaintiff has alleged, Defendants routinely violate the TCPA in marketing USHealth insurance policies to consumers by making thousands of unlawful telemarketing calls every day.  Defendants do so by contractually engaging some 3,500 licensed captive insurance agents to make hundreds of thousands of telemarketing calls without regard to whether the telemarketing leads they purchase have been "scrubbed" to remove numbers listed on the NDNC Registry or Defendants' own IDNC list. Amended Complaint at ¶¶ 23-26. This total disregard of any internal NDNC and IDNC compliance predictably results in thousands of daily TCPA violations, thereby annoying and frustrating thousands of consumers, including Plaintiff. While Defendants admittedly purchase telemarketing leads from numerous lead

---

[1]  For clarity, Aaron Hirsch is identified in both the operative Amended Class Action Complaint ("Amended Complaint") (Dkt. 42) and Defendants' Answer and Counterclaims thereto (Dkt. 43) as the "Plaintiff", and USHealth as the "Defendants."

[2]  "'Generally, a court ruling on a 12(b)(6) motion may rely on the complaint [or pleading], its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Reece v. U.S. Bank Nat. Ass'n*, No. 4:13-cv-982-O, 2014 WL 301022, at *3 (N.D. Tex. Jan. 28, 2014), *aff'd*, 762 F.3d 422 (5th Cir. 2014) (citing *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted)). Here, Defendants' Counterclaims incorporate by reference the allegations and claims in the operative Amended Complaint (Dkt. 42). *See, e.g.*, Counterclaims at ¶ 13. Accordingly, the Court may take judicial notice of Plaintiff's claims and allegations.

generation vendors for their agents (leads that should have been scrubbed for consumers listed on the NDNC and IDNC), those leads represent only about 15% of the total telephone numbers called. Of the remaining 85% of telemarketing leads purchased by agents, Defendants admittedly reimburse their agents for those telemarketing leads *without having any idea* if those leads have been scrubbed for either the NDNC or IDNC lists, to wit, Defendants admit that: "USHEALTH contracts with thousands of independent contractors, also called independent insurance agents, who conduct their own marketing. *Some may use lawful telemarketing, others do not.*" *See* Appendix hereto, Declaration of Max F. Maccoby, at Ex. A, Defendants' Supplemental Response to Plaintiff's First Document Request No. 4 (emphasis added).[3]

Defendants speciously contend that the thousands of telemarketing calls made by their agents in violation of the TCPA are *not their responsibility* since the violations of the TCPA were done by their agents, not Defendants themselves. Amended Complaint at ¶¶ 27-29. While ignoring the TCPA, federal law and basic agency law, Defendants have and continue to reap the benefits from their massive unlawful telemarketing operation that annually generates hundreds of millions of dollars in revenue for Defendants.

---

[3] "A court may consider judicially noticeable facts on a motion to dismiss for failure to state a claim." *Barragan v. Gen. Motors LLC*, No. 4:14-cv-93-DAE, 2015 WL 5734842, at *7 (W.D. Tex. Sept. 30, 2015) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)). "A fact may be judicially noticed if it is not subject to reasonable dispute because it 'is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (citing Fed. R. Evid. 201(b)). "[A]dmissions are, by definition, not reasonably subject to dispute by the parties who enter into them." *In re Smith*, No. 11-adv-05136, 2012 WL 1123049, at *3 (Bankr. W.D. Tex. Apr. 3, 2012); *accord* Fed. R. Evid. 801(d)(2).

Plaintiff's cell phone number has been registered on the NDNC since June 30, 2003. Amended Complaint at ¶ 30.[4] Notwithstanding that, Defendants made at least three unwanted telemarketing calls to Plaintiff in November and December 2017. Amended Complaint at ¶¶ 34-45.  On the second call, which was received on November 13, 2017, Plaintiff asked to be put on Defendant's IDNC list. Amended Complaint at ¶ 42. Nevertheless, *after* Plaintiff filed this action on March 29, 2018, Defendants' agents have called and texted Plaintiff **ten more times in 2018** (twice in May and twice in July, three times in August, once in October, and twice in November), and **one more time on March 2, 2019 – nine days before Defendants filed their Counterclaims**. Amended Complaint at ¶¶ 53-54. During each of those calls and texts where USHA identified itself, Plaintiff asked those agents to put him on Defendants' IDNC list.  Amended Complaint ¶¶ 34-54. As alleged, all of the 14 telemarketing calls made by Defendants violated 47 U.S.C. § 227(c) (prohibiting telemarketing calls to numbers on the NDNC), and 12 of the 14 calls violated 47 C.F.R. § 64.1200(d) (prohibiting telemarketing calls to numbers listed on an internal do not call list).

In a misguided and improper maneuver, Defendants have now decided to defend against Plaintiff's allegations by leveling Counterclaims for fraud against Plaintiff in a transparent attempt

---

[4] *See* Appendix hereto, Declaration of Max F. Maccoby, at Ex. B, attaching confirmation attesting to the registry of Plaintiff's telephone number on the National Do Not Call website maintained by the federal government, at <https://www.donotcall.gov/confirm/conf.aspx>. "The NDNC allows consumers to register their residential landline and cellular telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2) and (e). A listing on the NDNC 'must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.' *Id.*" *See* Amended Complaint at ¶ 19. "A fact may be judicially noticed if it is not subject to reasonable dispute because it 'is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Barragan v. Gen. Motors LLC*, 2015 WL 5734842, at *7 (citing *Wolcott v. Sebelius*, 635 F.3d at 763 (citing Fed. R. Evid. 201(b)). A confirmation from an official government website fits squarely in the definition of a source whose accuracy cannot reasonably be questioned.

to intimidate him into dismissing his TCPA lawsuit. The gist of the Counterclaims is that Plaintiff is a "professional litigant" who somehow invited Defendants' telemarketing calls, (but even then as to only three of the 14 telemarketing calls Defendants made to Plaintiff), to allow Plaintiff to bring this litigation for profit. Defendants' contention is nonsensical and baseless.

The three telemarketing calls cited in the Counterclaims were made by Defendants' vendor, who then failed to identify on whose behalf it was calling – a violation itself of the TCPA (*see, e.g.*, 47 C.F.R. §§ 64.1200(b)(1), (d) (delivery restrictions)). Plaintiff's request to be called back was simply to find out who was calling him in first instance, something that does not equate to legal consent for any of the 14 telemarketing calls that have been made to Plaintiff thus far. Tellingly, Defendants' Counterclaims say nothing about the other eleven telemarketing calls Plaintiff received, which is a tacit admission that Defendants have violated the TCPA (or those calls would presumably be part of the alleged Counterclaims).

As Defendants are well aware, their recourse for disputing the impropriety of the three calls forming the basis of their Counterclaims is to assert denials in the form of an Answer and Affirmative Defenses – something Defendants have done. *See* Dkt. 43, Answer at 10-13 (asserting 17 Affirmative Defenses). Defendants' additional filing of fraud Counterclaims to underscore their own denials may create a desired *in terrorem* effect but it also diverts the attention and resources of the Court and the parties by unnecessarily multiplying the litigation. Such tactics are the hallmark of vexatious litigation proscribed 28 U.S.C. § 1927 and are in contravention of the principals set forth in *Dondi Properties Corp. v. Commerce Savings and Loan Ass'n,* 121 F.R.D. 284 (1988) ("*Dondi*").

If Defendants are successful in defeating Plaintiff's claims, Defendants can thereafter seek costs or other redress based on the inherent powers of the Court or otherwise, if and only as may

4

be allowed by law. Defendants, however, should not be permitted to proceed on contrived Counterclaims. Allowing such tactics would give unlawful telemarketers a free hand to overwhelm consumers with unconsented sales calls while allowing such callers to personally threaten anyone who would dare to complain. As demonstrated below, Defendants' Counterclaims should dismissed as a matter of law for failure to state a claim under Rule 12(b)(6) and for lack of particularity under Rule 9(b).

## STATEMENT OF FACTS

The dearth of particularized averments, let alone a basic failure to allege a plausible claim, dooms Defendants' Counterclaims at the outset. Here, Defendants attempt to string together conclusory statements to turn their denials of wrongdoing into affirmative claims for fraud.

Defendants first contend that Plaintiff is a "professional plaintiff under the TCPA" because he has filed "multiple lawsuits" (though they do not say how many) and then aver that he maintains a spreadsheet of "hundreds" of telephone calls for the "sole purpose of filing lawsuits under the TCPA. Counterclaims ¶¶ 5-6. Notwithstanding Defendants' lack of particularity, the Court can take judicial notice that Plaintiff has only filed two other TCPA actions, both in 2017; these include *Aaron Hirsch v. TranzVia, LLC*, No. 4:17-cv-00763 in U.S. District Court, Eastern District of Texas (dismissed voluntarily after settlement) and *Aaron Hirsch v. Fortegra Financial Corporation, et al.*, No. 3:17-cv-01215-BJD-JBT in U.S. District Court, Middle District of Florida (pending).[5] Even so, those filings were prompted by Plaintiff's receipt of unconsented calls from other mass telemarketers. The Court can also take judicial notice that Plaintiff has registered his

---

[5] On a motion to dismiss, "[a] court may take judicial notice of a document filed in another court ... to establish the fact of such litigation and related filings." *Avdeef v. Rockline Indus., Inc.*, No. 4:12-cv-879-Y, 2013 WL 12099295, at *1 (N.D. Tex. Apr. 4, 2013) (Means, J.) (quoting *Ferguson v. Extraco Mortg. Co.*, 264 Fed. Appx. 351, 352 (5th Cir. 2007)).

cell number ending in 8313, the number under which he has brought this action, on the NDNC Registry since June 30, 2003. *See* Appendix, at 000021.

Defendants also aver that Plaintiff has "multiple telephone lines" (again they do not say how many), which they say "he does not use." *Id.* at ¶ 8. Nevertheless, Plaintiff testified that in addition to the cell number at issue here, he has two VoIP (Voice Over Internet Protocol) that he uses in connection with his office. Defendants then aver that Plaintiff's supposed "goal" is to identify a telemarketing caller from his notes so he can research that caller to "create" a TCPA claim. *Id.* at ¶ 7. Defendants further aver that Plaintiff complains that calls he received are "unsolicited" and provide two examples. *Id.* at ¶ 9. *First,* during one of the fourteen telemarketing calls – presumably one of the three telemarketing scheduling calls made by a "third-party lead generator" described below – Defendants allege that Plaintiff told the operator to call him back for health insurance products. *Id.* *Second*, during one of the other calls (not one of the three third-party scheduling calls or else it would have been pled as part of those calls), Defendants allege that Plaintiff provided a zip code that was not his own and provided inaccurate information as to how much he paid for health insurance to make himself a "more attractive candidate" to receive additional telemarketing calls. *Id.*

Defendants allege that Plaintiff asked to be called during three telemarketing scheduling calls, on November 10, 2017, July 14, 2018, and November 8, 2018. Counterclaims ¶¶ 9, 16. According to Defendants, these three calls were made by their "third-party lead generator." *Id.* at ¶¶ 13, 18. On those dates, the "third-party lead generator" scheduled follow-up calls for Plaintiff with USHA's agent. Defendants, however, do not even identify the "third party lead generator." As a result of Plaintiff inviting call-backs from the third-party scheduling telemarketers during those three calls, Defendants contend that Plaintiff was able to achieve his "goal" of committing

fraud against Defendants by creating a frivolous cause of action. This accusation ignores the fact that two of the three scheduling calls for which Plaintiff asked to be called back were made *after* he filed his original action on March 29, 2018, when it had to be emphatically clear to Defendants that Plaintiff did not want them to call him. *Id*. at ¶¶ 12-13. Apparently, Defendants contend that Plaintiff's alleged fraudulent scheme was to retain litigation counsel and a local counsel to expend significant resources in pursuit of an injunction to stop the calls and for his statutory damages, which if successful, would amount to some $7,000 (or $21,000 if Defendants' TCPA violations were proven to be willful). As discussed below, such a "fraudulent scheme" lacks the requisite particularized allegations and defies common sense.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ginsburg v. ICC Holdings, LLC*, No. 3:16-cv-2311-D, 2017 WL 5467688, at *3 (N.D. Tex. Nov. 13, 2017) (quoting *Iqbal*, 556 U.S. at 678)); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the *speculative* level[.]") (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "'[T]he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent.'" *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 545 (N.D. Tex. 2009) (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "A duty to disclose is an essential element of a fraud claim based on nondisclosure." *Id.* (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (holding that an action for fraud by concealment must be based on duty to disclose)).

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers. *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694-MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018) (quoting *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1280 (11th Cir. 2002) (remedial statutes "must be construed liberally in order to best serve Congress' intent")). Thus, courts in this and other Circuits hold that the TCPA "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 597-98 (M.D. Tenn. 2018). *Accord Hitchman v. National Enter. Sys., Inc.*, No. 12-cv-61043, 2014 WL 912363, at *3 (S.D. Fla. Mar. 10, 2014) ("Because the TCPA is a consumer protection statute that is remedial in nature, this Court is inclined to … construe the TCPA liberally in favor of consumers.").

8

Here, Defendants have not made particularized allegations required by Rule 9(b) and have not alleged a plausible cause of action. Defendants do not allege any facts that would support the conclusion that Plaintiff defrauded Defendants, nor have they alleged any duty Plaintiff owed to Defendants, any violation of such a duty, or any actionable detrimental reliance on the part of Defendants. To the contrary, and at best, the Counterclaims amount to denials of Plaintiff's affirmative TCPA allegations and Defendants' assertion of affirmative defenses, which have now been improperly recast as illusory Counterclaims for fraud, designed to threaten and intimidate consumers who would dare to seek judicial redress in order to get USHealth to stop making unlawful telemarketing calls. This should not be countenanced by the Court. For all of the reasons set forth herein, these baseless Counterclaims must be dismissed, and Defendants should be taxed with Plaintiff's attorney's fees and costs for engaging in vexatious litigation shenanigans.

## I.    <u>Defendants Fail to State a Claim for Fraud</u>

"A fraud claim under Texas law is actionable when: (1) a material misrepresentation was made; (2) the representation was false; (3) the falsity of the representation was known to be false when made or was asserted without knowledge of its truth; (4) the representation was intended to be acted upon; (5) the representation was relied upon; and (6) injury occurred as a result." *Daniels v. Ortolani*, No. 3:14-CV-2665-L, 2015 WL 783689, at *3 (N.D. Tex. Feb. 24, 2015) (citations omitted). "[T]he requirement for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense. Directly put, the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (dismissing fraud claims with prejudice; admonishing litigants that, "We remind that this bite of Rule 9(b) was part of the pleading revolution of 1938. In short, we apply the rule with force, without apology.").

**A.    Defendants Fail to Particularize Allegations as to Actionable False Statements or Omissions and Any Intent by Plaintiff to Defraud**

While Defendants have not, and cannot, present any coherent fraudulent scheme by Plaintiff, Defendants' Counterclaims do not even come close to pleading fraud with particularity. The barebones allegations presented in the Counterclaims fail to meet the particularity standard of Rule 9(b) and the Supreme Court's "plausibility standard." *Accord Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688, at *3 (quoting *Iqbal*, 556 U.S. at 678). Instead, Defendants rely on short shrift, conclusory statements that lack particularity or basis. For example, Defendants aver that Plaintiff is a "professional plaintiff" (Counterclaims at ¶ 5); that he has filed "multiple lawsuits" (*id.* at ¶ 6); that he maintains a "cloud-based" spreadsheet ( *id.* at ¶ 6); that he keeps "multiple telephone lines" (*id.* at ¶ 6); that he uses his telephone for "his business(es)" (*id.* at ¶ 10); that he is "knowledgeable about the TCPA" (*id.* at ¶ 22); and that he and his counsel have a "shared goal of financial gain from this case" (*id.* at ¶ 11), among other things.

Notably, Defendants also allege that Plaintiff made false statements during three telemarketing calls placed by an unspecified "third party lead generator", *i.e.*, one of Defendants' vendors, in asking to be called back. Plaintiff asked to be called back on those calls because those callers did not identify themselves and he wanted to find out who was calling him, all of which is perfectly lawful. Where a TCPA plaintiff agrees to a follow-up call to find out who is calling him or her, courts have held that those plaintiffs are not legally consenting to the follow-up call. In *Johansen v. GVN Michigan, Inc.*, No. 15-cv-00912, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015), the court explained the reasoning of this proposition:

> [T]he plaintiff had first received a call that left a pre-recorded message offering him a vacation voucher and two round-trip airline tickets. The call finished by asking him to press 1. He didn't respond, but when he received a similar call he did press 1 so as to find out who was calling, and later in the day received a live call from GVN with additional details about the vacation offer. …

10

> The defendant's lawyer … placed particular emphasis on the fact that after receiving a second Robocall from the defendant, the plaintiff had pressed 1 on his phone; the defendant argues that by pressing 1 the plaintiff consented to receive future Robocalls from the defendant. The plaintiff, however, alleges that he pressed 1 only to find out who was calling (and there is no evidence to the contrary). If he didn't know who was calling, he wouldn't know whom to sue. His seeking the caller's identity was not tantamount to consenting to receive telephone solicitations.

*Id.* Similar allegations were also made in *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 698 (S.D. Fla. 2018) (granting class certification of TCPA action), where "Plaintiff allege[d] that the initial automated call was made as a ruse to obtain putative consent for the second call through a classic two-step 'survey scam,'" in violation of the TCPA. *Id.* (further alleging that defendant "took no steps to obtain, and in fact did not obtain, Plaintiff's express consent prior to placing the call"). *Accord Telerep Carbide, Inc. v. Zambrano*, 266 F. Supp. 2d 284, 287 (D.P.R. 2003) (dismissing defendant's counterclaim; holding that "defendant has not sufficiently pleaded its claim of fraud under Federal Rule of Civil Procedure 9(b) against plaintiff"). Defendants tacitly concede that the "third-party lead generator" did not identify to Plaintiff on whose behalf it was calling because Defendants themselves identify those callers as a "third-party." Any other interpretation of these calls is simply not plausible. If Plaintiff had known it was Defendants who were behind the "third-party lead generator," he would have had no need for any follow-up call to support this lawsuit because he could plead those scheduling calls as violations.

Because Plaintiff asked for a call back on the three "third-party lead generator" calls to find out who was calling him, there was no false statement and no intent to defraud. Contrary to Defendants' unsupported assertions, Plaintiff owed no duty to disclose to Defendant's secret vendor that he was not interested in health insurance products, especially where the vendor did not even identify on whose behalf it was calling in the first place. Defendants' Counterclaims are neither plausible nor particularized.

## B.    Defendants Fail to Plausibly Allege Detrimental Reliance

The Counterclaims for fraud are also deficient because there could not have been any detrimental reliance or damages by Defendants no matter what Plaintiff said on those three scheduling calls. *Federal Deposit Ins. Corp. v. Patel*, 46 F.3d 482, 486-87 (5th Cir. 1995) ("Detrimental reliance is an essential element of a claim for fraud."). Defendants plead that the three "third-party lead generator" calls scheduled three additional telemarketing call from USHA agents (Counterclaims at ¶ 16):

> Specifically, on at least three separate occasions, November 10, 2017, July 14, 2018, and November 8, 2018, Plaintiff gave USHA and/or third parties consent to receive telephone calls and/or text messages to his cellular telephone for the purpose of hearing more information about USHA products.

The only plausible inference that is that Defendants are admitting that those three "third-party lead generators" *made calls on behalf of Defendants*. Otherwise, the "third-party lead generator" would not have scheduled follow-up calls for USHA's agent. Accordingly, the initial three scheduling calls are still TCPA violations by Defendants and still justify this TCPA action against Defendants, which negates any possible detrimental reliance Defendants assert on the three follow-up calls.

Also negating detrimental reliance is the fact that Defendants made, in addition to the six calls above (three scheduling calls and three follow-up calls), eight telemarketing calls and texts about which Defendants say nothing. The Court can take judicial notice from Plaintiff's Amended Complaint of those eight additional calls, six of which were made *after* Plaintiff filed his action when it had to be resoundingly clear that Plaintiff did not want Defendant to make any more telemarketing calls (and which plainly show that Defendants have no TCPA compliance control over their agents). Amended Complaint at ¶ 54. Without the Court deciding the sufficiency of those six telemarketing calls and texts, the fact that they are pled and Defendants do not contend

with them in their counterclaims plausibly removes any detrimental reliance regarding the three scheduling calls and three follow-up calls about which they complain.

## II.    Defendants Improperly Attempt to Shoehorn as Fraud Counterclaims Their Own Denials of Wrongdoing and Related Affirmative Defenses

Counterclaims are not denials of the wrongdoing alleged by a plaintiff and the assertion of affirmative defenses. Apart from pleading deficiencies, Defendants' maneuvering to turn their defense into an offense also fails as a matter of law. In similar circumstances as here, the court in *Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*, 461 F. Supp. 2d 757 (S.D. Ill. 2006) dismissed defendant's counterclaims, concluding that those "purported counterclaim in fact are affirmative defenses." *Id.* at 766. In dismissing the counterclaims the court further held that:

> Affirmative defenses challenge ... underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim." *FDIC v. F.S.S.S.,* 829 F. Supp. 317, 322 n.11 (D. Alaska 1993). In this case, the allegations of the counterclaim cannot be adjudicated separately from Buller's claims. *See MidAmerican Communications Corp. v. U.S. West Communications, Inc.,* 857 F. Supp. 772, 774 (D. Colo. 1994) ("Unlike a counterclaim, a defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies."). At most Risk Retention Group's purported counterclaim sets out grounds for avoiding or reducing liability, but it establishes no grounds on which the insurer could recover damages independent of Buller's claim. *See Hinfin Realty Corp.,* 206 F.R.D. at 354–55 (allegations of contributory or comparative fault asserted an affirmative defense, not a counterclaim).

The court further explained that, "[a]s [plaintiff] Buller points out, the damages sought in the counterclaim are in fact the legal expenses [defendant] Risk Retention Group has incurred as a result of having to defend this case … which expenses are not recoverable as items of damage ….." *Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*, 461 F. Supp. 2d at 767 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 269-70 (1975) (citing to "the familiar 'American Rule' generally prohibiting shifting of attorney's fees); *see also Hinfin Realty Corp. v. Pittston Co., v. Pittston Co.* (holding that "one factor supporting the finding that a pleading

[is] an affirmative defense rather than a counterclaim [is] the fact that the pleader [can] obtain no judgment pursuant to the claim").

If the Court were to permit Defendant's contrived Counterclaims to go forward, it would unquestionably deter future consumers generally from bringing TCPA claims, it would render a federal consumer protection statute, the TCPA, toothless, and it would encourage unlawful telemarketers to proceed unimpeded in waging their campaigns without regard to governing law.

## III.    <u>Defendants' Additional Averments Are Baseless and Irrelevant</u>

Without any allegations of substance, Defendants lodge several additional averments that lack basis or relevance to the Counterclaims alleged, and have no purpose other than to disparage and distract. Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion to strike is proper "when the defense is insufficient as a matter of law," *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), or where "the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Nat'l Cas. Co. v. Gonzalez*, No. 5:13-cv-226-C, 2014 WL 11515563, at *1 (N.D. Tex. June 11, 2014) (granting plaintiff's motion to strike and motion to dismiss defendant's counterclaim) (quoting *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993)); *see also Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (permitting strike when the pleading to be stricken has no possible relation to the controversy).

### A.    **Defendants' Assertion that Plaintiff Is a Professional Litigant is Baseless**

Defendant's bald characterization that Plaintiff is a "professional litigant" is simply untrue and, unsurprisingly, is unsupported factually in Defendants' alleged Counterclaims for fraud. Such

14

averments have no purpose other than to disparage Plaintiff and his claims, while ignoring the fact that Defendant has now made more than a dozen unconsented telemarketing calls and texts to Plaintiff – most of which have occurred since the time that Plaintiff filed this action.

As Defendants are aware, apart from this action, Plaintiff has only filed two other TCPA cases, both of which he filed in 2017.[6] Three lawsuits in the fourteen years since Plaintiff has been listed on the NDNC Registry (in 2003) do not remotely give rise to any inference that he is a "professional plaintiff." When telemarketers, such as Defendants, fail to refrain from calling persons who have already expressed a desire not to be called, by registering with the NDNC or requesting to be put on the IDNC, a consumer who seeks to judicial redress is not thereby morphed into a professional plaintiff.

In *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-cv-4063, 2019 WL 1506378, at *5 (E.D. Pa. Apr. 5, 2019), the court not only rejected similar characterizations of the plaintiff but held that the enforcement provisions of the TCPA are designed to compensate consumers, such as Plaintiff here, and to deter telemarketing offenders, such as USHealth. In *Shelton*, the court found that:

> Defendant has not offered any evidence that Plaintiff purchased his cell phone with the hope of receiving calls for the sole purpose of collecting statutory damages…. The only evidence before the Court at this stage demonstrates that Plaintiff has requested in multiple forms that he not be targeted for solicitation – by registering his number on the Do Not Call Registry and stating on his website that he does not wish to receive such calls – and that he derives a profit when companies simultaneously ignore his requests and violate the TCPA. The fact that Plaintiff derives a profit from these lawsuits is exactly what Congress intended. *See* 47 U.S.C. § 227(b)(3), (c)(5) (providing statutory damages to plaintiffs in private actions pursuant to TCPA) ….

---

[6] *Aaron Hirsch v. TranzVia*, LLC 4:17-cv-00763 in U.S. District Court, Eastern District of Texas (dismissed voluntarily after settlement); *Aaron Hirsch v. Fortegra Financial Corporation et al* 3:17-cv-01215-BJD-JBT in U.S. District Court, Middle District of Florida (pending).

15

*Id.* Other courts are in accord. *See, e.g., Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-cv-4577, 2019 U.S. Dist. LEXIS 43985, at *44 (S.D.N.Y. Mar. 18, 2019) ("In the absence of authority to the contrary, the Court concludes that Plaintiff's filing of other TCPA lawsuits does not remove it from the zone of interests that the TCPA was intended to protect."); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017) (finding that "professional plaintiff" had prudential standing despite using TCPA for profit because "[t]he TCPA does not merely contemplate self-interested plaintiffs – it encourages them" (citing TCPA's statutory damages provision for private actions)).

Moreover, in *Shelton v. Nat'l Gas & Elec.*, the court further found that there was no evidence that plaintiff had taken any action to increase his chances of receiving the calls: "Plaintiff's only intentional engagement with Defendant was calling it back to 'find out who [it] really [was],' which is a prerequisite to filing a lawsuit." 2019 WL 1506378, at *5 (citing [*Abramson v.*] *CWS Apt. Homes*, [No. 16-cv-426], 2016 U.S. Dist. LEXIS 146627, at *7 [(W.D. Pa. Oct. 24, 2016)] (finding prudential standing even though plaintiff had filed sixteen other TCPA lawsuits). More recently, in *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, No. 4:18-cv-00118ALMCAN, 2019 WL 1119365 (E.D. Tex. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 1117915 (E.D. Tex. Mar. 11, 2019), the court reiterated that even where a plaintiff "has pursued a substantial amount of TCPA cases, such assertion standing alone does not raise [p]laintiff to the level of 'professional plaintiff[.]'" *Id.* at *4 (citing *Morris v. Unitedhealthcare Ins. Co.*, No. 4:15-cv-00638-ALM-CAN, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016)); *accord Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017) (rejecting the idea that, "by becoming a so-called 'professional plaintiff,' [plaintiff] has forfeited [his right to privacy] because the calls alleged were not truly

16

unwanted"; *Fitzhenry v. ADT Corp.*, No. 14-cv-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014) ("Although Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest."); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) ("It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment[, but] [t]his does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.").

As here, where thousands (if not millions) of consumers have suffered from violations of the TCPA, a class action is superior to individual litigation. *See McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2019 WL 1383804, at *29 (S.D. Cal. Mar. 27, 2019) ("[G]iven these damages relative to the costs of litigation, a class action is a superior means of adjudicating TCPA claims against a defendant."). It is "precisely because the TCPA 'provides for a relatively small recovery,' [courts have] recognized that "[i]n the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Id.* "The TCPA 'can only be effectively enforced if consumers have available a mechanism that makes it economically feasible to bring their claims." *Id. Accord Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 858-59 (N.D. Ill. 2016) ("The key common question is whether defendants made unlawful calls to plaintiffs … without consent to make them; plaintiffs win if the answer to this question is yes, and defendants win if the answer is no.").

### B.    Plaintiff's Alleged Use of His Phone for Business Purposes is Irrelevant

In recasting their denials and affirmative defenses to the TCPA claims in Plaintiff's Amended Complaint, Defendants also allege that Plaintiff "keeps his cellular telephone number

17

registered on the National Do-Not-Call Registry ('NDNC'), which is exclusively for residential subscribers, even though he has used is [sic] cellular telephone continuously and systematically for his business(es) since as early as 1997." Counterclaims at ¶ 10.

First, this allegation makes no sense in serving as a basis for an alleged fraud. Regardless of whether Plaintiff's use of his phone supports or does not support his own TCPA claims, it has no relevance to Defendants' counterclaims. Second, like most of the allegations in the Counterclaims, this averment lacks the particularity necessary to satisfy Rule 9(b) even if it were relevant. Third, the averment provides another example of how the Counterclaims are nothing more than an improper recast of Defendants' own denials and affirmative defenses. Indeed, in denying Plaintiff's allegations as to registration of his telephone number on the NDNC call list, Defendants answered that they "deny the validity of Plaintiff's alleged registration on the NDNC due to his systematic and continuous use of this cellular telephone for business purposes beginning as early as 1997." Defendants' Answer at ¶ 30. In their Answer to the Amended Complaint, Defendants also asserted the Third Affirmative Defense, which states that: "Plaintiff's claims are barred by his and class members' consent to receive solicitations on their cellular and/or telephone numbers, and by holding their cellular numbers out to the public as business telephone lines." Defendants' Answer at 10.

This is yet another example of impertinent allegations that should be stricken.

### C. Plaintiff's Alleged "Friendship" with His Counsel is Irrelevant, Although the Veiled Insinuations of Attorney Misconduct are Scandalous and Improper.

In crafting their barebones Counterclaims, Defendants not only lodge fraud allegations against Plaintiff but then seek to implicate one of his counsel in allegedly participating in the supposed fraud. Here, Defendants allege that Plaintiff is "close friends" with one of his counsels, that they socialize "frequently," and that their children are friends. Counterclaims at ¶ 11.

18

Defendants allege that Plaintiff maintains a spreadsheet of the abusive telemarketing calls he receives and that Plaintiff "shares with the attorney representing him in this case" for "the sole purpose of filing lawsuits under the TCPA." Counterclaims at ¶ 6. However, Defendants take their allegations even further by alleging that Plaintiff and his counsel "have a shared financial interest" from this case and that "[i]n sum, this lawsuit was orchestrated by Plaintiff (perhaps in conjunction with his counsel)." Counterclaims at ¶¶ 11-12.

Such thinly veiled insinuations against counsel are plainly "an inappropriate *ad hominem* attack serving only to cast him in a derogatory light. Accordingly, these statements are plainly 'scandalous' under Rule 12(f) and should be struck from the pleading." *Choi v. 8th Bridge Capital, Inc.*, No. 2:17-cv-08958CASAFMX, 2018 WL 3469053, at *7 (C.D. Cal. July 16, 2018). *Accord Low v. Robb*, No. 11-cv-2321 JPO, 2012 WL 173472, at *10 (S.D.N.Y. Jan. 20, 2012) (striking allegations that are at best "amorphous, unspecific and cannot be defended against").

In any event, whether a party has a personal "friendship" with one of his counsel is hardly surprising and is certainly not improper – whether a party may socialize with its counsel by playing golf, sharing a meal or otherwise. Such an averment alone is irrelevant and has no bearing on whether Plaintiff allegedly committed fraud by asking Defendants' vendor to call him back. However, the further accusation that Plaintiff's counsel's by virtue of having a legal representation amounts to a "shared financial interest" and participation in an orchestrated fraud is another matter. Such allegations are not only subject to being stricken as scandalous, but such professional conduct falls far short of that mandated by *Dondi*.[7]

---

[7]    If Defendants and their counsel actually believed that Plaintiff's counsel had engaged in fraudulent conduct the proper response would be to bring the matter before the Court and the Bar, not to make scandalous allegations in contrived Counterclaims.

IV.    **Defendants' Contrived Counterclaims Amount to Vexatious Litigation**

In addressing improper litigation tactics aimed at vexatious litigation, 28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. ....

"The Fifth Circuit has concluded that for a motion under § 1927 to be successful, there must be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *McCully v. Stephenville Indep. Sch. Dist.*, No. 4:13-cv-702-A, 2013 WL 6768053, at *2 (N.D. Tex. Dec. 23, 2013) (citing *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also Ingram v. Glast, Phillips & Murray*, 196 F. App'x 232 (5th Cir. 2006). The Supreme Court has similarly recognized that "federal courts have the inherent power to impose attorney's fees as a sanction for bad faith litigation conduct." *Id.* (quoting *Chambers v. NASCO*, Inc., 501 U.S. 32, 47 (1991)).

Here, in an ill-conceived ploy of gamesmanship, Defendants have improperly and unnecessarily recast as fraud Counterclaims their own denials of wrongdoing and affirmative defenses against a consumer's TCPA complaint. Rather than litigate the TCPA claims that have been asserted by Plaintiff to stop the incessant telemarketing calls being made on behalf of USHealth, Defendants lodge contrived allegations against Plaintiff for having received those unconsented calls – ignoring the glaring fact that most of Defendants' agents ***telemarking calls were made after Plaintiff sued Defendants***. Those Counterclaims and Defendants' *ad hominin* attacks against a consumer who received unconsented telemarketing calls (and his counsel) were filed for the obvious *in terrorem* effect, to dissuade his continued litigation here and to scare off

any other consumers who would dare to complain about unlawful telemarketing practices. Indeed, during Plaintiff's recent deposition in this case, Defendants learned that Plaintiff is a real estate developer.  Defendants' Counterclaims for fraud will now threaten both Plaintiff and his business, especially with regard to lenders with whom he has business relationships. While Defendants are free to properly defend themselves, they are not entitled to bully consumers and create litigation sideshows based on illusory claims that are nothing more than denials of their own wrongdoing, at best. These litigation tactics should not be countenanced by this Court. Such conduct is made all the more unacceptable in light of the mandates of the Court's decision in *Dondi*.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court dismiss Defendants' Counterclaims with prejudice, and award Plaintiff attorney's fees and costs for Defendants' vexatious filing that has led to wasteful motion practice.

21

Dated:  May 10, 2019

Respectfully submitted,


/s/ Max Maccoby

Max F. Maccoby
WASHINGTON GLOBAL LAW GROUP PLLC
1701 Pennsylvania Ave., NW, Suite 200
Washington, D.C. 20006
Telephone:  (202) 248-5439
Facsimile:   (202) 580-6559
maccoby@washglobal-law.com

Michael Dell'Angelo
Lane L. Vines
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604
mdellangelo@bm.net
lvines@bm.net

Warren T. Burns, Texas Bar No. 24053119
Daniel Charest, Texas Bar No. 24057803
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  (469) 904.4550
Facsimile:  (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

Attorneys for Plaintiff and Proposed Classes

22

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of May, 2019, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered on the CM/ECF system for this matter.


        */s/ Max Maccoby*
        Max Maccoby