**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 4:18-cv-00245-P** |
| | : | |
| **v.** | : | |
| | : | |
| **USHEALTH ADVISORS, LLC and USHEALTH GROUP, INC.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION.............................................................................................................. 1

OVERVIEW OF THE TCPA ........................................................................................... 2

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ................................................................................................................... 5

I.    THE REQUIREMENTS OF FEDERAL RULE 23 AND LOCAL RULE 23.3 ARE
      MET, AND THE CLASS IS DEFINABLE AND ASCERTINABLE ........................... 5

      A.   The Proposed Class Is Definable, Ascertainable and Satisfies LR 23.2(b)(2)...... 5

      B.   Plaintiff and the Proposed Class Have Article III Standing................................. 7

      C.   The Class Meets All Requirements of Fed. R. Civ. P. 23(a) and LR 23.2(a-c) .. 10

           1.   Numerosity – FRCP 23(a)(1) and LR 23.2(b)(1) ................................... 10

           2.   Commonality – Rule 23(a)(2) and LR 23.2(b)(4) ................................... 12
                a.   Common Characteristics of Class Members – Rule 23(a)(2) ........... 12
                b.   Distinguishing and Common Characteristics - LR 23.2(b)(3) ......... 14

           3.   Plaintiff's Claims are Typical of The Class Members' – Rule 23(a)(3) . 14

           4.   Adequacy is Satisfied – Rule 23(a)(4) and LR 23.2(c) ........................... 16

      D.   The Class Meets All Requirements of Rule 23(b)(3) and LR 23.2(b)(5) ........... 17

           1.   Common Questions of Law and Fact Predominate................................ 18
                a.   Common Issues Predominate ........................................................ 19
                b.   Common Evidence Predominates.................................................... 20

           2.   A Class Action is The Superior Form of Adjudication – Rule 23(b)(3) . 22

      E.   Jurisdictional Amount – LR 23.2(d) .................................................................. 24

      F.   Proposed Notice Program – LR 23.2(e) ............................................................. 24

      G.   Discovery Necessary for Class Certification Hearing- LR 23.2(f) .................... 24

      H.   Arrangement for Plaintiff's Attorney Fees – LR 23.2(g)................................... 25

II.   THE COURT SHOULD APPOINT CLASS COUNSEL – Rule 23(g) ........................ 25

CONCLUSION ................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accounting Outsourcing, L.L.C. v. Verizon Wireless Pers. Commc'ns*, L.P.,
No. CIV.A. 03-CV-161, 2007 WL 7087615 (M.D. La. Aug. 2, 2007) ....................... 22, 30, 33

*Allard v. SCI Direct, Inc.*,
No. 16-CV-01033, 2017 WL 3236448 (M.D. Tenn. July 31, 2017) ....................................... 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231 (1997) ................................................................................. 35

*American Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) ............................................................................................................ 43

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455, 133 S. Ct. 1184 (2013) ............................................................................ 36, 37

*Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cty*.,
No. 3:01-CV-0746L, 2002 WL 1033085 (N.D. Tex. May 21, 2002)..................................... 46

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d294, 302 (5th Cir.2003) ......................................................................................... 36

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
242 F.3d 290 (5th Cir. 2001) ............................................................................................... 11

*Campbell-Ewald Co. v. Gomez*,
—— U.S. —— 136 S. Ct. 663 (2016)............................................................................ 5, 6, 7, 31

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ................................................................................................ 44

*Castro v. Collecto, Inc.*,
256 F.R.D. 534 (W.D. Tex. 2009) ............................................................................ 21, 22, 38

*Cleven v. Mid-Am. Apartment Communities, Inc.*,
328 F.R.D. 452 (W.D. Tex. 2018) ....................................................................................... 34

*Cordoba v. DIRECTV, L.L.C.*,
942 F.3d 1259 (11th Cir. 2019) ............................................................................... 14, 17, 18

*Cordoba v. DirecTV, LLC*,
320 F.R.D. 582 (N.D. Ga. 2017)......................................................................................... 44

*DeHoyos v. Allstate Corp*.,
240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................................... 29

*Duncan v. JPMorgan Chase Bank, N.A*.,
No. SA-14-CA-00912-FB, 2015 WL 11623393 (W.D. Tex. Oct. 21, 2015) .......................... 29

*Evans v. U.S. Pipe & Foundry Co*.,
696 F.2d 925 (11th Cir.1983) ............................................................................................. 21

*Flecha v. Medicredit, Inc.*,
946 F.3d 762 (5th Cir. 2020) .............................................................................................. 12

*Frey v. First Nat'l Bank Southwest*,
602 Fed. App'x. 164 (5th Cir. 2015) .............................................................................. passim

*Frey v. First Nat'l Bank Sw.*,
No. 3:11-CV-3093-N, 2013 WL 11309592 (N.D. Tex. Feb. 20, 2013) .................................. 42

*Gene And Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ................................................................. 29, 36, 38
*Gibbs v. SolarCity Corp.*,
   239 F. Supp. 3d 391 (D. Mass. 2017) ................................................................. 15
*Golan v. Veritas Entm't, LLC*,
   788 F.3d 814 (8th Cir. 2015) ................................................................. 17
*Henderson v. Eaton*,
   No. CIV.A. 01-0138, 2002 WL 10464 (E.D. La. Jan. 2, 2002) ........................... 20, 30, 32, 45
*Horton v. Goose Creek Indep. Sch. Dist.*,
   690 F.2d 470 (5th Cir. 1982) ................................................................. 32
*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir.1981) ................................................................. 33
*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ................................................................. 23, 25, 26, 37
*In re Dynegy, Inc. Sec. Litig.*,
   226 F.R.D. 263 (S.D. Tex. 2005) ................................................................. 13
*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................. passim
*In re TWL Corp.*,
   712 F.3d 886 (5th Cir. 2013) ................................................................. 43
*Ituah by McKay v. Austin State Hosp.*,
   No. A-18-CV-11-RP, 2020 WL 354949 (W.D. Tex. Jan. 3, 2020) ........................... 26
*James v. City of Dallas, Tex.*,
   254 F.3d 551 (5th Cir. 2001) ................................................................. 20, 30
*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) ................................................................. 35
*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ................................................................. 9
*Kemp v. Tower Loan of Mississippi, LLC*,
   No. 3:15CV499-CWR-LRA, 2017 WL 3426240 (S.D. Miss. Aug. 8, 2017) ........................... 23
*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015) ................................................................. 41
*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir.) ................................................................. 2, 15, 17, 18
*Lee v. Credit Mgmt., LP*,
   846 F. Supp. 2d 716 (S.D. Tex. 2012) ................................................................. 41
*Lehocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004) ................................................................. 36, 38
*Machesney v. Lar-Bev of Howell, Inc.*,
   317 F.R.D. 47 (E.D. Mich. 2016) ................................................................. 18
*Manno v. Healthcare Revenue Recovery Grp., LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013) ................................................................. 33
*Matter of The Joint Petition Filed by Dish Network, LLC, et al.*,
   CG Docket No. 11-50 (FCC 13-54), 28 FCC Rcd 6574 (2013) ................................................................. 31
*McCormick v. 7-Eleven, Inc.*,
   No. 3:06-cv-0127-N, 2009 WL 10704102 (N.D. Tex. Mar. 12, 2009) ................................................................. 43

*McCurley v. Royal Seas Cruises, Inc.*,
  331 F.R.D. 142 (S.D. Cal. 2019) ................................................................ 41
*Mey v. Got Warranty, Inc.*,
  193 F. Supp. 3d 641 (N.D. W. Va. 2016) ................................................... 15
*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012)........................................................................ 2, 43, 44
*Mims v. Stewart Title Guar. Co.*,
  590 F.3d 298 (5th Cir. 2009) .............................................................. 12, 13
*Morris v. Unitedhealthcare Ins. Co.*,
  No. 415CV00638ALMCAN, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016), *report and
  recommendation adopted*, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016)... 14
*Mullen v. Treasure Chest Casino LLC*,
  186 F.3d 620 (5th Cir.1999) ..................................................................... 20
*Parker v. Universal Pictures*,
  No. 616CV1193ORL41DCI, 2019 WL 1521708 (M.D. Fla. Feb. 28, 2019).................... 17, 18
*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,
  No. 12-22330-CIV, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014)........................... 44
*Sartin v. EKF Diagnostics, Inc.*,
  No. CV 16-1816, 2016 WL 7450471 (E.D. La. Dec. 28, 2016)......................... 15, 16
*Shipes v. Trinity Indus.*,
  987 F.2d 311 (5th Cir. 1993) .................................................................... 29
*Simon v. E. Kentucky Welfare Right Org.*,
  426 U.S. 26 (1976)................................................................................. 13
*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016).......................................................................... 13
*Susinno v. Work Out World Inc.*,
  862 F. 3d 346 (3d Cir. 2017).................................................................... 15
*Toney v. Quality Res., Inc.*,
  323 F.R.D. 567 (N.D. Ill. 2018)................................................................. 19
*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ...................................................................... 9
*Van Patten v. Vertical Fitness Group, LLC*,
  847 F.3d 1037 (9th Cir. 2017) ................................................................. 15
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................... 25, 26
*Winston v. Jefferson Cty., Ala.*,
  No. 2:05-CV-0497-RDP, 2006 WL 6916381 (N.D. Ala. June 26, 2006) .................... 21
*Youngman v. A&B Ins. & Fin., Inc.*,
  No. 616CV1478ORL41GJK, 2018 WL 1832992 (M.D. Fla. Mar. 22, 2018),
  *report and recommendation adopted*, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) ............ 17
*Zeidman v. J. Ray McDermott & Co.*,
  651 F.2d 1030 (5th Cir. 1981) .......................................................... 20, 22

**Statutes**

28 U.S.C. § 1331...................................................................................... 26
28 U.S.C. § 1914(a) ................................................................................. 25

47 U.S.C. § 227 ............................................................................................................. 1
47 U.S.C. § 227(a)(4) ................................................................................................... 24
47 U.S.C. § 227(b)(3)(B) ...................................................................................... 17, 23
47 U.S.C. § 227(b)(3)(C) ...................................................................................... 17, 23
47 U.S.C. § 227(c)(1)-(2) ............................................................................................. 3
47 U.S.C. § 227(c)(3) ................................................................................................... 3
47 U.S.C. § 227(c)(5) ................................................................................................... 4
47 U.S.C. § 227(c)(5)(B)-(C) ...................................................................................... 5
MD. Code, Com. Law, §14-3201 ................................................................................ 5

Rules

Fed. R. Civ. P. 23 ............................................................................................... passim
LR 23 ................................................................................................................. passim

Regulations

47 C.F.R. § 64.1200(c)(2) ............................................................................................ 3
47 C.F.R. § 64.1200(c)(2)(ii) ..................................................................................... 24
47 C.F.R. § 64.1200(d) ................................................................................................ 4
47 C.F.R. § 64.1200(f)(14)(i)-(ii) .............................................................................. 24

Other Authorities

1 William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed.2011) ................................. 10

## INTRODUCTION

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, prohibits calls to residential telephone numbers listed on the National Do-Not-Call registry ("NDNC") or a caller's own Internal-Do-Not-Call list ("IDNC"). Plaintiff Aaron Hirsch sued USHealth Advisors, LLC ("USHA") and USHealth Group, Inc. (USHG) (collectively, "Defendants" or "USHealth"), alleging that its captive agents routinely violated those provisions of the TCPA. In 2017, USHealth agents made repeated calls to Plaintiff's cell phone number which has been registered on the NDNC since 2003 *and* called after Plaintiff told USHealth on the second call to put him on its IDNC. This lawsuit reaffirmed that Plaintiff did not want his privacy invaded and time wasted by USHealth's telemarketing calls. Nevertheless, USHealth's agents called and texted Plaintiff *twelve* more times in violation of the TCPA. Plaintiff seeks to pursue his claims on behalf of himself and all persons who received calls on numbers listed on the NDNC or that were requested to be listed on USHealth's IDNC, as defined below. This TCPA class action is well suited for class certification. Plaintiff's expert analyzed the call logs of USHealth's agents and determined that they routinely violated the TCPA by calling consumers on the NDNC and USHealth's IDNC, just as they did to Plaintiff. Those violations were not mere negligence, but rather willful because USHealth knowingly failed to institute policies and procedures to prevent its repeated violations.

The Court should certify the proposed Class because it satisfies the requirements of Rule 23(a) and (b)(3), LR 23.2, it is definable and ascertainable and Plaintiff is a wholly adequate Class representative with standing to assert class claims. Plaintiff has shown that he can use common evidence to prove USHealth's captive agents violated the NDNC and IDNC provisions of the TCPA. Anya Verkhovskaya, an experienced and well-respected expert in TCPA call log analysis

1

analyzed the call logs produced in this action and identified thousands of NDNC and IDNC violations after extensive filtering and screening of the call logs.[1]

## OVERVIEW OF THE TCPA

Congress enacted, and President George H.W. Bush signed into law, the TCPA to stem abusive telephone marketing practices. As the Supreme Court observed, "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (*quoting* TCPA § 2, 105 Stat. 2394, 2394); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir.), *cert. denied*, 140 S. Ct. 676 (2019) ("Telemarketing calls are also intrusive….interfere with [consumers'] lives, tie up their phone lines, and cause confusion and disruption on phone records.").

The FCC promulgated regulations under the TCPA creating a national NDNC registry and requiring telemarketers to create and maintain their own IDNC list. 47 U.S.C. § 227(c)(3), 47 C.F.R. § 64.1200(d). The TCPA prohibits telemarketing calls to persons on the NDNC under 47 U.S.C. § 227(c)(3) and 47 C.F.R. § 64.1200(c)(2), and to persons on the IDNC under IDNC under 47 U.S.C. § 227(c)(1)-(2) and 47 C.F.R. § 64.1200(d). These provisions are the basis for the cause of action in this case. More specifically regarding the IDNC list, FCC regulations provide that telemarketers may not call a person unless they have first "*instituted procedures*" for maintaining an IDNC list. *Id*. § 64.1200(d) (emphasis added). These procedures are that telemarketers (1) have a written policy for maintaining an IDNC list; (2) train their personnel on its "existence and use"; (3) put people on the list when they ask; and (4) refrain from calling people on the list for five years after a request is made.  The TCPA creates a private right of action for anyone registered on the NDNC registry and IDNC list for subsequent telemarketing call violations. 47 U.S.C.

---

[1] *See* Expert Declaration of Anya Verkhovskaya (App. 391-392, at ¶ 8), attached to the Declaration of Michael Dell'Angelo in Support of Plaintiff's Motion for Class Certification.

§ 227(c)(5). For a NDNC registry violation, a person must receive, from the same telemarketer, more than one call within a year. 47 U.S.C. § 227(c)(5). For an IDNC list violation, a person must receive any call after he or she has asked to be listed on the IDNC list. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d). Statutory damages are $500 for each negligent violation and $1,500 for each willful violation. *See* 47 U.S.C. § 227(c)(5)(B)-(C). Residents of Maryland, such as Plaintiff, may bring a claim for violation of the Maryland TCPA, MD. Code, Com. Law, §14-3201 based on a violation under the federal TCPA, for which Defendants are also liable for attorneys' fees. "[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald Co. v. Gomez*, ⸻ U.S. ⸻ 136 S. Ct. 663, 674 (2016).

## **FACTUAL BACKGROUND**

USHG owns and controls USHA, an insurance agency that authorizes its captive agents ("Agents") to telemarket personal health insurance to consumers nationwide. *See* App. 11-12. *See, e.g.*, App. 19-25 (sample scripts). *See also* Dkt. 143, at ECF 6 ("3,500 independent sales agents in 38 states"). USHealth's Agents made "billions" of these calls during the period at issue. *See* App. 49 (23:11-12). *See also* App. 60 ████████████████████████

Each Agent signed the same standard "Agent Agreement," in which USHA ████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ App. 65. Agents received the same boilerplate "training" materials for telemarketing – a memo and Powerpoint deck. App. 83-93, 95-132. Documents are provided to new Agents electronically through an online USHealth portal for Agents to click off their acknowledgment. App. 134. USHealth held out the Agents as agents of USHealth in the marketing and sale of insurance products. Each Agent was provided with an email account under the domain www.USHAdvisors.com (Dkt. 143 at ECF 27)

3

and a webpage on USHealth's corporate website. App. 13. *See, e.g.*, App. 136-142. Agents were provided with form marketing materials approved by USHealth, including business cards, flyers, mailers, print ads, social media, web ads, among others, featuring the Agent's name and contact information, along with USHealth's name, logo, and other identifiers. App. 144-182. USHealth's standard telemarketing scripts begin ████████████████████████ App. 19-25. The Agents were "captive" because they could only sell for USHA. App. 69; App. 190.

USHealth's Agents are located throughout the country and work under USHealth's so-called Regional Leaders (who are not bound by geography). App. 12, at ¶ 4, App. 12. They are overseen and coordinated by USHealth's National Sales Manager who holds weekly group conference calls for Agents nationwide to discuss sales results. App. 12-13. USHealth used an online electronic portal to communicate and share documents with Agents. *Id.* The portal houses a Sales Leader Board that kept a running tally of sales nation-wide. *Id.*

USHealth sought to make TCPA compliance "the responsibility of the agent" to ensure that the hundreds of thousands of leads called each day are scrubbed for IDNC and NDNC. App. 254. Compliance was impossible because USHealth's own IDNC was *not* shared with Agents. App. 260; App. 14. Access to the NDNC requires an expensive paid account that would not be cost-effective for purchase by an Agent. App. 14, at 12. Thus, any NDNC scrubs had to be performed by USHealth; however, it failed to implement internal controls to do so. App. 258. DNC requests were not promptly and systematically recorded in a centralized system, and thus went unheeded. App. 15. USHA acknowledged that, "Some [Agents] may use lawful telemarketing, ***others do not***." App. 285 (emphasis added).

Most Agents use the VanillaSoft CRM, an electronic platform that stores telephone leads, dials the numbers, and records the call data. App. 257 (80% of USHealth's regions use

VanillaSoft). However, USHealth did not require Agents to use a CRM. *Id.* (39:11-18); App. 258. Because USHealth did not require Agents to use a CRM or some equivalent technology that USHealth could manage, fundamental gaps existed within USHealth's internal controls to ensure compliance with the NDNC and IDNC. App. 6-7.

Plaintiff's personal cell number has been registered on the NDNC since 2003. App. 260. In November and December of 2017, Plaintiff received three telemarketing calls for USHealth on his cell phone and filed this litigation on March 29, 2018. *See* App. 300-301; App. 335. ***After*** suing Defendants, USHealth's Agents contacted Plaintiff with ***twelve more*** unwanted calls and texts including once even ***after*** Plaintiff filed an Amended Complaint (Dkt. 42) in February 2019. *See* App. 300-301; App. 337-339. Plaintiff's expert, Anya Verkhovskaya, analyzed the Agent's call logs produced to date in this case and concluded that USHealth's Agents similarly violated the NDNC and IDNC as to the Class. App. 392, at ¶¶ 8-11, 422-423, at ¶¶ 143-147.

## ARGUMENT

I. **THE REQUIREMENTS OF FEDERAL RULE 23 AND LOCAL RULE 23.3 ARE MET, AND THE CLASS IS DEFINABLE AND ASCERTAINABLE**

A party moving for class certification must meet the requirements of Federal Rule of Civil Procedure 23 and Local Rule 23.2, and demonstrate that the proposed class is definable and ascertainable. Plaintiff and the proposed Class meets all requirements for class certification.

### A. **The Proposed Class Is Definable, Ascertainable and Satisfies LR 23.2(b)(2)**

LR 23.2(b)(2) requires a Plaintiff to state "the definition of the class and any subclasses." For certification, the proposed class "must be adequately defined and clearly ascertainable." *Frey v. First Nat'l Bank Southwest*, 602 Fed. App'x. 164, 168 (5th Cir. 2015) (*quoting Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)); *see also John v. Nat'l Sec.*

5

*Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (ascertainable class "is an implied prerequisite of" Rule 23). Plaintiff moves to certify the following Class, defined as follows:

> All natural persons in the United States who, from March 29, 2014 to the date of the Court's Order granting class certification: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of USHealth more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do-Not-Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with USHealth's Internal Do-Not-Call list.[2]

Plaintiff also seeks to certify a Maryland Subclass of members of the Class who are residents of the State of Maryland based on claims arising under the Maryland TCPA:

> The "Maryland Subclass," consisting of all natural persons who are members of the Class who are residents of the State of Maryland.

The standard for definability and ascertainability in this Circuit is not high. "Ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey*, 602 Fed. App'x. at 168. "However, the court need not know the identity of each class member before certification." *Id.* 168 (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed.2011)). The proposed Class definition is clear and definite. The identification of class members from unique numbers, such as account numbers, or telephone numbers in this case, satisfies the ascertainablity standard. *Frey*, 602 Fed. App'x. at 168 (upholding class certification finding of ascertainablity based on account numbers associated with ATM transactions). It is definite and ascertainable because it is limited to (1) phone calls specifically identifiable from the call logs of USHealth's Agents (which specify telephone number called and the call dates and times), and (2) to phone numbers that were listed on the NDNC or listed on or

---

[2] Excluded from the Class are: (a) natural persons who were or had been insured by USHealth at the time of the first call; and (b) any employees, officers, directors of USHealth, and attorneys appearing in this case, and any judge assigned to hear this case and immediate family and staff.

requested to be listed on USHealth's IDNC. Plaintiff's expert has established a methodology to identify Class members from the call logs (at best an administrative step, if even necessary at this stage), [3] and has already distinguishing between residential and business phone numbers. App. 392, 404-406, at ¶¶ 10, 67-77. Therefore, the Class is ascertainable.

### B.    Plaintiff and the Proposed Class Have Article III Standing

Although it is unsettled whether a court must first decide Article III standing or the Rule 23 requirements, standing is inherent to the class certification inquiry in this Circuit. *Compare Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) ("[s]tanding is an inherent prerequisite to the class certification inquiry") with *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768–69 (5th Cir. 2020) ("the Supreme Court has repeatedly instructed that we should first decide whether a proposed class satisfies Rule 23, before deciding whether it satisfies Article III"). Here, the Plaintiff satisfies Rule 23, LR 23.2 and has Article III standing.

For a class action to be justiciable, all that the law requires is that a named plaintiff have standing. *See Mims v. Stewart Title Guar. Co.,* 590 F.3d 298, 308 (5th Cir. 2009) ("[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct"); *id.* at 302 (concluding "[t]here is no serious question that the plaintiffs have standing" and examining only "the named plaintiffs"); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 274 (S.D. Tex. 2005) ("Unnamed plaintiffs need not make any individual showing of standing [in order to obtain relief], because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly

---

[3] *Frey*, 602 Fed. App'x. at 168 (upholding class certification and rejecting defendant's argument that ascertainablity could not be established because fact-intensive analysis would be required to differentiate consumer bank accounts from commercial bank accounts; finding "inquiries with … individual class members can be made to establish whether the account is a personal account or a business account, which would be largely administrative").

before the court.") (internal quotes and citation omitted). Thus, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (*quoting Simon v. E. Kentucky Welfare Right Org.*, 426 U.S. 26, 40 n.20 (1976)).

The TCPA confers standing upon recipients of certain unlawful telephone calls. Each call deprives the recipient of "time and mental energy, both of which are precious." *Cordoba v. DIRECTV, L.L.C.*, 942 F.3d 1259, 1270 (11th Cir. 2019) (internal quotes omitted). *Morris v. Unitedhealthcare Ins. Co.*, No. 415CV00638ALMCAN, 2016 WL 7115973, at *5 (E.D. Tex. Nov. 9, 2016) ("an individual may also suffer an injury in fact from unauthorized telephone contact when it causes an occupation of the telephone line or an invasion of privacy"), *report and recommendation adopted*, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016).[4]

The standing requirement is readily met. As discussed above, Plaintiff's residential phone number was listed on the NDNC before he received telemarketing calls from USHealth's Agents. He was called by USHealth's Agents more than once *after* requesting inclusion on USHealth's IDNC. The litany of violative calls is detailed in the Declaration of Aaron Hirsch (App. 334-339),

---

[4] *See also Krakauer,* 925 F. 3d at 653 ("In enacting § 227(c)(5) of the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests... Our legal traditions, moreover, have long protected privacy interests in the home."); *Susinno v. Work Out World Inc.*, 862 F. 3d 346, 351-52 (3d Cir. 2017) (analogizing TCPA injuries to common law wrong of "intrusion upon seclusion"); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (same); *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017) ("The majority of courts considering similar facts have found them sufficient to satisfy the requirement of concrete injury, and several have held that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing.") (collecting cases); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645, 647 (N.D. W. Va. 2016) (TCPA "liberaliz[es] and codif[ies]" the intrusion-upon seclusion tort and is analogous to trespass-to-chattels; *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 7450471, at *4 (E.D. La. Dec. 28, 2016) ("wasted time associated with receipt of an unlawful fax or telephone call suffices to confer standing to sue under the TCPA").

and summarized at App. 300-301. Although not required at this stage, the same is true for each member of the proposed Class, as defined. The analysis of Plaintiff's expert, Verkhovskaya, identified thousands of NDNC and IDNC violations after extensive filtering and screening. App. 400-409, ¶¶ 8, 43-82. Verkhovskaya developed and applied to the Agent's call logs a methodology to identify telephone numbers which received two or more calls after they were on the NDNC for at least 31 days prior after excluding business and government telephone numbers which do not qualify for registration on the NDNC. App. 402-406, at ¶¶ 56-77. Verkhovskaya also developed and applied to the Agent's call logs a methodology to identify telephone numbers requested to be placed on the USHealth's IDNC, or otherwise expressed similar intent, and nevertheless received at least one more call within a 12-month period (excluding reassigned numbers, current customers, and other calls that did not properly fit that criteria). App. 406-409, at ¶¶ 78-82.

As to Class members on USHealth's IDNC list, or those that requested to be put on its INDC list but were not and still received telemarketing calls, it is well recognized that "[t]he receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." *Cordoba*, 942 F.3d at 1270 (concluding that absent class members have Article III standing where member of the defendants' internal do-not-call list class who did not ask to be put on the internal do-not-call list have standing).[5] Standing is even more readily met as to those Class members who

---

[5] *See also Krakauer*, 925 F. 3d at 652 (affirming standing of IDNC and NDNC classes where class members "had to receive two calls within one year to a number that was listed on the Do-Not-Call registry, just as the TCPA provides"); *Parker v. Universal Pictures*, No. 616CV1193ORL41DCI, 2019 WL 1521708, at *3, *7 (M.D. Fla. Feb. 28, 2019) (finding standing to proceed on behalf of IDNC and NDNC classes), *report and recommendation adopted*, 2019 WL 1518958 (M.D. Fla. Apr. 8, 2019). *Cf. Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (in ATDS case, plaintiff could represent the class because all had the "same injury" of receiving improper calls); *Youngman v. A&B Ins. & Fin., Inc.*, No. 616CV1478ORL41GJK, 2018 WL 1832992, at *4 (M.D.

were listed on the NDNC when USHealth's Agents called them. *See Cordoba v DIRECTV, LLC*, 942 F.3d at 1271 (holding telemarketing calls "to individuals on the National Do Not Call Registry … suffered an injury [under Article III] that is traceable to [the defendant's] misconduct -- if [the defendant] had followed the law and not called numbers on the Registry, they would not have been injured").[6] Accordingly, Plaintiff and all members of the Class have Article III standing.

    C.    **The Class Meets All Requirements of Fed. R. Civ. P. 23(a) and LR 23.2(a-c)**

        1.    **Numerosity – FRCP 23(a)(1) and LR 23.2(b)(1)**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable[.]" LR 23.2(b)(1) requires an approximation of the class size.

"To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *James v. City of Dallas, Tex.*, 254 F.3d 551, 570 (5th Cir. 2001) (internal quotes and citation omitted), *abrogated on other grounds*, *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (affirming class of "over 100 class members"). "While there is no magic number, a class of more than 100 members generally satisfies the numerosity requirement." *Henderson v. Eaton*, No. CIV.A. 01-0138, 2002

---

Fla. Mar. 22, 2018) (class representative sufficiently demonstrated standing where he received "a prerecorded telephone call placed via an ATDS ... on his cellular telephone promoting the goods and services of [Defendant] in December of 2015.") (ellipsis in original), *report and recommendation adopted*, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018); *Machesney v. Lar-Bev of Howell, Inc*., 317 F.R.D. 47, 59 (E.D. Mich. 2016) ("any 'recipient' of an unsolicited fax advertisement has standing to assert a TCPA claim.").

[6] *See also Krakauer*, 925 F. 3d at 652; *Parker v. Universal Pictures*, 2019 WL 1521708, at *3; *Toney v. Quality Res., Inc*., 323 F.R.D. 567, 582-83 (N.D. Ill. 2018) (finding NDNC plaintiff had standing because "[l]oss of time and privacy responding to unsolicited communications are concrete injuries that confer Article III standing, and the record shows that the proposed class members lost time and privacy as a result of [defendant's] telemarketing campaign."); *Allard v. SCI Direct, Inc*., No. 16-CV-01033, 2017 WL 3236448, at *5 (M.D. Tenn. July 31, 2017) (finding plaintiff adequately represented DNC class because "any person has statutory standing to assert a violation of the TCPA, regardless of whether she feels offended or not.").

WL 10464, at *1 (E.D. La. Jan. 2, 2002) (numerosity satisfied in Fair Debt Collection Practices Act (FDCPA) case where improper form letter was sent to victims over 252 times). *See also Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir.1999) (finding that class of 100 and 150 satisfies numerosity requirement). *See Zeidman v. J. Ray McDermott & Co*., 651 F.2d 1030, 1038 (5th Cir. 1981) (noting approvingly of classes with as few as twenty-five members).

"[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co*., 696 F.2d 925, 930 (11th Cir.1983). "If the court can draw reasonable inferences from the facts before it as the approximate size of the class and the infeasibility of joinder, the numerosity requirement is satisfied." *Winston v. Jefferson Cty., Ala*., No. 2:05-CV-0497-RDP, 2006 WL 6916381, at *6 (N.D. Ala. June 26, 2006). In *Castro v. Collecto, Inc*., 256 F.R.D. 534 (W.D. Tex. 2009), the court found the class large enough so that joinder was impracticable where the defendant sent a letter to over 500 individuals allegedly in violation of FDCPA. The Rule 23(a)(1) inquiry ultimately assesses "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman*, 651. F.2d at 1038. Such factors include: "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id. See also Accounting Outsourcing, L.L.C. v. Verizon Wireless Pers. Commc'ns*, L.P., No. CIV.A. 03-CV-161, 2007 WL 7087615, at *1 (M.D. La. Aug. 2, 2007) (TCPA class settlement consisting of 10,145 members in Louisiana, Alabama and Florida "Joinder of these widely dispersed, numerous Class Members into one suit would be impracticable.").[7]

---

[7] Settlement classes must satisfy all of the requirements of Rule 23 except manageability. *See Kemp v. Tower Loan of Mississippi*, LLC, No. 3:15CV499-CWR-LRA, 2017 WL 3426240, at *2 (S.D. Miss. Aug. 8, 2017) (citing *In re Deepwater Horizon*, 739 F.3d 790, 818 (5th Cir. 2014)). The "rigor required" for scrutiny of the class action requirements does not "diminish in the

Here, expert analysis of Agent call logs reviewed to date reveals that over 16,000 Class members received calls in violation of the IDNC and an estimated over 75,000 received calls in violation of the NDNC for one region alone.[8] App. 391-392, at ⁋ 8. USHealth's Agents were not limited to a geographic region (App. 11-12) and the area codes of the Class members on the call logs are dispersed throughout country. App. 401, at ⁋ 54. The size and geographic dispersion of the Class satisfies the numerical requirement of Rule 23(a)(1), provides the approximation required by LR 23.2(b)(1), and makes joinder impactable. Numerosity is therefore satisfied.

2. <u>Commonality – Rule 23(a)(2) and LR 23.2(b)(4)</u>

a. <u>Common Characteristics of Class Members – Rule 23(a)(2)</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class[.]" To fulfill this requirement, a plaintiff must demonstrate that the class claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, "commonality requires classwide proceedings to have the ability 'to generate common answers apt to drive the resolution of the litigation.'" *See also Heartland Payment Sys.,* 851 F. Supp. 2d at 1052 (*quoting Dukes,* 564 U.S. at 350).

---

settlement-class context." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1051 (S.D. Tex. 2012).

[8] Given the limited time available to analyze the call logs (production began on February 19, 2020), and the associated cost of the analysis, Verkhovskaya analyzed a statistically significant sample of the NDNC calls to identify the actual number of violations in the sample and extrapolate an estimate of all violations in the call logs. App. 391-392, at ⁋ 8. The exact number of total NDNC violations can be ascertained using Verkhovskaya's methodology, should the Court require at this stage; however, the extrapolation is a reliable estimate based on the NDNC sample.

Thus, "'commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'" *In re Deepwater Horizon*, 739 F.3d at 810 (*quoting Dukes*, 564 U.S. at 350). Even post-*Dukes*, "[t]he threshold for commonality is not high: the Fifth Circuit has recognized that 'even a single common question will do.'" *Ituah by McKay v. Austin State Hosp.*, No. A-18-CV-11-RP, 2020 WL 354949, at *6 (W.D. Tex. Jan. 3, 2020), *report and recommendation adopted*, No. 1:18-CV-11-RP, 2020 WL 343973 (W.D. Tex. Jan. 21, 2020) (*quoting In re Deepwater Horizon*, 739 F.3d at 811); *see also Heartland Payment Sys.,* 851 F. Supp. 2d at 1052 (no requirement that "all questions of law and fact be common," or that "each class member have 'suffered a violation of the same provision of law'") (*quoting Dukes*, 564 U.S. at 350). Commonality is thus satisfied if "the answers to questions about [the defendant's] alleged misconduct and the harm it caused would be common as to all of the class members, and would thus inform the resolution of the litigation if it were not being settled." *Heartland Payment Sys.*, 851 F. Supp. 2d at 1054.

The common questions of law and fact in this TCPA case include, but are not necessarily limited to whether, after March 29, 2014:

- USHealth's Agents (a) completed more than one telephone solicitation call (b) in a 12-month period (c) more than 31 days after the landline, wireless, cell or mobile telephone number to which the call was placed was registered with the NDNC;

- USHealth's Agents (a) completed one or more calls (b) to a landline, wireless, cell, or mobile telephone number; (c) which was requested to be registered on USHealth's IDNC;

- USHealth is vicariously liable for those calls; and the violations were knowing or willful.

Each Class member suffered a common injury arising from a violation of one of two provisions of the TCPA. Answers to these common questions will resolve all or virtually all of the issues central to the validity of each one of the claims in one stroke. Because Plaintiff's claim arises from the calling practices of Defendant's Agents, as described above, all or nearly all of the issues

13

of law and fact are common to the Class and can be – indeed have been – answered by examining the Agents' call logs, as discussed above in Section I.B., and more fully in the Expert Report of Anya Verkhovskaya at App. 388-423. Therefore, certification of the Class will produce common answers sought by the parties, including Defendant. Commonality is easily satisfied.

**b.    Distinguishing and Common Characteristics - LR 23.2(b)(3)**

LR. 23.2(b)(3)-(4) is met because in virtually every way, all members of the Class share common characteristics. Every member: (i) is a consumer; (ii) registered his/her residential or personal cellular telephone number on the NDNC or requested that USHealth place that number on its IDNC; (iii) received telemarketing calls, at least one call more than 31 days after registration on the NDNC during a twelve month period <u>or</u> at least one call after asking to be listed on the IDNC or asking not to be called back, from USHealth's Agents beginning March 29, 2014. Class members are dispersed throughout the United States. USHealth's Agents were retained to market and sell USHealth's insurance products to consumers across the country (App. 11-12), and the Class' area codes reflected on the call logs show that they are dispersed throughout the United States. App. 401, at ¶ 54. Plaintiff and each proposed Class member have common financial incentives. Statutory damages under the TCPA are limited to $500 for each negligent violation and $1,500 for each willful violation. *See* 47 U.S.C. § 227(b)(3)(B); 47 U.S.C. § 227(b)(3)(C).

**3.    Plaintiff's Claims are Typical of The Class Members' – Rule 23(a)(3)**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" As the Fifth Circuit found in a TCPA case, "the threshold[] for … typicality under Rule 23(a) [is] not high[.]" *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). *See also Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993).

Typicality, "does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the

14

putative class. [9] If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James*, 254 F.3d at 571. Here, as in another Fifth Circuit TCPA in this Circuit, typicality was satisfied where a defendant made similar unsolicited transmissions to the class "in the same manner and under the same circumstance" because that claim was typical of every class member. *See Accounting Outsourcing,* 2007 WL 7087615, at *1.

Plaintiff's TCPA claims are typical of those of the Class. The relevant question is whether Plaintiff raises claims and legal theories typical of the Class, individuals who did not consent to receive calls or text messages made by US Health's Agents because they were on the NDNC or requested to be placed on USHealth's IDNC. The harm suffered by Plaintiff is identical to the harm suffered by the Class members in that, in both instances, their statutory right to privacy was violated by Defendant when its Agents called them in violation of the NDNC and IDNC provisions of the TCPA. Each Class member claims the same statutory damages for invasion of a statutory right to privacy that resulted from Defendant's telemarketing calls. Thus, there is no danger the Plaintiff will be preoccupied with a unique defense because the defenses here are those that will necessarily be identically applied to all Class Members, such as USHealth's vicarious liability[10]

---

[9] *See also Heartland Payment Sys.*, 851 F. Supp. 2d at 1054 (same). *Cf. Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2015 WL 11623393, at *3 (W.D. Tex. Oct. 21, 2015) (finding typicality satisfied in Fair Credit Reporting Act case where claims of plaintiff and settlement class "concern the same alleged [] policies and practices, arise from the same legal theories, and allege the same types of harm and entitlement to relief"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007) (typicality "does not focus as much on the relative strengths of the case of the named and unnamed plaintiffs as it does on the similarity of the legal and remedial theories behind their claims") (internal quotes and citation omitted); *Henderson*, 2002 WL 10464, at *3 ("A claim is typical if it arises from the same event or practice giving rise to the claims of other class members and is based on the same legal theory as the class members.").

[10] USHealth's vicarious liability for its Agents' calls is a merits issue. An entity "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *In the Matter of The Joint Petition Filed by Dish Network, LLC, et al.*, CG

or affirmative defenses. *See infra* at n.14. In sum, Plaintiff is typical of the absent Class members. Because he was allegedly subjected to the same USHealth telemarketing practices, he suffered from the same injuries, where per TCPA statutory damages both Plaintiff and the Class would benefit in precisely the same way from a judgment on the class claims alleged.

### 4.    Adequacy is Satisfied – Rule 23(a)(4) and LR 23.2(c)

Rule 23(a)(4) requires that Plaintiff "will fairly and adequately protect the interests of the class." "This element requires that the interests of the named plaintiff are aligned with the unnamed class members to ensure that the class representative has an incentive to pursue and protect the claims of the absent class members." *Henderson*, 2002 WL 10464, at *3. LR 23.2(c) requires Plaintiff to address the financial responsibility to fund the action. "The adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Adequacy is readily met here.

Hirsch readily meets the adequacy requirements because (1) his claims are representative of the proposed Class; (2) he is fully committed to the class (*see* App. 335-337); (3) he has no conflicts with the class; (4) he is a sophisticated representative (App. 334, 335, 339); and (5) he has selected proposed class counsel who are accomplished class counsel and well suited to assume the financial responsibility to prosecute this litigation (App. 341-342).

---

Docket No. 11-50 (FCC 13-54), 28 FCC Rcd 6574, 6582 ¶ 24 (2013) ("2013 FCC Ruling"). These include agency principles of direct agency, apparent authority and ratification. *Id*; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. at 673.

Adequacy is easily met in TCPA cases.[11] Plaintiff's TCPA claims are representative of the class for which he is seeking certification. His telephone number was listed on the NDNC and he requested to be placed on USHealth's IDNC. Despite that, like all Class members, he received telemarketing calls from USHealth's Agents that violated the TCPA. *See* App. 335-336, 337-338. Thus, he is "united in asserting a common right" on behalf of the Class and their interests are not antagonistic. *See DeHoyos,* 240 F.R.D.at 283 (*quoting In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 208 (5th Cir.1981)). Plaintiff is committed to the Class, having spent over 200 hours on the case performing duties far beyond the value of his individual claim. App. 337. As demonstrated in the commonality and typicality sections above, Plaintiff's interests are fully aligned with those of the Class in proving USHealth violated the TCPA and is liable for statutory damages. Hirsch, a successful and well-educated businessperson, is a sophisticated representative who can act on behalf of the Class and possesses at least "a layperson's understanding of the law and [the] claims." *Cleven v. Mid-Am. Apartment Communities, Inc*., 328 F.R.D. 452, 462 (W.D. Tex. 2018). App. 334, 335, 339. As discussed below, Hirsch selected accomplished class counsel who are well suited to assume the financial responsibility to prosecute this action. App. 341-342.

### D.   The Class Meets All Requirements of Rule 23(b)(3) and LR 23.2(b)(5)

Under Rule 23(b)(3), a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

[11] Where, as here, a plaintiff asserts classwide TCPA claims, courts have found the adequacy is met. *See*, *e.g.*, *Accounting Outsourcing*, 2007 WL 7087615, at *1 ("Plaintiffs interests do not conflict with absent Class Members and Plaintiffs interests are co-extensive with absent Class Members."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 688 (S.D. Fla. 2013) (Plaintiff "will adequately represent both putative classes in this case. [Plaintiff] and the class members seek to hold Defendants liable for calling and leaving telephone messages in violation of the FDCPA and TCPA. The claims and defenses applicable to [plaintiff] and the classes appear to be substantially the same, if not identical, and there is no antagonism between [plaintiff's] interests and those of the putative class members.").

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, common questions of law and fact predominate.

### 1.      Common Questions of Law and Fact Predominate

"Before certifying a class under Rule 23(b)(3), a court must determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "In order to 'predominate,' common issues must constitute a *significant* part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). *Frey*, 602 F. App'x at 170 (emphasis added); *Mullen*, 186 F.3d at 626. Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Predominance requires consideration of "how a trial on the merits would be conducted if a class were certified." *Gene and Gene LLC*, 541 F.3d at 326 (*quoting Bell Atl. Corp. v. AT&T Corp*., 339 F.3d 294, 302 (5th Cir. 2003)). This "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* (*quoting Bell Atl.*, 339 F.3d at 302); *see also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 504 (S.D. Tex. 2004) (citation omitted). However, Plaintiff need not show he will *prevail* on predominantly common issues; only that he can *offer common evidence* to prove his claims. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). It is enough if common issues predominate in the case *as a whole*; proof of each element need not be predominantly common. *See Amgen*, 568 U.S. at 469 ("Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." (emphasis in original)). Where, as here, the defendants' liability under the statute at issue is the central question, predominance can be established on that basis alone. *See In re*

*Deepwater Horizon*, 739 F.3d at 817 ("Even after *Comcast,* the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish 'liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members.'"); *Lehocky*, 220 F.R.D. at 504 (when deciding predominance "courts focus on issues relating to the defendants' liability. If the liabilities are common to the class, common questions are held to predominate over individual questions." (internal citation omitted)).

Plaintiff establishes predominance in two independently sufficient ways: common issues predominate as a whole; and common issues predominate as to each component of Plaintiff's claim. This litigation will focus overwhelmingly on common issues, particularly the telemarketing calls made by USHealth's Agents. Plaintiff also establishes predominance by showing that he will attempt to prove USHealth's NDNC and IDNC violations, using common evidence.

### a.    <u>Common Issues Predominate</u>

The central question here is whether telemarketing calls made by USHealth's Agents violated the TCPA. *See generally Castro*, 256 F.R.D. at 543 (finding predominance was satisfied in Fair Debt Collection Practices Act class action where "[t]he central issue is . . . whether Defendant's practice of mailing the letter to the members of the class violated the FDCPA").[12] To establish USHealth's liability at a trial on the merits, Plaintiffs must show that after March 29, 2014: (1) USHealth's Agents, (a) completed more than one telephone solicitation call, (b) in a 12-month period, (c) more than 31 days after the landline, wireless, cell or mobile telephone number

---

[12] Violations of the TCPA "are not per se unsuitable for class resolution." However, "there are no invariable rules regarding the suitability of a particular case filed under [the ATDS section] of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper. This of course means that plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced." *Gene and Gene LLC,* 541 F.3d at 328.

to which the call was placed was registered with the NDNC; (2) USHealth's Agents (a) completed one or more calls, (b) to a landline, wireless, cell, or mobile telephone number, (c) which was requested to be registered on USHealth's IDNC; and (3) that USHealth is vicariously liable for those calls. These liability issues control entirely the outcome of this case, are common to this Class, and would constitute a significant part (if not all) of any individual cases if tried individually. *Frey*, 602 Fed. App'x. at 169-70. These common questions predominate over any individual issue and not only can – but, as Verkhovskaya's expert report analyzing the Agents' call logs produced to date demonstrates, have – been answered here.[13] App. 390-393, 400-409, 422-23. These issues will control the outcome of this case, are common to the class, and are consequently predominant. *Id*.

### b.    Common Evidence Predominates

Common evidence necessary here for trial falls into two categories: evidence of Agents' telemarketing calls to Class members as determined from their call logs and the agency relationship between USHealth and the Agent. Additionally, if Plaintiff elects to attempt to prove it common evidence of the willfulness of USHealth's violations will also be necessary.

USHealth's Agents' call logs are common evidence through which Plaintiff can establish liability on a classwide basis. As discussed above, Plaintiff's expert analyzed the call logs produced by VanillaSoft to demonstrate that Plaintiff's claims can be proven on a classwide basis using common evidence. App. 398-409, at ¶ 42. Defendants' duties under the TCPA are identical and the VanillaSoft call logs demonstrate that USHealth's Agents violated those duties thousands

---

[13] If Plaintiff successfully establishes US Health's liability, he can attempt to prove an additional common damages question, whether USHealth's violations were knowing or willful. Regardless of the outcome, damages will still be calculated on a common basis pursuant to the TCPA's statutory scheme of $500 for each negligent violation and $1,500 for each willful violation. *See* 47 U.S.C. § 227(b)(3)(B); 47 U.S.C. § 227(b)(3)(C).

of times over both as to consumers who registered their telephone numbers on the NDNC and requested registration on USHealth's IDNC. App. 391-392, at ¶ 8. The Agent's call logs are therefore common evidence of US Health's Agent's calls in violation of the NDNC and IDNC provisions.[14] USHealth's duty not to make telemarketing calls to those on the NDNC or their own IDNC exists as to all members of the Class pursuant to the TCPA.[15] USHealth's contracts are common evidence necessary to prove its vicarious liability for telemarketing calls made by them to the Class which violated the TCPA. Each Agent signed the same standard "Agent Agreement," in which USHA "contracts with and appoints Agents to represent and promote the insurance coverage and other services, memberships and products offered for sale, enrollment or distribution by USHEALTH Advisors" and authorizes them to "personally solicit applications and enrollment

---

[14] Evidence of whether USHealth's violations were negligent or willful is set forth in the Freeman Declaration, documents and testimony summarized in the Statement of Facts and similar evidence which is common to the class. Therefore, even if some differences may exist, that is not fatal to class certification because Plaintiff's burden is to "show that common issues predominate, not that there are no individual issues to be resolved." *Frey*, 602 Fed. App'x. at 170.

[15] Defendants *may* raise affirmative defenses that present common questions and can be resolved with common evidence. The NDNC registry does not apply to telemarketers who have: (1) an established business relationship ("EBR") with the person called; or (2) prior express consent to call. 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14)(i)-(ii). Consent must be in a "signed, written agreement" stating the consumer agrees to be contacted and includes the telephone number called. 47 C.F.R. § 64.1200(c)(2)(ii). EBR and consent are affirmative defenses for which defendants bear the burden of proof and do not preclude certification. *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 397-99 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) (EBRs and consent are affirmative defenses, but they do not preclude trial on a classwide basis); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012) ("consent under the TCPA is an affirmative defense upon which [defendant], bears the burden"); *see also McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 174 (S.D. Cal. 2019) ("[I]n the absence of any evidence of consent by the defendant, consent is a common issue with a common answer."). Defendants have produced no evidence of EBRs or consent. Regardless, Verkhovskaya excluded calls with notations indicating that a consumer was a current or past customer. App. 402, 403, 407, 408, 419, at ¶¶ 54-55, 58, 80, 124-127. Therefore, the call logs are common evidence that will defeat the affirmative defense, if asserted at trial.

21

forms". *See* App. 65. Whether the violations are willful can be established by evidence that is common among all Class members as is demonstrated in the accompanying Freeman Declaration (App. 11), Expert Report of Ray Horak (App. 469-474, 479-504) and the documents and testimony summarized in the Statement of Facts. Therefore, as required in *Gene*, class-wide proof is available to decide the predominant common questions and mini-trials are not needed to determine these common issues.

### 2.     A Class Action is The Superior Form of Adjudication – Rule 23(b)(3)

In determining whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy the Court examines, among other things, the following factors apply: (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action. *See* Fed. R. Civ. P. 23(b)(3). All of those factors favor certification.

First, class treatment is superior to many hundreds or thousands of individual claims in a TCPA case where common issues of modest individual value for each claim predominate. Class actions thus create efficiencies in the use of judicial resources. *Frey v. First Nat'l Bank Sw.*, No. 3:11-CV-3093-N, 2013 WL 11309592, at *8 (N.D. Tex. Feb. 20, 2013) (granting class certification), *aff'd sub nom. Frey v. First Nat. Bank Sw.*, 602 F. App'x 164 (5th Cir. 2015). "A federal class action is ... designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974).

Damages under the TCPA are limited to $500 or $1,500 per violation. Therefore, absent class members have a minimal interest in individually controlling their separate actions, most of which would otherwise not be brought. Given limited damages relative to the costs of litigation, a class action is a superior means of adjudicating small statutory damage claims, such as TCPA

22

claims. *See Mims*, 565 U.S. at 386 ("The current federal district court civil filing fee is $350. 28 U.S.C. § 1914(a). How likely is it that [an individual] party would bring a $500 claim in . . . federal court?"); *see also McCormick v. 7-Eleven, Inc.*, No. 3:06-cv-0127-N, 2009 WL 10704102, at *8 (N.D. Tex. Mar. 12, 2009) (certifying class under the Fair Debt Collection Practices Act; finding "a class action is the superior method of adjudication" because "given the minimal damages likely at stake for the vast majority of individual claimants, they are unlikely to pursue individual claims" and therefore "a class action is the only viable remedy for most members of the proposed class"). Where, as here, the costs of litigating an individual action would exceed the expected recovery of each individual class member are commonly referred to as "negative value suits." *See In re TWL Corp.*, 712 F.3d 886, 903 (5th Cir. 2013) ("A negative value suit is a case in which the costs of enforcement in an individual action would exceed the expected individual recovery."). "The most compelling rationale for finding superiority in a class action" is "the existence of a negative value suit[.]" *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). Courts thus routinely find that TCPA cases, such as this negative value suit, meet the superiority requirement. [16]

Second, the extent of the existing litigation favors certification. For two years Plaintiff has demonstrated great dedication to the pursuit of his claims (devoting over 200 hours) on behalf of absent class members who, if they pursued individual litigation, would seek identical information proof. *See* App. 336-337. Third, as USHealth is based in this District, it is desirable and efficient

---

[16] *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 602 (N.D. Ga. 2017) *vacated and remanded,* 942 F.3d 1259 (11th Cir. 2019) (certifying TCPA class finding "a class action is superior to other methods"); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) ("TCPA classes are routinely certified" because "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims' all point toward the superiority of a class action." (citation omitted)).

to concentrate the class-wide resolution of TCPA claims here. Finally, Class treatment will also be more manageable and efficient than numerous other individual actions litigating the same issues with the same proof. Therefore, a class action is superior to other available methods for fairly and efficiently adjudicating USHealth's alleged violations of the TCPA.

### E.   Jurisdictional Amount – LR 23.2(d)

A jurisdictional amount per LR 23.2(d) is not required because subject matter jurisdiction is based on 28 U.S.C. § 1331, as Plaintiff's claims arise under the TCPA, a federal statute. *See Mims*, 565 U.S. at 376-77; *See also* Dkt. 42 (Amended Compl.), at ⁋ 8; Dkt. 43 (Answer), at ⁋ 8.

### F.   Proposed Notice Program – LR 23.2(e)

Pursuant to LR 23.2(e), Plaintiff will provide direct notice to class members via email and mailed postcards. *See* App. 336-337, at ⁋ 20; App. 393, 420, at ⁋⁋ 12, 117-124. Notice costs would be advanced by Class Counsel (App. 5-6, at ⁋ 20), absent a settlement administration fund, and range from $54,334 for a class of 135,000 consumers to $414,748 for 2 million consumers. App. 336-337.

### G.   Discovery Necessary for Class Certification Hearing- LR 23.2(f)

Pursuant to LR 23.2(f), presently, Plaintiff does not believe additional discovery is required to conduct a class certification hearing because he has met his burden. However, Defendant and third parties, including VanillaSoft, have not completed their discovery responses and productions. VanillaSoft has not committed to a completion date. In addition to outstanding discovery requests and Requests for Admission to Defendants, the Court set a May 8, 2020, substantial completion of certain discovery by Defendant USHA. Dkt. 156. Therefore, Plaintiff reserves the right to offer new testimony or as yet produced evidence at the hearing.

24

### H.   Arrangement for Plaintiff's Attorney Fees – LR 23.2(g)

Pursuant to LR 23.2(g), Plaintiff states that attorney's fees are purely contingent and subject court approval. *Accord* Fed. R. Civ. P. 23(h). Plaintiff's counsel agreed to share any fees awarded by the court based on their relative lodestars, with the provision that the Law Office of Jim Zadeh, P.C. would receive not less than 5% of the total fees awarded.

## II.   THE COURT SHOULD APPOINT CLASS COUNSEL – Rule 23(g)

If the Court grants class certification, it should appoint class counsel who will "fairly and adequately" represent the Class. Plaintiff seeks appointment of Berger Montague PC as class counsel pursuant to Fed. R. Civ. P. 23(g)(1)(A)(i-iv) (enumerating factors); *see also Henderson*, 2002 WL 10464, at *3 (To adequately represent the class, "counsel must be qualified, experienced, and able to prosecute the action vigorously."). Berger is well suited to serve as class counsel because, along with its co-counsel,[17] it has vigorously litigated this case on behalf of Plaintiff and the proposed Class. App. 1-5, at ¶¶ 4-19. For over 50 years, the firm has successfully litigating some of the largest and most significant class actions in the United States, including TCPA and similar consumer class actions. App. 341-342. Berger has the resources necessary to litigate cost intensive class actions and has committed to do so here.[18] App. 2-3, at ¶ 10.

### CONCLUSION

Plaintiff respectfully requests that the Court certify the proposed Class, appoint Plaintiff to serve as the class representative and appoint Berger Montague to serve as class counsel.

---

[17] Plaintiff is also represented by Washington Global Law Group, Zadeh, and Burns Charest LLP, all experienced counsel whose work will benefit the class. App. 534-553.

[18] Local Rule 23.2(b)(3)-(4) are satisfied because "all that is required" is that plaintiff describe their experience conducting this type of litigation and commit funds necessary to prosecute the action *Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cty.*, No. 3:01-CV-0746L, 2002 WL 1033085, at *6 (N.D. Tex. May 21, 2002). *See* App. 2-3, at ¶ 10; App. 340-381, 534-553.

Dated:  May 1, 2020                    Respectfully submitted,


                                       */s/ Michael Dell'Angelo*
                                       Michael Dell'Angelo
                                       Lane L. Vines
                                       BERGER MONTAGUE PC
                                       1818 Market Street, Suite 3600
                                       Philadelphia, PA 19103
                                       Telephone:  (215) 875-3000
                                       Facsimile:  (215) 875-4604
                                       mdellangelo@bm.net
                                       lvines@bm.net

                                       Max F. Maccoby
                                       WASHINGTON GLOBAL LAW GROUP PLLC
                                       1701 Pennsylvania Avenue, NW, Suite 200
                                       Washington, D.C.  2006
                                       Telephone:  (202) 248-5439
                                       Facsimile:  (202) 580-6559
                                       maccoby@washglobal-law.com

                                       Jamshyd (Jim) M. Zadeh
                                       LAW OFFICE OF JIM ZADEH, P.C.
                                       1555 Rio Grande Avenue
                                       Fort Worth, TX 76102
                                       Telephone:  (817) 335-5100
                                       jim@zadehfirm.com

                                       Warren T. Burns (TX Bar No. 24053119)
                                       Daniel Charest (TX Bar No. 24057803)
                                       BURNS CHAREST LLP
                                       900 Jackson Street, Suite 500
                                       Dallas, TX  75202
                                       Telephone:  (469) 904-4550
                                       Facsimile:  (469) 444-5002
                                       wburns@burnscharest.com
                                       dcharest@burnscharest.com

                                       *Attorneys for Plaintiff and the Proposed Class*

26

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on April 24, 2020, counsel for the parties conferred by email regarding Plaintiff's intention to file foregoing Motion for Class Certification. By email on April 30, 2020, Defendants USHealth Advisors, LLC and USHealth Group, Inc. advised that they do not consent to the Motion.

<u>    /s/ Michael Dell'Angelo            </u>

Michael Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604
mdellangelo@bm.net

*Attorneys for Plaintiff and the Proposed Class*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

_/s/ Michael Dell'Angelo_
Michael Dell'Angelo

28