IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AARON HIRSCH, individually and on behalf of all others similarly situated, | : : : |
| Plaintiff, | : Civil Action No. 4:18-cv-00245-P : |
| v. | : : |
| USHEALTH ADVISORS, LLC and USHEALTH GROUP, INC., | : : : |
| Defendants. | : : |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**Table of Contents**

ARGUMENT ................................................................................................................................ 2

    Ascertainably ................................................................................................................... 2

    Standing ........................................................................................................................... 3

    Commonality ................................................................................................................... 4

    Residential Telephone Subscribers ................................................................................. 4

    Solicitation ...................................................................................................................... 6

    IDNC and Registration on NDNC. .................................................................................. 6

    Consent/Permission/EBR. ............................................................................................... 7

    Hirsch is Not Atypical .................................................................................................... 8

    Arbitration ....................................................................................................................... 8

    Vicarious Liability .......................................................................................................... 9

    Adequacy of Counsel ................................................................................................... 10

CONCLUSION ........................................................................................................................... 10

# Table of Authorities

Page(s)

Cases and Other Authorities

*Abramson v. Oasis Power LLC*,
  2018 WL 4101857 (W.D. Pa. July 31, 2018) ............................................................................. 3
*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013) .................................................................................................................. 1
*Ballard v. Equifax Check Servs., Inc.*,
  186 F.R.D. 589 (E D. Cal.1999) ............................................................................................... 8
*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) .................................................................................................. 10
*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) ................................................................................................ 3
*Bridging Communities Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016) .................................................................................................. 8
*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015) ..................................................................................................... 2
*Chinitz v. NRT W., Inc.*,
  2019 WL 4142044 (N.D. Cal. Aug. 30, 2019) ....................................................................... 10
*Clauss v. Legend Sec., Inc.*,
  2014 WL 10007080 (S.D. Iowa Sept. 8, 2014) ........................................................................ 5
*Conrad v. GM Acceptance Corp.*,
  283 F.R.D. 326 (N.D. Tex. 2012) ............................................................................................. 7
*Cordoba v DIRECTV, LLC*,
  942 F.3d ................................................................................................................................ 4, 6
*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ........................................................................... 1
*Cunningham v. Politi*,
  2019 WL 2517085 (E.D. Tex. Apr. 30, 2019) .......................................................................... 5
*Cunningham v. Rapid Response Monitoring Services, Inc.*,
  251 F.Supp.3d 1187 (M.D. Tenn. 2017) ................................................................................... 3
*Danehy v. Time Warner Cable Enters.*,
  2015 WL 5534094 (E.D.N.C. Aug. 6, 2015) ............................................................................ 6
*Fitzhenry v. ADT Corp.*,
  No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) .................................................... 3
*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) .................................................................................................... 4
*Garcia v. Houston Nw. Med. Ctr. Inc.*,
  84 F.3d 431 (5th Cir. 1996) ...................................................................................................... 9
*Gene and Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008) ................................................................................................ 4, 7

*Golan v. Veritas Entm't, LLC*,
  788 F.3d 814 (8th Cir. 2015) ......................................................................................... 6
*Gordon v. Caribbean Cruise Line, Inc.*,
  2019 WL 498937 (N.D. Ill. Feb. 8, 2019) ................................................................... 10
*Hammett v. Am. Bankers Ins. Co.*,
  203 F.R.D. 690 (S.D. Fla. 2001) .................................................................................... 8
*Hodgin v. Parker Waichman LLP*,
  2015 WL 13022289 (W.D. Ky. Sept. 30, 2015) ........................................................... 5
*Holt v. Noble House Hotels & Resort, LTD*,
  2018 WL 5004996 (S.D. Cal. Oct. 16, 2018) ............................................................. 10
*In re Morning Song Bird Food Litig.*,
  320 F.R.D. 540 (S.D. Cal. 2017) ................................................................................... 2
*In Re Rules & Regulations Implementing,*
  *[TCPA]*, 18 F.C.C. Rcd. 14014 (2003) ......................................................................... 5
*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)........................................................................................... 8
*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
  659 F.2d 1259 (4th Cir. 1981) ....................................................................................... 8
*Johnson v. Yahoo!, Inc.*,
  2016 WL 25711 (N.D. Ill. Jan. 4, 2016) ....................................................................... 8
*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015) ........................................................................ 3, 7, 8
*Kramer v. Hammond*,
  943 F.2d 176 (2d Cir. 1991)........................................................................................... 9
*Lee v. Credit Mgmt., LP*,
  846 F. Supp. 2d 716 (S.D. Tex. 2012) .......................................................................... 7
*Leyse v. Bank of Am., Nat'l Ass'n*,
  2020 WL 1227410 (D.N.J. Mar. 13, 2020)................................................................... 3
*London v. Wal-Mart Stores*, Inc.,
  340 F.3d 1246 (11th Cir. 2003) ................................................................................... 10
*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ......................................................................................... 1
*Morgan Guar. Tr. Co. of New York v. Blum*,
  649 F.2d 342 (5th Cir. 1981) ......................................................................................... 9
*Morris v. UnitedHealthcare Ins. Co.*,
  2016 WL 7115973 (E.D. Tex. Nov. 9, 2016) .............................................................. 6
*Poulos v. Caesars World, Inc.*,
  2002 WL 1991180 n.9 (D. Nev. June 25, 2002)........................................................ 10
*Powers v. Credit Mgmt. Servs., Inc.*,
  2013 WL 1156447 (D. Neb. Mar. 20, 2013) ............................................................... 1
*Roberts v. Scott Fetzer Co.*,
  2010 WL 3546499 (M.D. Ga. Sept. 7, 2010) .............................................................. 1
*Rosenberg v. Loan Depot.com LLC*,
  2020 WL 409634 (D. Mass. Jan. 24, 2020) ................................................................. 5
*Slamon v. Carrizo (Marcellus) LLC*,
  2020 WL 2525961 (M.D. Pa. May 18, 2020) .............................................................. 9

*Smith v. Truman Rd. Dev., LLC,*
   2020 WL 2044730 (W.D. Mo. Apr. 28, 2020) .......................................................................... 5
*Southwell v. Mortg. Inv'rs Corp. of Ohio,*
   2014 WL 4057166 (W.D. Wash. Aug. 14, 2014) ..................................................................... 5
*True Health Chiropractic, Inc. v. McKesson Corp.,*
   896 F.3d 923 (9th Cir. 2018) .................................................................................................... 7
*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016) ......................................................................................................... 1, 2
*Unger v. Amedisys Inc.,*
   401 F.3d 316 (5th Cir. 2005) .................................................................................................... 2
*Washington Mut. Fin. Grp., LLC v. Bailey,*
   364 F.3d 260 (5th Cir. 2004) .................................................................................................... 9
*Westmoreland v. Sadoux,*
   299 F.3d 462 (5th Cir. 2002) .................................................................................................... 9

Statutes

15 U.S.C. § 6155 .......................................................................................................................... 6, 7
47 U.S.C. § 227 ................................................................................................................................ 4
47 U.S.C. § 227(5)(c) ...................................................................................................................... 2
47 U.S.C. § 227(c) ........................................................................................................................... 4
47 U.S.C. § 227(c)(5) ...................................................................................................................... 2

Regulations

47 C.F.R. § 64.1200(c)(2) ............................................................................................................... 7
47 C.F.R. § 64.1200(d)(3) ............................................................................................................... 2
47 C.F.R. § 64.1200(e) .................................................................................................................... 5
*Rules and Regulations Implementing the TCPA of 1991,*
   70 Fed. Reg. 19,330 (April 13, 2005) ...................................................................................... 5

The issue at class certification is not which party will prevail at trial but whether common issues will predominate in litigating the merits. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 459 (2013). Defendants incorrectly assume Plaintiff must prove his claims now but cannot. If evidence, as here, is reliable and capable of proving an element on a classwide basis, nothing more is needed. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016)). Defendants also try to shift the burden for their unmet affirmative defenses to Plaintiffs. Defendants' Response is a mélange of misleading statements of law and fact, evidence unconnected to the *actual class members* identified from agents' call logs, improperly withheld (but unavailing) documents[1] and a "hired-gun" Report of Margaret Daley which shockingly distorts Verkhovskaya's Report and the facts[2] (it is little more than a "cut and paste" of four prior *unsuccessful* attacks on Verkhovskaya). Although "[r]easonable minds may differ" as to the reliability of plaintiffs' expert's methodology. *Id.* at 1049("Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed [expert's conclusions]"; matters concerning which expert's opinions are correct are factual questions for the

---

[1] Defendants proffer thousands of pages of exhibits and files (Dkt. 191-1 to -9, App. 250-327, 348-654, 908, 929-60, 1061-1113, 1141-42, 1622-2168, and 1619-20, at ¶¶ 10-12) that were improperly withheld or produced after discovery closed and should be excluded. *See Roberts v. Scott Fetzer Co.*, 2010 WL 3546499, at *4 (M.D. Ga. Sept. 7, 2010) (excluding evidence where defendant refused to produce it in discovery and submitted it for the first time opposing certification); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *1 (N.D. Ill. Aug. 29, 2013) (imposing sanctions and barring defense where defendants refused to produce requested discovery materials relevant to consent and existing business relationship ("EBR") in TCPA case); *Powers v. Credit Mgmt. Servs., Inc.*, 2013 WL 1156447, at *4 (D. Neb. Mar. 20, 2013) (sanctions where defendant withheld discovery and then submitted it to oppose class).
[2] *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (defendant opposing certification does not have "license to offer irrelevant and unreliable evidence").

jury.[3] Because Defendants' challenge is largely an attack on Verkhovskaya and an attempt to walk away from their own records, certification is warranted.

## ARGUMENT

*Ascertainably.* Defendants do not challenge ascertainably of the NDNC class. Defendants incorrectly assert that the IDNC class is overbroad because it does not include a 30-day safe harbor not found in the statute itself. The INDC Class definition tracks 47 U.S.C. § 227(c)(5) verbatim. Defendants *omit* in their citation to 47 C.F.R. § 64.1200(d)(3) its predicate -- telemarketers are *only* entitled to the safe harbor if they "instituted procedures for maintaining" an IDNC and meet "minimum standards" -- "an **affirmative defense**" (47 U.S.C. § 227(c)(5)), *i.e.*, Defendants' burden. Plaintiff demonstrated Defendants cannot meet their burden (*see* Dkt. 180, App. 11-17, 469-504), and they don't try, responding -- "[n]either [Freeman nor Horak] have any bearing on class certification issues so they are not directly addressed." Dkt. 190 at 4 n.5.[4] *See also* Reply App. ("RA") 32-33 at ¶¶ 8-12, RA 36-37 at ¶¶ 6-11, RA 281.

Reliance on agent call logs is warranted and reasonable. Agent call logs produced by third party VanillaSoft *objectively* verify the Class as Verkhovskaya demonstrates.[5] Dkt. 179-5, App. 391-420 at ¶¶ 8-11, 43-128; RA 313-18. Defendants' argument that they are *underinclusive* or incomplete fails.[6] Defendants' failure to maintain reliable records is *not* a basis to defeat class

---

[3] *See also Unger v. Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005) ("[C]ourts are not to insist upon a 'battle of the experts' at the [class] certification stage.").
[4] Verkhovskaya's application of the grace period to NDNC calls, which Defendants do not challenge, is equally applicable to IDNC. *See* Dkt. 180, App. 392 at ¶ 9, 402-04 at ¶¶ 56-66.
[5] Defendants repeat conclusory challenges to the CRM (*see, e.g.*, Dkt. 190 at 15 (commonality, registration on DNC list); Dkt. 190 at 25 (superiority). Plaintiff's response here applies to all.
[6] *See Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) (requiring inclusion of "all individuals who may have been harmed by a particular defendant could also severely undermine the named class representative's ability to present typical claims and adequately represent…the class"). *See, e.g.*, *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 550 (S.D. Cal. 2017) (certifying class where subpoenaed records identify only 6% of purchasers).

certification and would provide a judicially sanctioned roadmap for violating the law.[7] Defendants falsely claim the logs omit Plaintiff (Dkt. 190 at 1). Two years ago, Plaintiff requested all agent call logs (Dkt. 83 at 8); Defendants refused (Dkt. 137). The Court ordered production (Dkt. 156 at 12), but Defendants failed to comply. All along, unbeknownst to Plaintiff and the Court, Defendants had withheld a call log and other documents evidencing calls and may have even deleted records of calls made to Plaintiff. *See* RA 2, 5.

**Standing.** Defendants don't directly address Plaintiff's standing argument (*see* Dkt. 180 at 8, App. 334-39, 300-01) or authorities. He was injured like any other consumer, and their vague claim that Hirsch wanted to be called is wrong. Hirsch registered his number on the NDNC years before USHealth called (*id*. at 298, AH000260) and repeatedly objected to the calls, many of which were made *after* he sued.[8] (*id*. at 334-339) Regardless, Defendants' complaints as to Hirsch's actions and motives fail, because Hirsch was permitted to turn the tables on his harasser.[9] And, as discussed below, TCPA law is clear Hirsch has standing where, as here, he used his residential cell phone for limited business use. Mixed business/residential use is permissible too, and a cell phone is "residential" (*id.* at 335, ¶ 4). Defendants' assertion that standing, typicality and commonality

---

[7] *See Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) (TCPA); *Johnson v. Yahoo!, Inc.*, 2016 WL 25711(N.D. Ill. Jan. 4, 2016) (TCPA); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) (declining certification "would create an incentive…to violate the TCPA…and keep no records…knowing that it could avoid legal responsibility for the full scope of its illegal conduct").
[8] *Leyse v. Bank of Am., Nat'l Ass'n*, 2020 WL 1227410, at *4 (D.N.J. Mar. 13, 2020) (appeal pending) is distinguishable because there the plaintiff failed to offer evidence he suffered an injury and, unlike here, made "20+ follow-up calls" and *refused* to be added to the IDNC.
[9] *Cunningham v. Rapid Response Monitoring Services, Inc*., 251 F.Supp.3d 1187, 1194-6 (M.D. Tenn. 2017) (feigning interest to learn the identity of telemarketing wrongdoer is permissible and plaintiff has standing like any other TCPA victim); *Abramson v. Oasis Power LLC*, 2018 WL 4101857, at *5 (W.D. Pa. July 31, 2018) ("pos[ing] as an interested consumer does not, in itself, negate standing in private TCPA lawsuits."); *Fitzhenry v. ADT Corp*., 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014) (concerted documenting of telemarketing calls permissible).

3

fail because Hirsch is not identified on the call logs is false according to the source of the logs, VanillaSoft. RA 8-9 at ¶¶ 8, 9. Finally, under *Spokeo* Plaintiff is not *required* to demonstrate absent class members' standing, but he did so.[10] *See* Dkt. 178 at 9, 8, n.4; Dkt. 179 at 400-09, ¶¶ 8, 43-82at. Defendants mispresent *Flecha* quoting *the concurrence* to claim Plaintiff must establish absent class member standing. Dkt. 190, n.22. Shockingly, they omit the majority's conclusion: "Our court has ***not*** yet decided whether standing must be proven for unnamed class members, in addition to the class representative[…] we do not reach the issue."[11] Plaintiff accurately stated the law *and* demonstrated standing.

***Commonality.*** The parties agree Plaintiff "must advance a viable theory employing generalized proof to establish liability with respect to the class involved." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008). Confronted with such a theory, Defendants improperly assert a disguised *Daubert* challenge and unsubstantiated affirmative defenses mislabeled as commonality challenges. All these assertions fail readily as follows.

Residential Telephone Subscribers. Defendants mispresent Plaintiff's brief, claiming he "conveniently failed to inform the Court, the do-not-call regulations upon which this is entirely based apply *only* to '***residential*** telephone subscribers.'" (Dkt. 190 at 11 (*quoting* 47 U.S.C. § 227(c)). The ***first sentence*** of Plaintiff's Brief states: the TCPA "prohibits calls to residential telephone numbers listed on the [NDNC and IDNC]," citing 47 U.S.C. § 227, *et seq*. *See* Dkt. 178 at 1. *See also id.* at 3 (citing 47 U.S.C. § 227(c)), 7, 8, 14. Plaintiff showed how he would establish liability for such violations. Dkt. 178 at 7 (citing Dkt. 180 at 392, 404-06, at ¶¶ 10, 67-77).

---

[10] Defendants do not rebut Plaintiff's showing (*see* Dkt. 190 at 14), but do cite *Cordoba v DIRECTV, LLC*, 942 F.3d at 1271, which Plaintiff cited (Dkt. 178 at 9-10), and which confirms calls to those on DNC lists suffer an injury; Verkhovskaya specifies them. Dkt. 179-5 at App. 391-392, ¶ 8; RA at 316, 318-19.

[11] *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020) (internal citation omitted).

Defendants claim that "[t]here is authority that calls to cellular telephones categorically fail to satisfy the "residential telephone subscriber" element of the TCPA. *See Cunningham v. Politi*, 2019 WL 2517085, *4 (E.D. Tex. Apr. 30, 2019). *Cunningham* and its forerunners are wrong because the regulation they cite goes on to provide "unambiguously… that '[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers,' as described in a 2003 FCC Order. 47 C.F.R. § 64.1200(e) (*citing In Re Rules & Regulations Implementing [TCPA]*, 18 F.C.C. Rcd. 14014 (2003))."[12] The weight of authorities, including the FCC's interpretation, confirm a cellular telephone can be residential under the TCPA.[13] Defendants cite no contrary certification decision and their authorities confirm that these are questions for the fact finder.[14] Further, a plaintiff may pursue such TCPA claims for calls to a number used for business *and* residential purposes.[15] Defendants falsely claim (Dkt. 190 at 12) Verkhovskaya does adequately screen out business and government lines, she did (Dkt. 179-5, App. 404-06, at ¶¶ 67-77; RA 312-13, 315-18). Defendants concede that, if this assertion is true, it is a "decision for the fact-finder" (Dkt. 190

---

[12] *Smith v. Truman Rd. Dev., LLC*, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020).

[13] *Rosenberg v. Loan Depot.com LLC*, 2020 WL 409634, at *11 (D. Mass. Jan. 24, 2020) (cellular numbers on NDNC "presumed to be residential"); *Smith*, 2020 WL 2044730, at *10; *Hodgin v. Parker Waichman LLP*, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (FCC is clear: residential includes cell phones).

[14] Defendants' citation to *Loandepot.com,* a summary judgement decision, is telling. The court found "the FCC's Order presuming wireless numbers on the NDNC are residential numbers" instructive and observed that the *Dish* court relied on the FCC's order to find the plaintiff's expert there (***Verkhovskaya***) advanced a sufficient methodology to distinguish between residential and business lines, the same methodology ***Verkhovskaya*** uses here. *See infra*.

[15] The FCC declined to exempt "home-based businesses" from DNC restrictions. *Rules and Regulations Implementing the TCPA of 1991*, 70 Fed. Reg. 19,330, 19,331 (Apr. 13, 2005). Thus, a plaintiff, as here, may pursue DNC claims for calls to mixed-use lines. *See*, *e.g.*, *Clauss v. Legend Sec., Inc.*, 2014 WL 10007080, at *3 (S.D. Iowa Sept. 8, 2014) ("jury could reasonably conclude…phone number was simultaneously a residential and business phone"); *Southwell v. Mortg. Inv'rs Corp. of Ohio*, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014) (qualifying calls to cell phone also used to maintain farm and sell sheep). *Accord* RA 23, RA 28-29.

at 13). Daley's "manual and individualized investigation" (*id.* at n.17) is plainly wrong and confirms Verkhovskaya's methods are of sufficient substance. RA 318.

<u>Solicitation</u>. Defendants admit their calls were to "provid[e] free information" (Dkt. 190 at 20), a form of solicitation. Their citation recognizes "the FCC has determined that 'dual purpose' calls, those with both a customer service or informational component and a marketing component, are prohibited and constitute telephone solicitations." *Morris v. UnitedHealthcare Ins. Co.*, 2016 WL 7115973, at *8 (E.D. Tex. Nov. 9, 2016) (quotation omitted). Indeed, TCPA violations do not "require an explicit mention of a good, product, or service." *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015). Defendants' citation to *Morris* and *Danehy v. Time Warner Cable Enters.*, 2015 WL 5534094, *6, 10 (E.D.N.C. Aug. 6, 2015) are unavailing because the plaintiffs in those cases were existing customers.

<u>IDNC and Registration on NDNC</u>. Defendants offer a few examples of requests suggesting numbers were added to the IDNC where the request was not explicit. In fact, their agents intentionally excluded IDNC requests (RA 32-33, RA 36-38, RA 291-97); other poor record keeping is not a defense (*see supra* n.7); failure to address Horak (Dkt. 179-6; RA 291, 297-98) makes inclusion for any reason other than an explicit request meaningless (*see supra* at 6); and Defendants failed to show the examples under a "Request" code were not filtered out by Verkhovskaya. Dkt. 179-5, at 401-09 (¶¶ 54, 79-82); RA 306, 309 and 314. Defendants say Plaintiff must confirm current subscribers are also NDNC registrants. But that is not the law.[16] Congress charged the FTC with updating the list for "reassigned" numbers, *see* 15 U.S.C. § 6155, and

---

[16] Defendants misrepresent *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), which did not create a new requirement that the subscriber called be the one who made the request. It held "those whose numbers are on the Registry and nevertheless received marketing calls suffered an injury that is traceable to [defendant's] misconduct." *Id.* at 1271.

Defendants concede that the NDNC is self-correcting (Dkt. 190 at 15, n.23).[17] Even if it were not, Verkhovskaya can solves for it. Dkt. 197-5, at 402-04 (¶¶ 56-66); RA 319.

Consent/Permission/EBR. Defendants' assertion of "consent or permission to call, including the presence of an EBR or personal relationship" (Dkt. 190 at 23), are affirmative defenses[18] for which they bear the burden of proof.[19] *See* Dkt. 43 at 10 (classwide consent defense). When certifying the class, the court must "analyz[e] the consent defenses [the defendant] has actually advanced and for which it has presented evidence." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018). Defendants cite *Gene and Gene LLC*, 541 F.3d 318, but that case refused to lay down a broad rule "that the consent requirement in the case before us defeats the possibility of class certification" and restricted its holding to the proof asserted "in this case." *Id.* at 329. There, the plaintiffs offered "unsupported" assertions that the defendant "never obtained prior express invitation or permission from any class member," *id.*, relied on the mere fact that consent is an affirmative defense, *id.* at 327 and made no attempt to show how defendants' consent evidence failed to establish a triable issue of fact. In this case, Defendants failed to carry their burden. They offered only a pastiche of supposed sources for numbers they solicited, without showing that those numbers actually consented to be called, or were called by their agents or that the sources are a reliable means to show consent despite their

---

[17] Defendants essentially argue the NDNC is unreliable and accuse the FTC of dereliction. But Defendants must take the number as listed and abide the law. *See* 47 C.F.R. § 64.1200(c)(2) (DNC "registrations must be honored indefinitely, or until the registration is cancelled by the consumer").
[18] *See also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. at 397-99 (EBRs and consent are affirmative defenses, but do not preclude trial on a classwide basis); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012) (per "the FCC, consent under the TCPA is an affirmative defense upon which … Defendant, bears the burden").
[19] Defendants cite *Conrad v. GM Acceptance Corp.*, 283 F.R.D. 326, 329-30 (N.D. Tex. 2012), which (like Defendants) incorrectly assumes plaintiffs must initially offer proof of lack of consent.

7

statutory obligation to obtain consent and maintain a record of it.[20] RA 291, 291-97. Defendants *confess* they cannot prove consent because only third parties (whom they did not subpoena) supposedly cull their own leads.[21] Dkt. 190 at 16. Defendants proffer a paltry 15 possible consents from among 90,000 class members effectively conceding they did not have consent and the reliability of the call logs.[22] Defendants incorrectly claim Verkhovskaya does not account for EBRs, she does. RA 309-10. Regardless, EBRs are an affirmative defense which Defendant did not assert (*see* Dkt. 43) and did not offer proof for a single Class member; the defense fails.[23]

***Hirsch is Not Atypical.*** Defendants' conclusory typicality arguments (standing, consent, EBR, business use) fail for the same reasons their commonality arguments fail. Defendants' dubious counterclaims do not render Hirsch atypical because, as here, counterclaims against a lead plaintiff "do[] not create the kind of conflict that would defeat commonality, typicality, or prevent [plaintiff] from adequately protecting the interests of the class." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981).[24]

***Arbitration.*** Defendants misleadingly claim "[m]any *class members* agreed to arbitration and waived class action treatment." Dkt. 190 at 20 (emphasis added). USHA and its agents proffer

---

[20] *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013) ("bald speculation" about affirmative defense does not defeat certification); *Bridging Communities Inc. v. Top Flite Fin. Inc.,* 843 F.3d 1119, 1125 (6th Cir. 2016) (same).

[21] *Johnson v. Yahoo!, Inc.*, 2016 WL 25711, at *7 (N.D. Ill. Jan. 4, 2016) (absent showing "significant percentage" of class consented, TCPA certification defense fails).

[22] Defendants' "revocation of consent" argument is misleading because their obligation to proffer consent evidence to support their affirmative defense is a predicate to Plaintiff's obligation to establish it was revoked. Defendants failed to do so; revocation is moot. Defendants cite a litany of irrelevant or plainly distinguishable cases mostly regarding junk fax opt-out provisions.

[23] *See Krakauer*, at 397-99 (EBRs and consent as affirmative defenses do not preclude class trial).

[24] *See also Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001) ("Typicality […] not defeated by specific defenses or counterclaims to the named plaintiff's claim."). "Were it otherwise, every motion for class certification would be defeated simply by the vehicle of filing a counterclaim." *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 595-96 (E D. Cal. 1999).

8

a few arbitration agreements but fail to connect them to a single *class member*,[25] or place them in time. Many lead generation contracts contain no arbitration provision. *See* Dkt. 191-1, App. 329-41. Even so, arbitration has been waived because it was not asserted as a defense (*see* Dkt. 43)[26] or raised in two years of litigation up to summary judgment.[27]

*Vicarious Liability.* Defendants' arbitration argument confirms USHA is vicariously liable for its captive agents. USHA's sworn declaration attests it is a "third party beneficiar[y]" of its lead generators' arbitration agreements with consumers (Dkt. 191-1, App. 113, ¶ 21) Defendants claim the right to compel arbitration for the 20,000 agents' calls to those leads. Dkt. 190 at 20. Equitable estoppel provides Defendants "cannot invoke an agreement and claim the benefit of his status under it while attempting to escape its consequences." *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002).[28] Indeed, some contracts *expressly* define USHA's captive agents as its "agents." *See, e.g.*, Dkt. 191-1, App. 332; *cf.* 191-2, App. 1025 at ¶ 2 (agent's lay legal opinion disavowing agency). USHA and its agents cannot selectively disavow agency to avoid vicarious liability for the agents' calls and simultaneously invoke agency principles to enforce arbitration agreements. Although it is unnecessary to examine each agent agreement, they are reliable

---

[25] Some is not enough. *See Slamon v. Carrizo (Marcellus) LLC*, 2020 WL 2525961, at *13 (M.D. Pa. May 18, 2020) (typicality not defeated where 72 of 253 leases contain arbitration provision).
[26] *See Morgan Guar. Tr. Co. of New York v. Blum*, 649 F.2d 342, 345 (5th Cir. 1981) ("All affirmative defenses must be specifically pleaded in the answer or be deemed waived.").
[27] *See Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (arbitration waived if party "engage[s] in protracted litigation that result[ed] in prejudice to the plaintiff,"); *see also Cheruby, v. Global Tel*Link Corp.*, No. 5:15-cv-5136, slip op. at 8 (W.D. Ark. Sept. 28, 2017) ("textbook example of prejudice" where raising arbitration delayed, even if valid, and "some substantial amount of time and effort towards the litigation of class certification" devoted).
[28] *See also Washington Mut. Fin. Grp., LLC v. Bailey,* 364 F.3d 260, 267-68 (5th Cir. 2004) (allowing party "benefit of the contract and [to] simultaneously avoid its burdens would both disregard equity and…the Arbitration Act."); *Garcia v. Houston Nw. Med. Ctr. Inc.*, 84 F.3d 431 (5th Cir. 1996) (where nonsignatories are subject to provisions of agreement between contracting parties, nonsignatory "stands in the shoes of the contracting party in seeking performance").

9

evidence for use in proving Plaintiff's claim -- all that is required at this stage. Even so, the agreements are identical (7 of 8 proffered bear same footer, "3748 revised 09/22/15 Webform 1000", indicating as much).[29] *Chinitz v. NRT W., Inc.*, 2019 WL 4142044, at *5 (N.D. Cal. Aug. 30, 2019), is unavailing as plaintiff did not rely on standardized contracts as here, but rather relied "defendants' apparent authority." *Id.* at *4. Accord RA 35-244, RA 246-284, and RA 288.

*Adequacy of Counsel.* Defendants do not seriously challenge the appointment of Berger Montague. Dkt. 180, App. ¶¶ 4-10.[30] Hirsch acknowledges Maccoby is a friend, but friendship is not disabling.[31] "The adequacy inquiry serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001) (internal quotes omitted). A disabling conflict is one beyond mere friendship, "commonly a financial or familial tie." *Holt v. Noble House Hotels & Resort, LTD*, 2018 WL 5004996, at *7 (S.D. Cal. Oct. 16, 2018) (internal quotes omitted; collecting cases). *Cf. Woods v. Google LLC*, WL 4030570, *4-6 (N.D. Cal. Aug. 23, 2018) ("unusual" situation where plaintiff was "hired [] as a [law] partner" of counsel); *Gordon v. Caribbean Cruise Line, Inc.*, 2019 WL 498937, at *9 (N.D. Ill. Feb. 8, 2019) (plaintiff had "significant business ties" to counsel); *London v. Wal-Mart Stores*, Inc., 340 F.3d 1246, 1255 (11th Cir. 2003) (dependent on close "personal *and* financial ties") (emphasis added). Hirsch and Maccoby have *no* business ties; Defendants offer no contrary evidence.

*Conclusion.* Plaintiff respectfully requests that the Court grant Plaintiff's Motion.

---

[29] *See* Dkt. 189-4 to -6 at 1008-24, 1125-39, 1156-72, 1184-1200, 1211-27, 1435-51, 1513-30.
[30] Defendants' falsely claim this motion is untimely, but the parties jointly proposed extending the deadline (Dkt. at 19 at 8), which the Court approved (Dkt. 21 at 2) and then extended further.
[31] *Poulos v. Caesars World, Inc.*, 2002 WL 1991180, at *6 n.9 (D. Nev. June 25, 2002) (no conflict where "class representatives are merely friends or acquaintances of the class [counsel]"), *aff'd in part, appeal dismissed in part*, 379 F.3d 654 (9th Cir. 2004).

Dated:  June 5, 2020	Respectfully submitted,

  /s/ Michael Dell'Angelo
Michael Dell'Angelo
Lane L. Vines
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604
mdellangelo@bm.net
lvines@bm.net

Max F. Maccoby
WASHINGTON GLOBAL LAW GROUP PLLC
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C.  2006
Telephone:  (202) 248-5439
Facsimile:  (202) 580-6559
maccoby@washglobal-law.com

Jamshyd (Jim) M. Zadeh
LAW OFFICE OF JIM ZADEH, P.C.
1555 Rio Grande Avenue
Fort Worth, TX 76102
Telephone:  (817) 335-5100
jim@zadehfirm.com

Warren T. Burns (TX Bar No. 24053119)
Daniel Charest (TX Bar No. 24057803)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  (469) 904-4550
Facsimile:  (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

*Attorneys for Plaintiff and the Proposed Class*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo
