**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:18-cv-245-P** |
| **USHealth Advisors, LLC and USHealth Group, Inc.,** | |
| **Defendants.** | |

## <u>AGREED CHARGE</u>

## Table of Contents

I.     Preliminary Instructions to the Jury ................................................................. 1

II.    Additional Instructions to the Jury During the Presentation of Evidence ......................... 9

III.   Final Instructions to the Jury ................................................................ 11

       Instruction No. 1: Jury Charge ................................................................ 11

       Instruction No. 2: Burden of Proof, Preponderance of the Evidence .............................. 13

       Instruction No. 3: Burden of Proof, Clear and Convincing Evidence ............................. 15

       Instruction No. 4: Final Instructions ......................................................... 17

       Instruction No. 5: Corporations Different Entities ............................................ 18

       Instruction No. 6: Alter Ego – Subsidiary as Alter Ego of Parent Corporation.................. 20

       Instruction No. 7: The Telephone Consumer Protection Act ...................................... 23

       Instruction No. 8: Individual and Class Action Claims Asserted ................................ 27

       Instruction No. 9: Stipulations of Fact ....................................................... 32

       Instruction No. 10: Mr. Hirsch's Individual Claim for Violations of TCPA...................... 33

       Instruction No. 11: The Class's TCPA Claim .................................................... 42

       Instruction No. 12: Direct Liability Under the TCPA ........................................... 46

       Instruction No. 13: Agent and Principal ....................................................... 48

       Instruction No. 14: Actual Authority .......................................................... 51

       Instruction No. 15: Apparent Authority......................................................... 55

       Instruction No. 16: Ratification .............................................................. 59

       Instruction No. 17: Sub-Agency ................................................................ 61

       Instruction No. 18: Agency Evaluated Based on Totality of Evidence ............................ 63

       Instruction No. 19: Vicarious Liability........................................................ 65

       Instruction No. 20: Principal-Agent: Right to Control ......................................... 67

       Instruction No. 21: Telephone Solicitations ................................................... 69

Instruction No. 22: Telemarketing Defined .................................................................... 71

Instruction No. 23: Received Calls and Texts ................................................................. 73

Instruction No. 24: Residential Numbers........................................................................ 75

Instruction No. 25: Residential Telephone Subscriber Defined ...................................... 77

Instruction No. 26: Mixed Use Phones ........................................................................... 78

Instruction No. 27: Individual Damages ......................................................................... 80

Instruction No. 28: Class Damages.................................................................................. 81

Instruction No. 29: Defendants' Defenses ...................................................................... 83

Instruction No. 30: Actual, Concrete Injury ................................................................... 84

Instruction No. 31: Safe Harbor Defense........................................................................ 87

Instruction No. 32: Prior Express consent, Invitation or Permission.............................. 89

Instruction No. 33: Personal Relationship Defined ........................................................ 91

Instruction No. 34: Established Business Relationship Explained ................................... 92

Instruction No. 35: Class Members Required to Arbitrate .............................................. 94

Instruction No. 36: *In Pari Delicto*/Unclean Hands ........................................................ 96

Instruction No. 37: Estoppel/Fraud................................................................................. 98

Instruction No. 38: Ratification Defense ....................................................................... 100

Instruction No. 39: Defendants' Counterclaim for Common law Fraud ........................ 102

Instruction No. 40: Actual Reliance Instruction ........................................................... 109

Instruction No. 41: Defendants' Counterclaims, Justified Reliance............................... 110

Instruction No. 42: Defendants' Counterclaims, Materiality Instruction ...................... 112

Instruction No. 43: Evidence ........................................................................................ 114

Instruction No. 44: Objections...................................................................................... 115

Instruction No. 45: Spoilation...................................................................................... 116

Instruction No. 46: Spoilation...................................................................................... 118

Instruction No. 47: Witnesses ............................................................................................... 120

Instruction No. 48: Expert Witnesses ................................................................................... 121

Instruction No. 49: Missing Witnesses ................................................................................ 122

Instruction No. 50: Transcripts of Oral Conversations ........................................................ 123

Instruction No. 51: No Inference from Filing Suit .............................................................. 125

Instruction No. 52: Duty to Deliberate; Notes ..................................................................... 126

Exhibit A – Plaintiff's Proposed Verdict Form .................................................................... 128

Exhibit B – Defendants' Objections to Plaintiff's Proposed Verdict Sheet ......................... 132

Exhibit C – Defendants' Proposed Verdict Form ................................................................. 141

Exhibit D – Plaintiff's Objections to Defendants' Proposed Verdict Form .......................... 157

In accord with the Amended Scheduling Order (Dkt. 121), Plaintiff Aaron Hirsch and Defendants USHealth Advisors, LLC and USHealth Group, Inc. jointly submit this Agreed Charge, which is divided into three subparts: 1) Preliminary Instructions to the Jury; 2) Additional Instructions to the Jury During the Presentation of Evidence; and 3) Final Instructions to the Jury. For Instructions where the parties are in agreement, the text below is unbolded.[1] For Instructions where the parties are not in agreement, the text below is bolded, with each party's respective proposed language identified and accompanied by supporting citations. Also, attached as Exhibits A and B hereto are the respective proposed Jury Verdict forms proposed by Plaintiff and Defendants, respectively.

## I.      <u>Preliminary Instructions to the Jury</u>

Members of the jury panel, if you have a cell phone, PDA, Blackberry, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other

---

[1] Defendants object to any trial on the merits moving forward prior to a determination of whether or not a class will be certified and, if so, what that class will be.  Fed. R. Civ. P. 23, the rule against one-way intervention, and due process preclude a trial on the merits at this time.  For the same reasons, the Defendants object to any instruction to the jury that discusses or references a class, class claims or absent class members.  Defendants further object, generally, to any proposed jury instructions on issues that are part of Defendants' pending Motion for Summary Judgment. Defendants further object to any instruction that groups the Defendants together as "Defendants" or "USHealth" or otherwise suggests that the two entities are one in the same or that the Plaintiff does not have to meet his burden of proof as to each respective Defendant.  Because there has yet to be a determination on the pending motions for summary judgment and motion to certify class, Defendants do not know what claims or defenses will be tried.  Defendants are participating in the procedures and deadlines set forth in ECF 121 subject to the foregoing objections, and each instruction below is subject to the foregoing objections.

people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

[*U.S. 5th Circuit Pattern Jury Instructions 1.1*]

[SWEAR IN THE JURY]

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information

4

about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible. The trial will now begin.

The named plaintiff in this case, Aaron Hirsch, has asserted claims against USHealth Advisors, LLC and its parent company USHealth Group, Inc. for violations of a federal statute known as the Telephone Consumer Protection Act or "TCPA." **The TCPA established the National Do Not Call Registry or "NDNC". The NDNC allows consumers to register their residential telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. A listing on the NDNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." The NDNC does not allow for the registration of business telephone numbers. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the NDNC.**

**The TCPA also mandates that all businesses that place calls for marketing purposes maintain an "internal" Do-Not-Call list ("IDNC list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller**

on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the NDNC.

This case includes a class action claim. A class action is a procedure that allows the filing of one lawsuit by a representative plaintiff on behalf of a group of plaintiffs who have similar claims. **This procedure is intended to avoid duplication of effort or expense from multiple lawsuits asserting the same claim by many people in different locations. Here, Plaintiff Aaron Hirsch has brought the TCPA claims on behalf of himself and a class of similarly situated individuals for violations of the TCPA. The class is comprised of:**

> **All natural persons in the United States who, from March 29, 2014, to the date of the Court's Order granting class certification: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of USHealth more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do Not Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with USHealth's Internal Do-Not-Call list.**

> **Excluded from the class are: (a) natural persons who were or had been insured by USHealth at the time of the first call; and (b) any employees, officers, directors of USHealth, attorneys appearing in this case, and any judge assigned to hear this case and immediate family and staff.**

> **This case also includes a "Maryland subclass," which is comprised of Mr. Hirsch and all class members who are Maryland residents, and who are asserting claims under both the TCPA and Maryland Telephone Consumer Protection Act or "Maryland TCPA". A state law, the Maryland TCPA, mirrors the TCPA and prohibits the same conduct as the TCPA. As to person who reside in Maryland, a call received in violation of the federal TCPA statute will as a matter of law constitute a violation of the Maryland TCPA as well.**

Defendants USHealth Advisors, LLC and USHealth Group, Inc. have brought a counterclaim for fraud against Mr. Hirsch, **alleging that he caused Defendants to violate the TCPA by fraudulently inviting Defendants to call him.**

**Each of the parties denies the claims asserted against them**.

Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present her case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present her case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

It is now time for the opening statements.

**Defendants Objections**: DE121 8(d) specifically calls for each jury instruction to be "annotated" which the court defines to mean that "each proposed instruction shall be accompanied by citation to statutory or case authority and/or pattern instructions. It is not sufficient to submit a proposed instruction without citation to supporting authority." As of August 24, 2020, Plaintiff has failed to provide any citation to authority to support these opposed portions (in bold face above) of the instructions in violation of the Court's order. For this reason alone the Court should reject the bolded portion of the instruction. Plaintiff's proposed language is not supported by law, misconstrues or overstates the law, and otherwise ignores the regulations and case law on the subject. The instruction also fails to properly discuss various requirements under the TCPA and defined terms that must be separately explained to the jury in order for a full and clear picture of the claims/defenses at issue to be provided. As a result, the manner in which the instruction is

written is contrary to law. Instead, the issues should be addressed in separate instructions and in logical sequence as they are below, in proposed Instruction Nos. 7 and 8.

## II.    Additional Instructions to the Jury During the Presentation of Evidence

[*The parties agree to the following U.S. 5th Circuit Pattern Jury Instructions for use during the course of trial should the Court determine the instructions are necessary.*]


When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

[*U.S. 5th Circuit Pattern Jury Instructions 2.6*]


Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

[*U.S. 5th Circuit Pattern Jury Instructions 2.7*]


In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial. A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

[*U.S. 5th Circuit Pattern Jury Instructions 2.11*]

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read to you in this trial. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

[*US 5th Circuit Pattern Jury Instructions 2.13*]


Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

[*US 5th Circuit Pattern Jury Instructions 2.16*]

### III.   Final Instructions to the Jury

**Instruction No. 1: Jury Charge**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law that you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based

11

entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

[*U.S. 5th Cir. Pattern Jury Instruction 3.1*]

**Instruction No. 2: Burden of Proof, Preponderance of the Evidence**

<u>Plaintiff's Version:</u>

As I noted to you at the beginning of this trial, Plaintiff Aaron Hirsch has alleged claims for violations of the Telephone Consumer Protection Act or "TCPA" against USHealth Advisors, LLC and USHealth Group, Inc. Mr. Hirsch has brought those claims on behalf of himself and a class of other consumers comprised of:

> All natural persons in the United States who, from March 29, 2014, to the date of the Court's Order granting class certification: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of USHealth more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do Not Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with USHealth's Internal Do-Not-Call list.

> Excluded from the class are: (a) natural persons who were or had been insured by USHealth at the time of the first call; and (b) any employees, officers, directors of USHealth, attorneys appearing in this case, and any judge assigned to hear this case and immediate family and staff.

This case also includes a "Maryland subclass," which is comprised of Mr. Hirsch and all class members who are Maryland residents, and who are asserting claims under both the TCPA and Maryland Telephone Consumer Protection Act or "Maryland TCPA". A state law, the Maryland TCPA, mirrors the TCPA and prohibits the same conduct as the TCPA. As to person who reside in Maryland, a call received in violation of the federal TCPA statute will as a matter of law constitute a violation of the Maryland TCPA as well.

Plaintiff Aaron Hirsch and the class have the burden of proving their claims by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find the scales tip, however slightly, in favor of Mr. Hirsch and the class, then you should find in their favor. If, however, you find that Mr. Hirsch and the class have failed to prove any element of their claim by a

preponderance of the evidence, then they may not recover on that claim.

**Plaintiff's Authorities:**

**U.S. 5th Cir. Pattern Jury Instruction 3.2**

**Defendants' Objections:** Defendants object to the manner in which Plaintiff's proposed instruction is written because it will cause confusion for the jury. Aaron Hirsch has the burden of proving his own claims by a preponderance of the evidence. Separately, Aaron Hirsch has the burden of proving each and every proposed class members' claim by a preponderance of the evidence. Plaintiff's proposed language also departs from the 5th Circuit Pattern Jury Instruction. Defendant's proposed instruction remedies this departure.  Plaintiff's proposed language is not supported by law, misconstrues or overstates the law, and otherwise ignores the regulations and case law on the subject. The instruction also fails to properly discuss various requirements under the TCPA and defined terms that must be separately explained to the jury in order for a full and clear picture of the claims/defenses at issue to be provided.  As a result, the manner in which the instruction is written is contrary to law.  Defendants also object because the first three paragraphs have nothing to do with the burden of proof, and will confuse the jury.  The issues are already addressed in proposed Instruction Nos. 5 and 6.

**Defendants' Version:**

**Plaintiff Aaron Hirsch has the burden of proving his case by a preponderance of the evidence.  Aaron Hirsch also has the burden of proving each proposed class members' claim by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Aaron Hirsch or a member of the proposed class has failed to prove any element of his or her claim by a preponderance of the evidence, then he or she may not recover.**

**Defendants' Authorities:**

U.S. 5th Cir. Pattern Jury Instruction 3.2.

**Instruction No. 3: Burden of Proof, Clear and Convincing Evidence**

    <u>Plaintiff's Version</u>:

    **Defendants USHeath Advisors LLC and USHealth Group Inc. have filed counterclaims for fraud against Mr. Hirsch for bringing this lawsuit. Defendants have the burden of proving their counterclaims by clear and convincing evidence. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty, and convincing as to enable you to come to a clear conviction without hesitancy. If you find that USHealth have failed to prove any element of their counterclaims by clear and convincing evidence, then they may not recover on that claim.**

    <u>Plaintiff's Authorities</u>:

**U.S. 5th Cir. Pattern Jury Instruction 2.17. *See, e.g.*, *Malagon v. Crescent Hotel & Resorts*, No. 3:16-cv-0644-D, 2018 WL 5717279, at \*1 (N.D. Tex. Nov. 1, 2018) ("Fraud is never presumed and must always be proven by clear and convincing evidence.") (internal citations omitted); *Commercial Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960) ("Fraud is never presumed, and the burden is on (the party asserting it) to prove it with reasonable certainty by a preponderance of convincing evidence.") (internal citation omitted); 41 *Tex. Jur. 3d Fraud and Deceit* § 75 ("As a general rule, fraud must be established by clear and specific evidence unaided by presumptions, inferences, or intendments.").**

**Defendants' Objections**: Defendants object because the burden of proof for common law fraud in Texas is preponderance of the evidence, not clear and convincing. Moreover, the proposed instruction attempts to group both Defendants together, when they must be treated an evaluated as separate entities.

    <u>Defendants' Version</u>:

    **Defendants have collectively filed a counterclaim against Aaron Hirsch. This means that the Defendants are also suing Aaron Hirsch. With respect to Defendants' counterclaim, Defendants have the burden of proving their case by a preponderance of the evidence. If you find that Defendants have failed to prove any element of their claim by a preponderance of**

the evidence, then Defendants may not recover on that claim.

**Defendants' Authorities:**

*Brooks v. Parr*, 507 S.W.2d 818, 819 (Tex. Civ. App. 1974); *Carlton v. Cobank, Inc*., No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003); <u>*Commercial Credit Corp. v. Sorgel*</u>, 274 F.2d 449, 453 (5th Cir. 1960); <u>*Huynh v. Phung*</u>, No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. App. Feb. 16, 2007); <u>*Smith v. McDaniel*</u>, No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013).

**Instruction No. 4: Final Instructions**

You may remember some of my instructions from the beginning of the case. If anything you remember from those instructions is different from what I am telling you now, you must go by the instructions that I am giving you now, after all the evidence has been heard. I believe they are generally the same, though the instructions I am giving you now are much more detailed.

**Instruction No. 5: Corporations Different Entities**

**Defendants' Version:**

There are two Defendants named in this lawsuit: USHEALTH Advisors, LLC, and USHEALTH Group, Inc. Although the two entities might be affiliated in some manner, they are each separate, distinct entities. Plaintiff must prove that each defendant is independently liable for its own conduct, not the conduct of the other defendant. Facts relating to one Defendant cannot be assumed to apply to a second Defendant. Liability of one Defendant says nothing about the liability of the other Defendant. In order for you to find liability, you must find that each Defendant, through that Defendant's own conduct, broke the law. You cannot attribute the conduct of one Defendant to the other.

**Defendants' Authorities:**

*United States v. Jon-T Chemicals, Inc*., 768 F.2d 686, 691 (5th Cir. 1985); *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 343 (5th Cir. 2005); *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 666 (W.D. Tex. 2013); *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007).

**Plaintiff's Position:**

There are two Defendants named in this lawsuit: USHealth Advisors, LLC, and USHealth Group, Inc. Although the two entities might be affiliated in some manner, they are each separate, distinct entities. Plaintiff must prove that each defendant is independently liable for its own conduct, not the conduct of the other defendant. Facts relating to one Defendant cannot be assumed to apply to a second Defendant. **Liability of one Defendant is not in and of itself proof as to the liability of the other Defendant.** In order for you to find liability, you must find that each Defendant, through that Defendant's own conduct**, actions or inactions** broke the law**. That liability may be the result of direct liability or vicarious liability.**

**<u>Plaintiff's Authorities:</u>**

*See* **Dkt. 96, Defs.' Mem. at 37 (Defendants' admission that vicarious liability can attach under federal common law agency principles and citing** *Campbell-Ewald Co. v. Gomez*, **136 S. Ct. 663, 674 (2016)).** *Campbell-Ewald* **cited with approval the FCC's determination on point in** *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, **28 F.C.C. Rcd. 6574, 6586 (2013) ("***Dish Network***").** *See also Cunningham v. Lifestyles Dev., LLC*, **No. 19-CV-00006, 2019 WL 4282039, at \*3 (E.D. Tex. Aug. 8, 2019);** *Cunningham v. Politi*, **No. 418CV00362ALMCAN, 2019 WL 2519568, \*5 (E.D. Tex. Apr. 30, 2019),** *report and recommendation adopted*, **No. 4:18-CV-362, 2019 WL 2524736 (E.D. Tex. June 19, 2019) ("To the extent any authority cited herein relies on Texas state-law agency principles (as opposed to the Restatement (Third) of Agency), the Court notes that the Restatement and Texas state law's agency principles are substantially similar."). The Fifth Circuit held that "agency may be established by actual or apparent authority; additionally, the equitable doctrine of ratification may give rise to liability."** *Debaillon v. Total Minatome Corp.*, **166 F.3d 339 (5th Cir. 1998). Likewise, in** *Dish Network*, **the FCC made clear that an accused telemarketer is responsible even if it did not directly make the offending calls. "[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  28 F.C.C. Rcd. at 6584. Defendants admit this much as well.** *See* **Defs.' Mem. at 37.**

**Defendants Objections**: Plaintiff's proposed language is not supported by law, and misconstrues or overstates the law.  Moreover it includes language that is unrelated to the separation of the corporate entities, and will serve to confuse the jury.  For example, there are separate instructions on direct and vicarious liability, so there is no need for them in this instruction.

**Instruction No. 6: Alter Ego – Subsidiary as Alter Ego of Parent Corporation**

<u>**Plaintiff's Version**</u>

In this case, Plaintiff contend that USHealth Advisors, LLC was the mere instrument or tool of its parent corporation, USHealth Group, Inc. – what the law calls an alter ego. Should you find that Plaintiff has proved this by a preponderance of the evidence, the law requires you to disregard the separate status of [name of subsidiary] and hold [name of corporation] legally responsible for the subsidiary's acts. Under our free-enterprise economic system, the law permits – even encourages – people, and even other corporations, to form corporations as a way to attract stockholder investments. Parent corporations can invest their money in subsidiary enterprises without risking liability for the subsidiary's acts and transactions. In return, society gets the benefit of jobs and other commercial activity that the subsidiary's business creates. So, in most cases, the status of a subsidiary corporation as a separate legal entity apart from its parent corporation must be respected and preserved. But this rule is not absolute, and you can disregard the separate status of a subsidiary corporation when the parent corporation uses the subsidiary as a mere tool for the purpose of evading or violating a statutory or other legal duty, or for accomplishing some fraud or other illegal purpose.

To decide whether to treat USHealth Advisors, LLC as the alter ego of USHealth Group, Inc., you should consider:

(a) whether the parent caused the subsidiary's incorporation;

(b) whether the parent and subsidiary have common stock ownership, or directors or officers in common;

(c) whether the business purpose or function of the subsidiary is

separate and distinct from the parent;

(d) whether the two entities kept separate corporate books and records (even though they may have filed joint tax returns as required by law);

(e) whether the parent finances the subsidiary or pays the subsidiary's salaries and other expenses;

(f) whether the subsidiary's funds were comingled – or not mingled – with the parent's funds; and

(g) any other factor the evidence disclosed tending to show that the subsidiary was or was not operated as an entity separate from its parent.

You should consider all these factors. No single factor is determinative.

**<u>Plaintiff's Authorities:</u>**

11th Circuit Pattern Jury Instructions (Civil Cases). "State and federal alter-ego tests in the Fifth Circuit are viewed as interchangeable." *TIP Sys., LLC v. SBC Operations, Inc*., 536 F. Supp. 2d 745, 754 (S.D. Tex. 2008) (collecting cases). One way to pass the alter ego test, the Fifth Circuit instructs, is by showing "a parent company totally dominates and controls its subsidiary, operating the subsidiary as its business conduit or agent." *United States v. Jon-T Chemicals, Inc*., 768 F.2d 686, 691 (5th Cir. 1985) (affirming trial court's veil piercing judgment based on alter ego theory). The Fifth Circuit provides a (non-exclusive) list of twelve factors to consider, explaining:

In some sense, every subsidiary is the alter ego of its parent company. Where the subsidiary is wholly-owned by the parent and has the same directors and officers, operating the subsidiary independently of the parent company not only has little practical meaning, it would also constitute a breach both of the subsidiary's duty to further the interests of its owner, and of the directors' and officers' duty towards the parent company. Nevertheless, our cases are clear that one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil. . . . In lieu of articulating a coherent doctrinal basis for the alter ego theory, we have instead developed a laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent. These include whether:

21

**(1) the parent and the subsidiary have common stock ownership;**
**(2) the parent and the subsidiary have common directors or officers;**
**(3) the parent and the subsidiary have common business departments;**
**(4) the parent and the subsidiary file consolidated financial statements and tax returns;**
**(5) the parent finances the subsidiary;**
**(6) the parent caused the incorporation of the subsidiary;**
**(7) the subsidiary operates with grossly inadequate capital;**
**(8) the parent pays the salaries and other expenses of the subsidiary;**
**(9) the subsidiary receives no business except that given to it by the parent;**
**(10) the parent uses the subsidiary's property as its own;**
**(11) the daily operations of the two corporations are not kept separate; and**
**(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.**

*Id*. **at 691-92. Finally, the Fifth Circuit instructs that although "in contract cases, fraud is an essential element of an alter ego finding," in other cases (like this one), fraud is not.** *Id*. **at 692-93.** *See also United States v. Jon-T Chemicals, Inc*., **768 F.2d 686, 693 (5th Cir. 1985).**

**Defendants Objections**: Defendants' object to the inclusion of any instruction of an alter-ego theory of liability. Plaintiff's alter-ego theory is raised for the first time in these jury instructions. There is no allegation of an alter-ego theory in the Complaint, the Amended Complaint, or even any of the dispositive motions filed by Plaintiff. Plaintiff is not permitted to amend his complaint at this stage via jury instruction submissions. *Fout v. EQT Prod. Co.*, No. 1:15CV68, 2018 WL 1725608, at *2 (N.D.W. Va. Apr. 6, 2018) ("issue of alter ego was not pled in the plaintiffs' complaint"). *Accord United States v. Cont'l Cas. Co.*, No. A98-285 CV (JWS), 2006 WL 8438949, at *2 (D. Alaska May 15, 2006). *See also Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 3618831, at *5 (E.D. Tex. Mar. 1, 2016). The deadline for amending pleadings has expired. The deadline for discovery has also expired, and Defendants' were not placed on notice, prior to the eve of trial, that Plaintiff intended to pursue this theory such that Defendants directed any discovery related to alter-ego. Plaintiff cannot show good cause for amending his Complaint mere days before the pretrial filings are due. This instruction is improper. *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 652 (S.D. Tex. 2009).

**Defendants' Version**

**[Instruction fully deleted.]**

**Instruction No. 7: The Telephone Consumer Protection Act**

    <u>**Plaintiff's Version:**</u>

    **As you will remember from the beginning of this case, the National Do Not Call Registry was created by the federal government to give consumers a choice about whether to receive telemarketing calls or texts on their residential telephones. It allows a consumer to register a telephone number on the National Do Not Call Registry to avoid receiving telemarketing calls or texts.**

    **In addition, an Internal Do Not Call list is created by a company who is engaged in telemarketing, whether directly or by persons acting on its behalf. The Internal Do Not Call list is a listing of consumers who have indicated that they do not want to receive telemarketing calls or texts on their residential telephones.**

    **A federal law, the Telephone Consumer Protection Act, or "TCPA," provides that no person or company shall initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry or made a request to be added to the Internal Do Not Call list. Such do-not-call registrations must be honored indefinitely, or until the telephone number is cancelled by the consumer or removed by the government database administrator.**

    **Under the TCPA, users of wireless telephones are deemed to be residential and protected too, so long as the cell phone is also used for personal, family, or household purposes. In addition, the TCPA imposes the same restrictions on a text made to a cell phone as if the caller had made a telephone call to that phone. A text constitutes a call under the TCPA.**

    **Under the TCPA, a person whose residential number is on the National Do Not Call**

Registry and who receives at least two telemarketing calls or texts within any 12-month period by or on behalf of the same company may bring an action to receive up to $500 for each violation.

Under the TCPA, a person who requests that a telemarketer not call or text again, must be added to a company's Internal Do Not Call list. If such a person receives a telemarketing call or texts by or on behalf of that company after asking not to be called, he or she may bring an action to receive up to $500 for each violation.

A state law, the Maryland Telephone Consumer Protection Act, or "Maryland TCPA," mirrors the TCPA, and prohibits the same conduct as the TCPA. As to person who reside in Maryland, a received in violation of the federal TCPA statute will as a matter of law constitute a violation of the Maryland TCPA as well.

**Plaintiff's Authorities:**

Dkt. 42; 47 U.S.C. § 227; 47 C.F.R. 64.1200; *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14017-14020, 14034-14044 (2003); Md. Code, Com. Law §14-3201.

**Defendants' Objections**: Plaintiff's proposed language is not supported by law, misconstrues or overstates the law, and otherwise ignores the regulations and case law on the subject. The instruction also fails to properly discuss various requirements under the TCPA and defined terms that must be separately explained to the jury in order for a full and clear picture of the claims/defenses at issue to be provided. As a result, the manner in which the instruction is written is contrary to law.

**Defendants' Version:**

The Telephone Consumer Protection Act, referred to as the TCPA for short, is a federal law that, under certain circumstances, makes it unlawful for the same person or the same entity to make two or more telephone solicitations to a residential telephone subscriber after a time that the person has registered their residential telephone on the National Do-Not-Call List that is maintained by the Federal Government.  We will call this the "national

do-not-call rules".

In addition, there is a prohibition under the TCPA on a person or entity making two or more telemarketing calls to residential telephone subscribers unless that person or entity has instituted a procedure for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. We will call this the "internal do-not-call rules". A telemarketer violates this subsection not by placing the calls themselves, but by failing to have the required procedures in place prior to the calls being made.

A person or entity that physically places telephone calls in violation of the TCPA has what is called "direct liability" which will be elaborated on more below. Alternatively, a person or entity could so substantially control the activities of a different person or entity that is physical placing telephone calls in violation of the TCPA. In a case where the plaintiff is alleging that the defendant is responsible for the actions of others that physically placed telephone calls, and that those third parties did so in violation of the TCPA, that is called "vicarious" liability, the explanation of which will also be elaborated on more in later instructions.

A state law, the Maryland Telephone Consumer Protection Act, or "Maryland TCPA," mirrors the TCPA, and prohibits the same conduct as the TCPA. As to persons who reside in Maryland, a finding of a violation of the federal TCPA will also constitute a violation of the Maryland TCPA.

The Plaintiff has alleged in this case that the Defendants violated both the national do-not-call rules and the internal do-not-call rules. The Plaintiff also alleges that the Defendants violated the Maryland TCPA. The Plaintiff is alleging that the Defendants are

both directly and vicariously liable.[2]  As I will instruct you, there are many elements that the Plaintiff must prove to prevail on these claims and various terms of art that I will define.  There are also exceptions and defenses that will be raised by the Defendants. For instance, a Defendant who has consent to make telephone calls does not violate the TCPA even if that person is registered on the national do-not-call registry or an internal do-not-call list. Additionally, a Defendant does not violate the TCPA if they have a personal or established business relationship with a person or entity, which will be examined in further detail.

**Defendants' Authorities:**

**47 U.S.C. § 227; 47 C.F.R. 64.1200;** *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, **18 F.C.C. Rcd. 14014, 14017-14020, 14034-14044 (2003);** *Simmons v. Charter Commc'ns, Inc.,* **222 F. Supp. 3d 121, 129-131 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017);** *See Cunningham v. Politi*, **No. 18-cv-00362-ALMCAN, 2019 WL 2517085, at \*4 (E.D. Tex. Apr. 30, 2019);** *Osorio v. State Farm Bank, F.S.B.*, **746 F.3d 1242, 1250 (11th Cir. 2014);** *Cunningham v. Rapid Response Monitoring Servs., Inc.*, **251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017);** *Wakefield v. Visalus Inc*., **No.: 3:15-cv-1857-SI, 2019 WL 2578082 (D. Or. 2019);** *Stevens-Bratton v. TruGreen, Inc.*, **No. 2:15-2472, 2020 WL 556405, at \*6 (W.D. Tenn. Feb. 4, 2020).**

---

[2] Again, these references here and elsewhere are subject to the asserted Objections above as well as the arguments raised in Defendants' Motion for Summary Judgment.

**Instruction No. 8: Individual and Class Action Claims Asserted**

    <u>**Plaintiff's Version:**</u>

    As I mentioned to you at the outset of the trial, this case includes a class action claim. A class action is a procedure that allows the filing of one lawsuit by a representative plaintiff on behalf of a group of plaintiffs who have similar claims. This procedure is intended to avoid duplication of effort or expense from multiple lawsuits asserting the same claim by many people in different locations.

    The named plaintiff in this case, Mr. Hirsch, has asserted claims for himself and for a class of similarly situated individuals under the TCPA. **The class is comprised of:**

> All natural persons in the United States who, from March 29, 2014, to the date of the Court's Order granting class certification: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of **USHealth** more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do Not Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with **USHealth's** Internal Do-Not-Call list.

> Excluded from the class are: (a) natural persons who were or had been insured by **USHealth** at the time of the first call; and (b) any employees, officers, directors of **USHealth**, attorneys appearing in this case, and any judge assigned to hear this case and immediate family and staff.

The case also includes a "Maryland subclass," **which is comprised of Mr. Hirsch and all class members who are Maryland residents, and who are asserting claims under both the TCPA and Maryland TCPA.**

    **Mr. Hirsch contends that he and some members of the class had listed their respective residential telephone numbers on the National Do Not Call Registry and that, more than 31 days after registering their numbers, he and those class members each received at least two calls to their telephone numbers within a 12-month period from USHealth or people acting on behalf of USHealth in violation of the TCPA, and, for Mr.**

Hirsch and the Maryland subclass members, also in violation of the Maryland TCPA.

Mr. Hirsch also contends that he and some members of the class had each requested that they be added to the USHealth Internal Do Not Call list and that thereafter he and those class members each received a telemarketing call or text from USHealth or people acting on behalf of USHealth in violation of the TCPA, and, for Mr. Hirsch and the Maryland subclass members, also in violation of the Maryland TCPA.

Members of the class, other than Mr. Hirsch, are known as absent class members and their claims are being represented at this trial by Mr. Hirsch who serves as the representative of the class. You should not hold the physical absence of any class member from trial against Mr. Hirsch or any class member, and you should not think that it reflects a lack of concern or interest by any class member in the outcome of this litigation. Also, the fact that this case is proceeding as a class action does not mean that any decision has been made about the merits of the case. You must make that decision. Also, your verdict here will be binding on all class members.

**Plaintiff's Authorities:**

**Dkt. 42; 47 U.S.C. § 227; 47 C.F.R. 64.1200;** *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, **18 F.C.C. Rcd. 14014, 14017-14020, 14034-14044 (2003); Md. Code, Com. Law §14-3201. Class actions thus create efficiencies in the use of judicial resources.** *Frey v. First Nat'l Bank Sw.*, **No. 3:11-CV-3093-N, 2013 WL 11309592, at *8 (N.D. Tex. Feb. 20, 2013) (granting class certification),** *aff'd sub nom*. *Frey v. First Nat. Bank Sw.*, **602 F. App'x 164 (5th Cir. 2015). "A federal class action is ... designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions."** *American Pipe & Const. Co. v. Utah*, **414 U.S. 538, 550 (1974).**

**Defendants Objections**: Plaintiff has failed to include information relating to the burden of proof for each proposed class member. The proposed instruction attempts to group both Defendants together, when they must be treated an evaluated as separate entities. No class has been certified, let alone the one described in Plaintiff's proposed instruction.  The proposed instruction is also contrary to law and misconstrues the portions of the TCPA that are at issue in the case. The Plaintiff's proposed instruction will lead to jury confusion.

**Defendants' Version:**

As I mentioned to you at the outset of the trial, this case includes a class action claim. A class action is a procedure that allows the filing of one lawsuit by a representative plaintiff on behalf of a group of plaintiffs who have similar claims. This procedure is intended to avoid duplication of effort or expense from multiple lawsuits asserting the same claim by many people in different locations.

The named plaintiff in this case, Mr. Hirsch, has asserted claims for himself and for a class of similarly situated individuals under the TCPA. The proposed class would be comprised of:

> All natural persons in the United States who, from March 29, 2014, to the date of the Court's Order granting class certification: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of that Defendant more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do Not Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with that Defendant's Internal Do-Not-Call list.

> Excluded from the class are: (a) natural persons who were or had been insured by that Defendant at the time of the first call; and (b) any employees, officers, directors of that Defendant, attorneys appearing in this case, and any judge assigned to hear this case and immediate family and staff.

The case also includes a "Maryland subclass," which is proposed to be comprised of Mr. Hirsch and all class members who are Maryland residents, and who are asserting claims under both the TCPA and Maryland TCPA.

Mr. Hirsch contends that he and every member of the proposed class had properly listed their respective residential telephone numbers on the National Do Not Call Registry and that, more than 31 days after registering their residential telephone numbers, he and those proposed class members each received at least two telephone solicitations to their

residential telephone numbers within a 12-month period from one or both of the Defendants or people acting on behalf of one or both Defendant in violation of the TCPA, and, for Mr. Hirsch and the Maryland proposed subclass members, also in violation of the Maryland TCPA.

Mr. Hirsch also contends that he and every member of the proposed class had each requested that they be added to a Defendant's Internal Do Not Call list and that thereafter, without either Defendant having a procedure in place for maintaining a list of individuals that make a request to be added to their internal do-not-call list, he and those proposed class members each received a telemarketing call or text from a Defendant or people acting on behalf of that Defendant in violation of the TCPA, and, for Mr. Hirsch and the Maryland proposed subclass members, also in violation of the Maryland TCPA.

Members of the proposed class, other than Mr. Hirsch, are known as absent class members and their claims are being represented at this trial by Mr. Hirsch who serves as the representative of the proposed class. You should not hold the physical absence of any proposed class member from trial against Mr. Hirsch or any proposed class member, and you should not think that it reflects a lack of concern or interest by any proposed class member in the outcome of this litigation.

The fact that this case is proceeding as a proposed class action does not mean that any decision has been made about the merits of Mr. Hirsch's allegations. You must make that decision. Mr. Hirsch is required to prove each element of the causes of action that he brings on behalf of the proposed class as to each individual proposed class member. Merely proving his own claim will not support a verdict for the proposed class unless that evidence supports each proposed class member's claim as well. For example, one of the elements that Mr.

Hirsch must prove in order to succeed on his TCPA claim is that he is a residential telephone subscriber. Whether Mr. Hirsch was a residential telephone subscriber has no bearing on whether each absent proposed class member is also a residential telephone subscriber. Mr. Hirsch would be required to prove that each proposed class member is a residential telephone subscriber apart from his own claim in order for each proposed class members' claim to succeed.

**Defendants' Authorities:**

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 738 (5th Cir. 1996); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017); *Parsons v. Ryan*, 784 F.3d 571, 575 (9th Cir. 2015).

**Instruction No. 9: Stipulations of Fact**

The parties have agreed to certain facts that were given to you in a document titled

"Stipulations." You must treat these facts as having been proved.

[INSERT STIPULATIONS]

**Instruction No. 10: Mr. Hirsch's Individual Claim for Violations of TCPA**

Plaintiff's Version:

Mr. Hirsch has brought an individual claim against USHealth for violations of the TCPA. Mr. Hirsch claims that he received telemarketing calls and texts on the following days: November 10, 2017; November 13, 2017; December 1, 2017; May 15, 2018; May 16, 2018; July 14, 2018; July 16, 2018; August 13, 2018; October 18, 2018; November 8, 2018; November 14, 2018; November 15, 2018; and March 2, 2019. For this claim, he must prove that it is more likely than not that at least one of the following scenarios is true:

*Scenario Number 1:*

(1) Mr. Hirsch received at least two telephone solicitations (either calls or texts) in any 12-month period;

(2) the calls or texts were made when his telephone number was on the National Do Not Call Registry for over 31 days;

(3) Mr. Hirsch's telephone number that was called or texted was a residential number; and

(4) the calls or texts were made by or on behalf of USHealth.

*Scenario Number 2:*

(1) Mr. Hirsch made a request that his telephone number be added to the USHealth Internal Do Not Call list;

(2) Mr. Hirsch thereafter received at least one telemarketing call or text to his telephone number;

(3) Mr. Hirsch's telephone number that was called or texted was a residential

number; and

(4)     the calls or texts were made by or on behalf of USHealth.

**Plaintiff's Authorities:**

**47 U.S.C. §227(c)(5)** (creating private right of action for NDNC violation: "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]"); **47 C.F.R. § 64.1200(c)(2)** ("(c) No person or entity shall initiate any telephone solicitation to: *** (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (sufficient to show number listed on registry and need not be the original DNC registrant -- "those whose numbers are on the Registry and nevertheless received marketing calls suffered an injury that is traceable to [defendant's] misconduct.").

**47 U.S.C. §227(c)(5)** (creating private right of action for "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]"); **47 C.F.R. § 64.1200(d)** ("No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."); *Wagner v. CLC Resorts & Developments, Inc*., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014) ("To state a claim under section 227(c)(5) of the TCPA, a plaintiff must allege (1) receipt of more than one telephone call within any 12-month period (2) by or on behalf of the same entity (3) in violation of the regulations promulgated by the FCC."); *Cunningham v. Nationwide Sec. Sols., Inc*., 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017) (Lynn, C.J.); *Barrett v. Vivint, Inc*., No. 19-CV-00568, 2020 WL 2558231, at *6 (D. Utah May 20, 2020) ("Subsection 227(c) of the TCPA authorizes a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."); *id*. ("In the implementing regulations at issue, the Federal Communications Commission (FCC) provided, 'No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.') (quoting 47 C.F.R. § 64.1200(d)).

*See also Campbell-Ewald*, 136 S. Ct. at 667 ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)"); *Hand v. Beach Entertainment KC, LLC*, No. 4:18-cv-00668-NKL, 2020 WL 3163672, at *23 (W.D. Mo. April 27, 2020) (recipient of unwanted text has standing for do-not-call violation); *Drew v. Lexington Consumer Advocacy*, No. 16-CV-00200-LB, 2016 WL 9185292, at *5 (N.D. Cal. Aug. 11, 2016) ("a text message is a 'call' for purposes of the TCPA"), *report and*

*recommendation adopted sub nom. Drew v. Lexington Consumer Advocacy, LLC*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016).

**Defendants Objections**: Defendants object to Plaintiff combining two separate causes of action with distinct elements and defenses (i.e., national do-not-call rules and internal do-not-call rules). Doing so would confuse the jury and potentially cause prejudice to the Defendants. It also deprives Defendants of their rights to defend against each and every claim and to require the Plaintiff to prove each and every one of the elements of his asserted causes of action. Moreover, this proposed Instruction does not comport with the law relating to the elements and defenses applicable to each distinct cause of action. It also suggests that liability could exist against the non-calling Defendants without accounting for principles of vicarious liability. Plaintiff's attempt to group the Defendants together as "USHealth" is improper. Each Defendant is a separate entity and the jury must evaluate each Defendant separately. Defendants object to the use of this proposed Instruction in its entirety. Defendants propose the following counter-proposals (10a (NDNC) and 10b (IDNC)) for this instruction.

> **Defendant's Version:**
>
> **Defendants' Counter Proposed Instruction No. 10a: The Telephone Consumer Protection Act Instruction No. 8a: Mr. Hirsch's Individual Claim for Violations of TCPA - Violation of Calling a Residential Telephone Subscriber Registered on the National Do-Not-Call Registry**
>
> Mr. Hirsch has brought an individual claim against each Defendant for violations of the national do-not-call rules. Mr. Hirsch alleges that each respective Defendant violated the TCPA's prohibition against telephone solicitations to residential telephone subscribers who have registered their telephone numbers on the National Do-Not-Call registry. For this claim, Mr. Hirsch must prove by a preponderance of the evidence the following:
>
> > (1) Mr. Hirsch received at least two or more telephone calls and/or text messages in any 12-month period;
> >
> > (2) That two or more of the telephone calls or text messages were telephone solicitations (defined in Instruction No. 21 below);
> >
> > (3) the calls or texts were made when his telephone number was on the National Do Not Call Registry for over 31 days;
> >
> > (4) The calls were placed to a residential telephone subscriber (defined in

35

Instruction No. 25 below);

(5)    That Mr. Hirsch was injured by the telephone calls and/or text messages; and

(6)    Either that the Defendant directly placed the telephone calls or is vicariously liable for the conduct of another that placed calls in violation of the national do-not-call rules by providing actual authority to the caller to violated the national do-not-call rules, apparent authority to violate the national do-not-call rules, or because the Defendant ratified the conduct of the caller with knowledge that the caller was acting in violation of the TCPA.

If you find that a Defendant does not make telephone solicitations, you must find in favor of the Defendant.

Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating the National Do-Not-Call rules, however, if it has obtained the residential telephone subscriber's prior express invitation or permission or if the telemarketer making the call has an established business relationship or personal relationship with the recipient of the call.  I will instruct you later on the meaning of the prior express invitation or permission and what constitutes an established business relationship and personal relationship.

The Plaintiff must establish these elements as to each Defendant separately and based upon the other instructions provided.  If you find that the Plaintiff has not proven all of these elements by a preponderance of the evidence, then you should find for the Defendants with respect to the Plaintiff's claim for violations of the national do-not-call rules.

If you find that the Plaintiff has proven all of the elements of this claim by a preponderance of the evidence, then you must consider the Defendants' defenses – which I will instruct you on later.

**Defendants' Authorities:**

47 U.S.C. 227(c); 47 C.F.R. 64.1200; *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2014 WL 7717584, at *5–6 (N.D. Ill. Nov. 21, 2014); *Dish Network, LLC*, 28 F.C.C.R. 6574, 6582  (2013); *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084–86 (C.D. Cal. 2012), *aff'd*, 582 Fed. Appx. 678 (9th Cir. 2014); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, at *1 (N.D. Cal. Dec. 19, 2019); *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG, 2015 WL 4477425, *5 (D. Nev. July 20, 2015); *Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-2472, 2020 WL 556405, at *6 (W.D. Tenn. Feb. 4, 2020); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017).

**Defendants' Counter Proposed Instruction No. 10b: Mr. Hirsch's Individual Claim for Violations of TCPA- Violation of Calling a Residential Telephone Subscriber Registered on the Internal Do-Not-Call Registry**

The Plaintiff separately contends that each Defendant violated the internal do-not-call rules.  This cause of action is different from, and requires separate findings than, the national do-not-call rules claim described in Instruction No. 10a above.

To prove his individual claim for a violation of the Internal Do-Not-Call rules, the Plaintiff must prove by a preponderance of the evidence:

(1)    That the Plaintiff received telephone calls from a Defendant or on its behalf;

(2)    That the Plaintiff was a residential telephone subscriber (defined in Instruction No. 25 below) with respect to the telephone number at which the telephone calls were received;

(3)    That the Plaintiff expressly requested the person or entity that called him for his residentially subscribed telephone be registered on a Defendant's internal Do-Not-Call Registry;

(4)   Either that Defendant, or a person or entity making calls on Defendant's behalf, made two or more telephone calls to the Plaintiff within a 12 month period;

(5)   That the telephone calls were made for telemarketing purposes (defined in Instruction No. 22 below);

(6)   That, prior to the telephone calls being made to the Plaintiff, the Defendant had not instituted a procedure for having a written policy for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of the Defendant;

(7)   That each of the telephone calls occurred at least thirty days after the date that the Plaintiff expressly requested to register his residential telephone on the Defendant's internal Do-Not-Call Registry of the Defendant that called;

(8)   That Plaintiff was injured by the telephone calls to his residential telephone; and

(9)   Either that the Defendant directly placed the telephone calls or is vicariously liable for the conduct of another that placed calls in violation of the internal do-not-call rules by providing actual authority to the caller to place unlawful calls, apparent authority for a third party to place unlawful calls, or because the Defendant ratified the conduct of the caller with knowledge that the caller was placing calls in violation of the TCPA.

Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating the National Do-Not-Call rules, however, if it has obtained the residential telephone subscriber's prior express invitation or

permission or if the telemarketer making the call has a personal relationship with the recipient of the call. I will instruct you later on the meaning of the prior express invitation or permission and what constitutes a personal relationship.

The Plaintiff must establish these elements as to each Defendant separately and based upon the other instructions provided. If you find that the Plaintiff has not proven all of these elements by a preponderance of the evidence, then you should find for the Defendants with respect to the Plaintiff's claim for violations of the national do-not-call rules.

If you find that the Plaintiff has proven all of the elements of this claim by a preponderance of the evidence, then you must consider the Defendants' defenses – which I will instruct you on later.

Unlike the national do-not-call rules, the internal do-not-call rules only requires the institution of certain procedures by the Defendant. A person or entity does not violate the internal do-not-call rules by making telephone calls, but instead only if it is found that they had to, but failed to, have the procedures identified above in place prior to the initiation of any telephone solicitation calls. You must determine whether the Plaintiff has proven by a preponderance of the evidence each of the above questions with respect to each of the telephone calls the Plaintiff claims he received and as to each person or entity that initiated those telephone calls.

If it has been shown that the Defendant had instituted a procedure for maintaining a list of persons who request not to receive telemarketing calls, then the Plaintiff cannot succeed on a violation of the internal do-not-call rules and you must find in favor of the Defendants.

If you find that a Defendant does not make telemarketing calls, it does not have to have any procedures in place and cannot be directly liable for a violation of the internal do-not-call rules and you must find in favor of the Defendant.

If a Defendant that does not make telemarketing calls but others do so on its behalf, the Plaintiff must prove that the person or entity that made telephone calls on the Defendant's behalf failed to have the required procedures in place prior to the initiation of the telephone calls to the Plaintiff, and that the Defendant is vicariously responsible for the failures of the third party making the telephone calls. A Defendant may have procedures in place that apply to and may be utilized by people or entities making telephone calls on its behalf, and you must take those procedures into account in determining whether the minimum procedures had been instituted prior to the initiation of telephone calls to Plaintiff.

If you find that a Defendant does not make telemarketing calls, and does not have others do so on its behalf, then you must find in favor of that Defendant.

Any person or entity making telemarketing calls (or on whose behalf telemarketing calls are made) will not be liable for violating the Internal Do-Not-Call rules, however, if the telemarketer making the call has an established business relationship with the recipient of the call. I will instruct you later on the meaning of what constitutes an established business relationship.

If you find that the Plaintiff has proven all of the elements of this claim by a preponderance of the evidence, then you must consider the Defendants' defenses – which I will instruct you on later.

**Defendants' Authorities:**

47 U.S.C. 227(c); 47 C.F.R. 64.1200; *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121 (D. Conn. 2016);

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2014 WL 7717584, at \*5–6 (N.D. Ill. Nov. 21, 2014); *Dish Network, LLC*, 28 F.C.C.R. 6574, 6582   (2013); *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084–86 (C.D. Cal. 2012), *aff'd*, 582 Fed. Appx. 678 (9th Cir. 2014); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, at \*1 (N.D. Cal. Dec. 19, 2019); *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG, 2015 WL 4477425, \*5 (D. Nev. July 20, 2015); *Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-2472, 2020 WL 556405, at \*6 (W.D. Tenn. Feb. 4, 2020); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017).

**Instruction No. 11: The Class's TCPA Claim**

**Plaintiff's Version:**

Mr. Hirsch has brought a class claim against USHealth for violations of the TCPA. For this claim, he must prove that it is more likely than not that at least one of the following scenarios is true:

*Scenario Number 1:*

    (1)     one or more members of the class (other than Mr. Hirsch) received at least two telephone solicitations (either calls or texts) in any 12-month period;

    (2)     the calls or texts were made when the telephone number was on the National Do Not Call Registry for over 31 days;

    (3)     the number that was called or texted was a residential number; and

    (4)     the calls or texts were made by or on behalf of USHealth.

*Scenario Number 2:*

    (1)     one or more members of the class (other than Mr. Hirsch) made a request that their telephone number be added to the USHealth Internal Do Not Call list;

    (2)     thereafter the class member or members received at least one telemarketing call or text to their telephone number;

    (3)     the telephone number that was called or texted was a residential number; and

    (4)     the calls or texts were made by or on behalf of USHealth.

**Plaintiff's Authorities:**

The FCC promulgated regulations under the TCPA creating a national NDNC registry and requiring telemarketers to create and maintain their own IDNC list. 47 U.S.C. § 227(c)(3),

47 C.F.R. § 64.1200(d). The TCPA prohibits telemarketing calls to persons on the NDNC under 47 U.S.C. § 227(c)(3) and 47 C.F.R. § 64.1200(c)(2), and to persons on the IDNC under IDNC under 47 U.S.C. § 227(c)(1)-(2) and 47 C.F.R. § 64.1200(d). These provisions are the basis for the cause of action in this case. More specifically regarding the IDNC list, FCC regulations provide that telemarketers may not call a person unless they have first "*instituted procedures*" for maintaining an IDNC list. *Id.* § 64.1200(d) (emphasis added). These procedures are that telemarketers (1) have a written policy for maintaining an IDNC list; (2) train their personnel on its "existence and use"; (3) put people on the list when they ask; and (4) refrain from calling people on the list for five years after a request is made. The TCPA creates a private right of action for anyone registered on the NDNC registry and IDNC list for subsequent telemarketing call violations. 47 U.S.C. § 227(c)(5). For a NDNC registry violation, a person must receive, from the same telemarketer, more than one call within a year. 47 U.S.C. § 227(c)(5). For an IDNC list violation, a person must receive any call after he or she has asked to be listed on the IDNC list. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d). Statutory damages are $500 for each negligent violation and $1,500 for each willful violation. See 47 U.S.C. § 227(c)(5)(B)-(C). Residents of Maryland, such as Plaintiff, may bring a claim for violation of the Maryland TCPA, MD. Code, Com. Law, §14-3201 based on a violation under the federal TCPA, for which Defendants are also liable for attorneys' fees. "[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations." Campbell-Ewald Co. v. Gomez, —— U.S. —— 136 S. Ct. 663, 674 (2016).

**Defendants' Objections**: This proposed instruction does not properly set forth the elements of proof for violations of the national do-not-call rules or the internal do-not-call rules. As explained above, the two claims differ in many respects and the instructions on each must be separated. It is also likely to lead to confusion. The proposed instruction attempts to group both Defendants together, when they must be treated an evaluated as separate entities. The proposed instruction will likely confuse the jury as to what's required to be proven for each absent class member.

**Defendants' Version:**

**Defendants' Counter Proposed Instruction No. 11a: The Class's TCPA Claim– Calls to the National Do-Not-Call List**

Mr. Hirsch has brought a proposed class claim against each Defendant for violations of the TCPA for telephone solicitations made to residential telephone subscribers registered on the National do-not-call list. For this claim, he must prove by a preponderance of the evidence that each member of the proposed class suffered the same TCPA violation he supposedly suffered. The Plaintiff must thus prove each of the elements set forth in Instruction No. 10a above, by a preponderance of the evidence as to each and every proposed class member. The Plaintiff must do this for each proposed class member and prove liability

43

against each Defendant.  Without doing so, no Defendant can be liable to any absent class member.  That the Plaintiff may meet his burden of proof on his individual claim does not mean that he has done so with respect to any other proposed class member.

**Defendants' Authorities:**

47 U.S.C. 227(c); 47 C.F.R. 64.1200; *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010); *Castano v. Am. Tobacco Co*., 84 F.3d 734, 738 (5th Cir. 1996); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017); *Parsons v. Ryan*, 784 F.3d 571, 575 (9th Cir. 2015). *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2014 WL 7717584, at *5–6 (N.D. Ill. Nov. 21, 2014); *Dish Network, LLC*, 28 F.C.C.R. 6574, 6582  (2013); *Chemtool, Inc. v. Lubrication Techs., Inc*., 148 F.3d 742, 745 (7th Cir. 1998); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084–86 (C.D. Cal. 2012), *aff'd*, 582 Fed. Appx. 678 (9th Cir. 2014); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, at *1 (N.D. Cal. Dec. 19, 2019); *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG, 2015 WL 4477425, *5 (D. Nev. July 20, 2015); *Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-2472, 2020 WL 556405, at *6 (W.D. Tenn. Feb. 4, 2020); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017).

**Defendants' Counter Proposed Instruction No. 11b: The Class's TCPA Claim – Calls to the Internal Do-Not-Call List**

Mr. Hirsch is attempting to bring a proposed class claim against the Defendants for violations of the TCPA for calls made to residential telephone subscribers who have requested to be placed on that Defendant's Internal Do-Not-Call list. To prove the proposed class action claims, the Plaintiff must prove that each member of the proposed class suffered the same TCPA violation he supposedly suffered. The Plaintiff must thus prove each of the elements set forth in Instruction No. 10b  above, by a preponderance of the evidence as to each and every proposed class member. The Plaintiff must do this for each proposed class member and prove liability against each Defendant.  Without doing so, no Defendant can be liable to any absent class member.  That the Plaintiff may meet his burden of proof on his individual claim does not mean that he has done so with respect to any other proposed class

member.

**Defendants' Authorities:**

47 U.S.C. 227(c); 47 C.F.R. 64.1200; *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010); *Castano v. Am. Tobacco Co*., 84 F.3d 734, 738 (5th Cir. 1996); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017); *Parsons v. Ryan*, 784 F.3d 571, 575 (9th Cir. 2015).

**Instruction No. 12: Direct Liability Under the TCPA**

**Defendants' Version:**

Only the person or entity that made or initiated a telephone call can be directly liable for a violation of the do-not-call rules. In order to find that a party is directly liable for making or initiating a telephone call, that party must have physically made or initiated the telephone call. An entity can only be considered to have made or initiated a telephone call if it takes the steps necessary to physically place a telephone call or text. Having a third party initiate a call on your behalf is not considered "initiating" or "making" a call within the TCPA. If the Defendant did not physically place a telephone call to the Plaintiff or any proposed class member, the Defendant is not directly liable. That is, Plaintiff must show that USHA called Plaintiff in violation of the TCPA in order to find USHA directly liable. Plaintiff must separately show that USHG called Plaintiff in violation of the TCPA to show that USHG is directly liable.

**Defendants' Authorities:**

*See In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6580-82 (2013); *Palm Beach Golf Ctr.–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1254-55 (11th Cir. 2015); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014).

**Plaintiff's Version:**

A person or entity that made or initiated a telephone call can be directly liable for a violation of the do-not-call rules. In order to find that a party is directly liable for making or initiating a telephone call, that party's officer or employee must have physically made or initiated the telephone call. If the Defendant's officer or employee did not physically place a telephone call to the Plaintiff or any proposed class member, the Defendant is not directly liable. That is, Plaintiff must show that USHealth Advisors, LLC or one of its officers or

employees, called Plaintiff in violation of the TCPA in order to find USHealth Advisors, LLC

directly liable.  Plaintiff must separately show that USHealth Group, Inc. called Plaintiff in

violation of the TCPA to show that USHealth Group, Inc. is directly liable.

**Plaintiff's Authorities:**

*Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 939 (N.D. Tex. 2010) (the doctrine of respondeat superior imposes liability on an employer for the tortious acts of its employees when the acts are committed by employee while acting within the course and scope of his employment).

Defendants' instruction is a misstatement of the law. Defendants have previously admitted that vicarious liability can attach under federal common law agency principles. Liability under the TCPA for principal-agent liability is addressed above at Instructions 14 to 17.

*See* Dkt. 96, Defs.' Mem. at 37 (Defendants' admission that vicarious liability can attach under federal common law agency principles and citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)). *Campbell-Ewald* cited with approval the FCC's determination on point in *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6586 (2013) ("*Dish Network*"). *See also Cunningham v. Lifestyles Dev., LLC*, No. 19-CV-00006, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019)*; Cunningham v. Politi*, No. 418CV00362ALMCAN, 2019 WL 2519568, *5 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, No. 4:18-CV-362, 2019 W/L 2524736 (E.D. Tex. June 19, 2019) ("To the extent any authority cited herein relies on Texas state-law agency principles (as opposed to the Restatement (Third) of Agency), the Court notes that the Restatement and Texas state law's agency principles are substantially similar."). The Fifth Circuit held that "agency may be established by actual or apparent authority; additionally, the equitable doctrine of ratification may give rise to liability." *Debaillon v. Total Minatome Corp*., 166 F.3d 339 (5th Cir. 1998). Likewise, in *Dish Network*, the FCC made clear that an accused telemarketer is responsible even if it did not directly make the offending calls. "[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  28 F.C.C. Rcd. at 6584. Defendants admit this much as well.  *See* Defs.' Mem. at 37.

**Defendants Objections:**  Plaintiff's instruction is superfluous and misleading in that is mixes direct and vicarious liability in a way that will confuse the jury.  Vicarious liability is addressed in separate instructions and should not be part of this instruction.

**Instruction No. 13: Agent and Principal**

    <u>Plaintiff's Version:</u>

    For USHealth to be liable in this case, Mr. Hirsch must prove to you that it is more likely than not that the calls and text messages at issue were either made or sent by (1) USHealth, or (2) people acting as USHealth's agents.

    An *agent* is a person or company empowered by another person or company to act on its behalf. The person granting the authority to the agent to act on its behalf is called the *principal*. When an agent acts on behalf of its principal within the scope of the agent's actual or apparent authority, or when the principal ratifies the agent's conduct, the principal is responsible for the agent's actions.

    **Thus,** you may find agency in any one of three ways — based on actual authority, apparent authority, or ratification. And finding any one of these is sufficient; proving more than one is not necessary.

    <u>Plaintiff's Authorities:</u>

*See* **Dkt. 96, Defs.' Mem. at 37 (admission that vicarious liability can attach under federal common law agency principles and citing** *Campbell-Ewald Co. v. Gomez***, 136 S. Ct. 663, 674 (2016)).** *Campbell-Ewald* **cited with approval the FCC's determination on point in** *In the Matter of the Joint Petition Filed by Dish Network, LLC***, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules***, 28 F.C.C. Rcd. 6574, 6586 (2013) ("***Dish Network***").** *See also Cunningham v. Lifestyles Dev., LLC***, No. 19-CV-00006, 2019 WL 4282039, at \*3 (E.D. Tex. Aug. 8, 2019);** *Cunningham v. Politi***, No. 418CV00362ALMCAN, 2019 WL 2519568, \*5 (E.D. Tex. Apr. 30, 2019),** *report and recommendation adopted***, No. 4:18-CV-362, 2019 WL 2524736 (E.D. Tex. June 19, 2019) ("To the extent any authority cited herein relies on Texas state-law agency principles (as opposed to the Restatement (Third) of Agency), the Court notes that the Restatement and Texas state law's agency principles are substantially similar."). The Fifth Circuit held that "agency may be established by actual or apparent authority; additionally, the equitable doctrine of ratification may give rise to liability."** *Debaillon v. Total Minatome Corp***., 166 F.3d 339 (5th Cir. 1998). Likewise, in** *Dish Network***, the FCC made clear that an accused telemarketer is responsible even if it did not directly make the offending calls. "[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of**

apparent authority and ratification."  28 F.C.C. Rcd. at 6584. Defendants admit this much as well.  *See* Defs.' Mem. at 37.

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject and is misleading, likely to result in confusion to the jury. In addition, there should be an explanation of both direct and vicarious liability prior to any specific "agency' related instructions. Defendants' proposed Additional Instructions below include these types of instructions which would provide context to the jury and avoid confusion. The proposed instruction attempts to assert a new theory of liability that was not pleaded; nor is there any cause of action for vicarious liability against either Defendant as set forth in Defendants' Motion for Summary Judgment. To that extent, this theory should be excluded from the instructions all-together. Defendants stand by their objections to this instruction, but would agree to a proposed instruction on this topic, to the extent the objections are over-ruled, with the suggested edits Defendants have provided below and inclusion of the Additional Instructions proposed by Defendants relating to agency topics.

**Defendants' Version:**

For either Defendant to be liable in this case under any of the theories of vicarious liability a third party must first be found to have violated the TCPA and, if so, then to be proven by the Plaintiff by a preponderance of the evidence, that the third party is the Defendant's legal agent with respect to the specific conduct at issue in this case.

An *agent* is a person or company empowered by another person or company to act on its behalf. The person granting the authority to the agent to act on its behalf is called the *principal*. When an agent acts on behalf of its principal within the scope of the agent's actual or apparent authority, or when the principal ratifies the agent's conduct, the principal is responsible for the agent's actions.

The legal term "agent" is not equivalent to the term as it is used in most professions. For example, a real estate agent is not the same as a legal agent.  A legal "agent" is defined by the level of control a principal has over the manner and means in which an agent performs certain functions that the principal has asked the agent to perform. The more control or authority a "principal" has over an "agent," such as the ability to tell the agent how to perform its tasks, the more likely there is an "agency relationship." The less control a person

or entity has over a third party, the less likely it is that the third party is an agent. In evaluating whether a third party is an "agent" you can look to the terms of the agreement between the person or entity and the third party, and the actual conduct of the third party

However, just because a third party is a "legal agent" of a principal, that alone does not make that principal liable for any and all conduct of that agent. A principal may be vicariously liable under the TCPA only for the acts of an agent that are within the scope of the authority specifically granted to the third party agent. For example, if a company authorizes a person to act as their agent to sign a particular contract for them, they would not be vicariously liable for that agent's unauthorized signing of an additional and separate contract. Likewise, if an "agent" acts directly contrary to the instructions of the Defendant, then the Defendant cannot be liable for the "agent's" conduct. For instance, a delivery driver may be the agent of a restaurant, but may not be authorized to drive through red lights in order to make timely deliveries. Here, a Defendant can only be vicariously liable if you find that the Defendant gave authority to an agent to violate the TCPA.

You may find agency in any one of three ways — based on actual authority, apparent authority, or ratification. And finding any one of these is sufficient; proving more than one is not necessary.

### Defendants' Authorities:

Restatement (Third) of Agency § 1.01; Restatement (Third) of Agency § 7.03; Restatement (Third) of Agency § 7.07; *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449-50 (9th Cir. 2018); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2014 WL 7717584, at *5–6, n.3 (N.D. Ill. Nov. 21, 2014); *Dish Network, LLC*, 28 F.C.C.R. 6574, 6582  (2013); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 F.C.C.R. 12391, 12407 (1995); *Clemons v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, at *3-6 (C.D. Ill. July 21, 2020); *Bilek v. Fed. Ins. Co.*, No. 19 C 8389, 2020 WL 3960445, at *4-6 (N.D. Ill. July 13, 2020); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *3-8 (N.D. Cal. July 9, 2020).

**Instruction No. 14: Actual Authority**

 **Plaintiff's Version:**

 An agent acts with *actual authority* when the principal has either expressly or impliedly authorized the agent to act on the principal's behalf as to that matter.

 First, actual authority may be expressly granted by the principal. This may be granted through spoken words or in writing. **Or it may be implied from the totality of the circumstances, such as when the principal's words or conduct cause an agent to reasonably believe that the principal consents to have an act done on its behalf. It can also be implied from the necessary implication of an act that the agent is expressly authorized by the principal to take. Also, actual authority can be inferred from a from a previous course of dealing. In making this finding, the test is whether the agent reasonably believes he or she is carrying out the principal's express instructions. Whether an agent's belief is reasonable is determined from the viewpoint of a reasonable person in the agent's situation under all of the circumstances.**

 Thus, an agent acts with actual authority when **his or her conduct was** expressly authorized by the principal, such as instructions in a written agreement. The agent also acts with actual authority when, although his or her conduct is not expressly authorized by the principal, the agent reasonably believes he or she is carrying out the principal's express instructions.

 <u>**Plaintiff's Authorities:**</u>

RESTATEMENT (THIRD) OF AGENCY § 3.01 ("Actual authority[…] is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." *See also Dish Network*, 28 F.C.C. Rcd. at 6586 (agency includes relationship where "one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control"); *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-CV-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (same). Actual authority under the TCPA can be express or implied. *See Eldridge v. Cabela's Inc*., No. 16-CV-536, 2017 WL 4364205, at *6 (W.D. Ky. Sept. 29, 2017) (noting "the recognition of actual, implied agency in TCPA cases by numerous courts") (collecting cases). Express is the scope

of the engagement, and implied is "circumstantial proof of actual authority" "(1) from some indication from the principal that the agent possesses the authority; (2) from being the necessary implication of an expressly authorized act; and (3) from a previous course of dealing." *Pasant v. Jackson Nat. Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995) (*citing Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 945 (5th Cir. 1983)). The FCC's *Dish Network* decision cited extensively to agency principles enunciated in the Restatement (Third) of Agency. Texas law similarly invokes the *Restatement (Third) Of Agency* as authoritative. *See, e.g., Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 590 (Tex. 2017); *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex. 2012).[3] Under the Restatement (Third) of Agency, actual authority requires only "that an agent's belief be reasonable at the time the agent acts, [where] the agent in fact believes that the principal desires the action taken by the agent." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006).

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject and is misleading, likely to result in confusion to the jury. Additional instructions defining various terms and concepts should also be provided to the jury for proper context and to avoid confusion. The proposed instruction attempts assert a new theory of liability that was not pleaded; nor is there any cause of action for vicarious liability against either Defendant as set forth in Defendants' Motion for Summary Judgment. To that extent, this theory should be excluded from the instructions all-together. Defendants stand by their objections to this instruction, but would agree to a proposed instruction on this topic, to the extent the objections are over-ruled, with the suggested edits Defendants have provided below and inclusion of the Additional Instructions proposed by Defendants relating to agency topics.

   **Defendants' Version:**

   An agent acts with *actual authority* when the principal has either expressly or impliedly authorized the agent to act on the principal's behalf as to that matter. Actual authority is based on a relationship that arises when a principal agrees with or consents to its agent that the agent shall act on the principal's behalf and subject to the principal's control, and the agent agrees or otherwise consents so to act in the manner controlled by the principal.

   First, actual authority may be expressly granted by the principal. This may be

---

[3] Federal courts "may use state common law as the basis of the federal common law" as long as "the state law is consistent with the policies underlying the federal statute in question[.]" *Nachwalter v. Christie*, 805 F.2d 956, 959-60 (11th Cir. 1986).

granted through spoken words or in writing.  Thus, an agent acts with actual authority when his or her conduct at issue was expressly authorized by the principal, such as instructions in a written agreement.  The agent also acts with actual authority when, although his or her conduct is not expressly authorized by the principal, the agent reasonably believes he or she is carrying out the principal's express instructions.  Whether the agent's belief is reasonable is determined by considering the totality of the circumstances.

The Plaintiff has the burden of showing first that a violation of law occurred and who violated.  Next, Plaintiff has to prove that an agency relationship, defined earlier, exists between the calling party and one or both of the Defendants.  If so, then Plaintiff has the additional burden of showing that USHA demanded that USHA's agent make the specific calls Plaintiff alleges violated the TCPA in the manner they were made in order to find USHA liable.  Plaintiff has the same burden of proof with respect to any claim against USHG.

In order for you to find that a Defendant had actual authority over a caller, the Defendant must have directly spoken or written to the caller, telling it to make the calls at issue in this case in the manner the calls were made, or that the caller reasonable believed under the totality of the circumstances that it was placing the calls in the manner the Defendant authorized the caller to do so.  Plaintiff has the burden of proving that the agent's scope of authority included permission to violate the TCPA.

**Defendants' Authorities:**

Restatement (Third) of Agency § 1.01 & cmt. f(1) (2006); Restatement (Third) of Agency § 3.01, 3.02 (2006); *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013); *Dish Network, LLC*, 28 F.C.C.R. 6574, 6582  (2013); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084–86 (C.D. Cal. 2012), *aff'd*, 582 Fed. Appx. 678 (9th Cir. 2014); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *Opp v. Wheaton Van Lines*, 231 F.3d 1060, 1064 (7th Cir. 2000); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077 (N.D. Cal. Dec. 19, 2019); *Clemons v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-CV-1050, 2020 WL

4193997, at *3-6 (C.D. Ill. July 21, 2020); *Bilek v. Fed. Ins. Co.*, No. 19 C 8389, 2020 WL 3960445, at *4-6 (N.D. Ill. July 13, 2020); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *3-8 (N.D. Cal. July 9, 2020).

**Instruction No. 15: Apparent Authority**

<u>**Plaintiff's Version:**</u>

In addition to acting with actual authority, agents may also act with apparent authority. Agents **and subagents** act with *apparent authority* when the principal holds them out to third parties as possessing sufficient authority to act on the principal's behalf **as to that matter**. That is, agents **and subagents** act with apparent authority when they act beyond of the terms of their express authority, but under circumstances where a reasonable person would believe the principal was assenting, or consenting, to **their** conduct.

**Several factors may prove telemarketers are acting with apparent agency:**

**First, telemarketers may be acting with apparent authority when the principal (here, USHealth) allows them to access information and systems that normally would be within principal's exclusive control, such as detailed information about pricing and the principal's products.**

**Second, telemarketers may be acting with apparent authority when the principal (here, USHealth) provides the telemarketers access to customer information.**

**Third, telemarketers may be acting with apparent authority when the principal (here, USHealth) allows them to enter consumer information into the principal's (USHealth's) sales or customer systems.**

**Fourth, telemarketers may be acting with apparent authority when the principal (here, USHealth) drafts or approves their telemarketing scripts or talking points.**

**Fifth, telemarketers may be acting with apparent authority when the principal (here, USHealth) allows them to use the principal's (USHealth's) trademarks or trade name.**

**And sixth, telemarketers may be acting with apparent authority when the principal**

(here, USHealth) knew, or should have known, that the telemarketer was violating the TCPA and failed to take effective steps within its power to force the telemarketer to cease that conduct.

### Plaintiff's Authorities:

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (cited with approval the FCC's determination in *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6586 (2013) ("*Dish Network*"). FCC's well-developed apparent agency principals in *Dish Network* (based on the RESTATEMENT (THIRD) OF AGENCY. *Dish Network* provides that a principal's manifestation of apparent agency conduct may be proven by the following factors: allowing agents to access to "information and systems that normally would be within principal's exclusive control" such as "detailed information" about "pricing" and the principal's "products"; providing agents access to customer information; allowing agents to "enter consumer information into [USHA's] sales or customer systems;" drafting or approving agent scripts; allowing agent use of trademarks; or reasonable knowledge of ongoing agent TCPA violations, and failing to take effective steps within its power to force the telemarketer to cease that conduct. 28 F.C.C. Rcd. 6574, 6592–93. As *Dish Network* observes: "At a minimum, evidence of these kinds of relationships which consumers may acquire through discovery, if they are not independently privy to such information—should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject and is misleading, likely to result in confusion to the jury. Additional instructions defining various terms and concepts should also be provided to the jury for proper context and to avoid confusion. The proposed instruction attempts assert a new theory of liability that was not pleaded; nor is there any cause of action for vicarious liability against either Defendant as set forth in Defendants' Motion for Summary Judgment. To that extent, this theory should be excluded from the instructions all-together. Defendants stand by their objections to this instruction, but would agree to a proposed instruction on this topic, to the extent the objections are over-ruled, with the suggested edits Defendants have provided below and inclusion of the Additional Instructions proposed by Defendants relating to agency topics.

### Defendants' Version:

In addition to acting with actual authority, agents may also act with apparent authority. Agents act with *apparent authority* when the principal holds them out to third parties as possessing sufficient authority to act on the principal's behalf in the manner in which the agent is acting. That is, agents act with apparent authority when they act beyond

of the terms of their express authority, but under circumstances where a reasonable person would believe the principal was assenting, or consenting, to the agent's conduct.

Only a Defendant principal's alleged words or conduct that were represented by the principal directly to the Plaintiff (or a proposed class member) can clothe an alleged agent with apparent authority. Any statement by a principal to the Plaintiff (or a proposed class member) must have occurred prior to the actions of the agent alleged to be a violation of the TCPA, not after the fact. Statements that are made by an agent to Plaintiff (or a proposed class member) are not sufficient to create apparent authority with a principal. The fact that one party performs a service that facilitates the other's business does not constitute an apparent authority manifestation. Furthermore, Plaintiff must show that a Defendant provided apparent authority not just to make telephone calls, but to violate the TCPA.

In order for you to find that USHA provided a caller with apparent authority, first you must conclude that there was a violation of the TCPA by a calling party. Then you must conclude that the Plaintiff has proven the existence of an agency relationship between the calling party and USHA with respect to the violation of law. If so, Plaintiff must then prove by a preponderance of the evidence that USHA directly made a representation, in conduct or words, to the Plaintiff (or, for any proposed class member's claim, that proposed class member) prior to the telephone call being made that led him to believe that the calling party was authorized to make telephone calls in violation of the TCPA, and that as a result the calling party called the Plaintiff (or the proposed class member). You cannot rely on any statement made by the caller with respect to proof of the element that authority was provided by USHA to the caller.

In order for you to find that USHG provided a calling party with apparent authority,

the Plaintiff carries the same burden of proof with respect to the same elements of the law as set forth above, but with facts showing the specific conduct was conducted by USHG.

**Defendants' Authorities:**

**Restatement (Third) of Agency § 3.03 (2006);** *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC,* **No. 18-CV-07311-VC, 2019 WL 6907077, at \*1 (N.D. Cal. Dec. 19, 2019);** *Kristensen v. Credit Payment Servs. Inc.***, No. 2:12-CV-00528-APG, 2015 WL 4477425, \*5 (D. Nev. July 20, 2015);** *Bridgeview Health Care Center, Ltd. v. Clark***, 816 F.3d 935, 938-39 (7th Cir. 2016);** *Keating v. Peterson's Nelnet, LLC***, 615 Fed. Appx. 365, 371 (6th Cir. July 21, 2015) ;** *Clemons v. State Farm Mut. Auto. Ins. Co.***, No. 1:20-CV-1050, 2020 WL 4193997, at \*3-6 (C.D. Ill. July 21, 2020);** *Bilek v. Fed. Ins. Co.***, No. 19 C 8389, 2020 WL 3960445, at \*4-6 (N.D. Ill. July 13, 2020);** *Rogers v. Postmates Inc.***, No. 19-CV-05619-TSH, 2020 WL 3869191, at \*3-8 (N.D. Cal. July 9, 2020).**

**Instruction No. 16: Ratification**

 **Plaintiff's Version:**

Even if the agents **(and subagents)** are acting outside of their actual authority or apparent authority, the principal will be liable for their conduct if the principal ratifies their actions. A principal may ratify an action expressly or impliedly. **For example, a principal may ratify an act by failing to object to it or to repudiate it or by receiving or retaining the benefits it generates.**

 **In this case, if you find it is more likely than not that USHealth failed to object to or repudiate the telemarketers' actions, or that USHealth received or retained the benefits of their conduct, then you should find USHealth has ratified their conduct.**

 **Plaintiff's Authorities:**

*Hodgin v. UTC Fire & Sec. Americas Corp*., 885 F.3d 243, 252 (4th Cir. 2018) (principal "may ratify an act by failing to object to it or to repudiate it" or by "receiving or retaining [the] benefits it generates") (citation omitted); *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V*., 817 F.3d 241, 250 (5th Cir. 2016) (need only prove that defendants were aware of agents' conduct and accepted the benefits) (*citing McWhorter v. Sheller*, 993 S.W.2d 781, 787 (Tex. App. 1999)) ("Most case law interpreting the doctrine of ratification couches its discussion in the context of an existing agency relationship where the agent exceeds the scope of her authority and the principal later accepts the benefits of such act after acquiring full knowledge").

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject and is misleading, likely to result in confusion to the jury. Additional instructions defining various terms and concepts should also be provided to the jury for proper context and to avoid confusion. The proposed instruction attempts assert a new theory of liability that was not pleaded; nor is there any cause of action for vicarious liability against either Defendant as set forth in Defendants' Motion for Summary Judgment. To that extent, this theory should be excluded from the instructions all-together. Defendants stand by their objections to this instruction, but would agree to a proposed instruction on this topic, to the extent the objections are over-ruled, with the suggested edits Defendants have provided below and inclusion of the Additional Instructions proposed by Defendants relating to agency topics.

**Defendants' Version:**

Even if the agents are acting outside of their actual authority or apparent authority, the principal will be liable for their conduct if the principal ratifies their actions. A principal may ratify an action expressly or impliedly. For example, a principal may ratify an act by failing to object to it or to repudiate it and then  by receiving or retaining the benefits it generates, despite knowing that the agent's conduct was a violation of the law. In order for you to find that USHA ratified a caller(s)'s conduct of violating the TCPA, the Plaintiff must prove by a preponderance of the evidence, in addition to a violation by a calling party of the TCPA, and an agency relationship as defined above, that USHA knew or should have known that its agent was calling Plaintiff (or a proposed class member) in violation the TCPA, and with that knowledge, accepted a benefit from Plaintiff (or the proposed class member) as a result of those telephone calls that were placed to Plaintiff.  If you find that there was no benefit conferred upon USHA from Plaintiff (or the proposed class member), you cannot find that USHA ratified the act.

In order for you to find that USHG ratified a caller(s)'s conduct of violating the TCPA, the Plaintiff must prove by a preponderance of the evidence the same elements of the law as set forth above, but with facts showing the specific conduct was ratified by USHG.

**Defendants Authorities:**

Restatement (Third) of Agency §§ 4.01(2), 4.01 cmt. G. and 4.03 cmt. b (2006); *Henderson v. United Student Aid Funds, Inc.,* 918 F.3d 1068, 1073 (9th Cir. 2019); *Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 745-46 (N.D. Ill. 2014); *NECA–IBEW Rockford Local Union 364 Health & Welfare Fund v. A&A Drug. Co.,* 736 F.3d 1054, 1059 (7th Cir. 2013); *Kristensen v. Credit Payment Servs. Inc.,* No. 2:12-CV-00528-APG, 2015 WL 4477425, *5 (D. Nev. July 20, 2015); *Clemons v. State Farm Mut. Auto. Ins. Co.,* No. 1:20-CV-1050, 2020 WL 4193997, at *3-6 (C.D. Ill. July 21, 2020); *Bilek v. Fed. Ins. Co.,* No. 19 C 8389, 2020 WL 3960445, at *4-6 (N.D. Ill. July 13, 2020); *Rogers v. Postmates Inc.,* No. 19-CV-05619-TSH, 2020 WL 3869191, at *3-8 (N.D. Cal. July 9, 2020).

**Instruction No. 17: Sub-Agency**

**Plaintiff's Version:**

**Agents may themselves use other people, or *subagents*, to perform tasks on behalf of the principal. A *subagent* is a person that the agent authorizes, or delegates, to perform tasks that the agent has consented to perform on behalf of the principal.**

**Like an agent, a subagent's actual authority may be express or implied. First, actual authority may be expressly granted by the principal. This may be granted through spoken words or in writing. Or it may be implied from the totality of the circumstances. In making this finding, the test is whether the subagents reasonably believe they are carrying out their instructions.**

**Plaintiff's Authorities:**

**Dkt. 179-2 at 72 (USHA expressly delegated sub-agency authority to its agents per the Agent agreement to find their own leads, at Sec. 8: "Agent is responsible for obtaining referral leads from family, friends and other customers."). Agents may themselves use subagents on the principal's behalf. *See Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex. 2012) ("A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal.") (*citing* RESTATEMENT (THIRD) OF AGENCY § 3.15 (2006)). *See also C.S. McCrossan Inc. v. Fed. Ins. Co*., 932 F.3d 1142, 1146 (8th Cir. 2019) (agent may have express or implied authority to use subagents). USHA has, in addition, delegated subagency by "course of conduct" or "reasonable implication" in reimbursing agents for those lead purchases (USHA testified that most leads are procured by agents where compliance is "the agent's responsibility"). App. at 5. As noted above, Mr. Priovolos purchased the Dosys leads, the agents purchased the same leads from him, and all were reimbursed for those costs by USHA. There is no evidence to suggest that the agents did not think they were acting reasonably in doing so, especially where, as noted above, USHA actually worked closely with Dosys on telemarketing efforts. Accordingly, USHA, in permitting its agents to engage Dosys to make third-party scheduling calls to Plaintiff, is liable for those calls as TCPA violations.**

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject and is misleading, likely to result in confusion to the jury.  Additional instructions defining various terms and concepts should also be provided to the jury for proper context and to avoid confusion. The proposed instruction attempts assert a new theory of liability that was not pleaded; nor is there any cause of action for vicarious liability against either Defendant as set forth in Defendants' Motion for Summary Judgment. To that extent, this theory should be excluded from

the instructions all-together. Defendants stand by their objections to this instruction, but would agree to a proposed instruction on this topic, to the extent the objections are over-ruled, with the suggested edits Defendants have provided below and inclusion of the Additional Instructions proposed by Defendants relating to agency topics.

**Defendants' Version:**

**A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal.  An agent may appoint a subagent if the agent has actual or apparent authority from the principal to do so.  A subagent is one step farther removed from the agent, and a principal can only be liable for the acts of a subagent if you first find that there was a violation of the TCPA by the subagent, that the principal is responsible for the conduct of the agent and then, if so, that the principal authorized the agent to appoint the subagent to place telephone calls in violation of the TCPA.**

**Defendants Authorities:**

**Restatement (Third) of Agency §§ 3.15(1), (2) ("An agent may appoint a subagent if the agent has actual or apparent authority from the principal to do so"); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 775 (N.D. Ill. 2014) (" A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal"); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N.D. Ill. 2016); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014).**

**Instruction No. 18: Agency Evaluated Based on Totality of Evidence**

<u>Plaintiff's Version:</u>

In determining whether any of the telemarketers in this case were acting as USHealth's agents, you should consider all the evidence, both direct evidence and circumstantial. This includes the writings between them, the contracts between them (if any), as well as their statements, conduct, actions, and inactions. The parties' characterization of their relationship as one of independent contractor is not binding or controlling, though you may consider it, along with all other evidence, in deciding whether the telemarketers and USHealth agreed or reasonably understood that USHealth had the power to control and direct their telemarketing activities.

Written limits on a person's authority are relevant, but they are not conclusive. You will need to evaluate those written limits, if any, as well as the other writings, statements, actions, and inactions, to decide whether the people who made the telephone calls and sent the texts reasonably understood that they were authorized to act in the manner that they did, whether USHealth held them out to third parties as possessing sufficient authority to act in that manner, or whether USHealth consented or acquiesced in their conduct.

<u>Plaintiff's Authorities:</u>

"An agent's interpretation of a principal's manifestations and understanding of a principal's objectives must be reasonable." RESTATEMENT (THIRD) OF AGENCY § 8.09 (2006). The reasonableness standard for an agent to act within the scope of his or her authority is an objective test based on the totality of facts:

> Whether an agent's belief is reasonable is determined from the viewpoint of a reasonable person in the agent's situation under all of the circumstances of which the agent has notice. Lack of actual authority is established by showing either that the agent did not believe, or could not reasonably have believed, that the principal's grant of actual authority encompassed the act in question. This standard requires that the agent's belief be reasonable, an objective standard, and that the agent actually hold the belief, a subjective standard.

RESTATEMENT (THIRD) OF AGENCY § 2.02 (2006).

"**Importantly, 'the existence and scope of agency relationships are factual matters,' typically reserved for a jury.**" *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 787 (N.D.W. Va. 2017) (*quoting Metco Products, Div. of Case Mfg. Co. v. N.L.R.B.*, 884 F.2d 156, 159 (4th Cir. 1989)). *See also Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 173 (5th Cir. 1975) ("**The existence and scope of a principal-agent relationship is generally for the jury to determine**").

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject. The proposed instruction attempts to group both Defendants together, when they must be treated an evaluated as separate entities. The proposed instruction attempts assert a new theory of liability, sub-agency, that was not pleaded; nor is there any cause of action for vicarious liability against either Defendant as set forth in Defendants' Motion for Summary Judgment. To that extent, this theory should be excluded from the instructions all-together. Defendants propose that the instruction's for "Vicarious Liability" (Instruction No. 19) and "Principal-Agent: Right to Control" (instruction No. 20) preclude the need for this instruction because they already provide sufficient instructions on the issue.

**Defendants' Version:**

**[Instruction fully deleted.]**

64

**Instruction No. 19: Vicarious Liability**

**Defendants' Version:**

A person or entity that did not make or initiate the telephone call (and thus is not directly liable), may still be responsible under a principle known as vicarious liability. Vicarious liability means that someone is liable for the actions taken by another person because of the relationship between the two.

In this case, Plaintiff contends that each Defendant is vicariously liable for certain telephone calls placed to the Plaintiff and each of the proposed class members even though these calls were not placed by either Defendant.

Plaintiff will argue three separate theories of vicarious liability, which will be elaborated on below: (A) actual authority; (B) apparent authority; and (C) ratification. Each of these theories first depends on Plaintiff proving that the callers were the Defendants' agents, a term which will be defined below. The Plaintiff must prove these theories by a preponderance of the evidence as against each respective Defendant.

In addition, in order to prevail on a theory of vicarious liability, the Plaintiff must demonstrate the existence of an agency relationship (defined below), that the agent committed a violation of the laws at issue in this case, and that the agent acted within the scope of his/her authority when committing the violation.

The Plaintiff is required to prove vicarious liability separately as to each respective Defendant. That means that even if you find that USHA is liable under a theory of vicarious liability, because USHA was responsible for the person who made telephone calls in violation of the TCPA, you can only find liability as to USHA. You must separately find that USHG is vicariously liable for the conduct of callers making telephone calls in violation of the TCPA

in order for there to be liability for USHG. You must make a separate determination as to each Defendant as to whether that Defendant is vicariously liable for the telephone calls that were placed to Plaintiff.

**Defendants' Authorities:**

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674, (2016); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6587 (2013); Restatement (Third) Of Agency § 7.07 (2006); *Chemtool, Inc. v. Lubrication Techs., Inc*., 148 F.3d 742, 745 (7th Cir. 1998); *Aranda v. Caribbean Cruise Line, Inc.*, 12 C 4069, 2016 WL 1555576 (N.D. Ill. Apr. 18, 2016).

**Plaintiff's Position:**

Deleted. Defendants' Proposed Instruction No. 19 is duplicative because it is addressed by Instructions Nos. 13 to 17 above. The addition of a duplicative instruction is unnecessary and will confuse the jury.

**Plaintiff's Authorities:**

*See* Plaintiff's Authorities for Instructions Nos. 13 to 17 above.

**Instruction No. 20: Principal-Agent: Right to Control**

>   **Defendants' Version:**

>   **The key consideration in determining whether an agency relationship exists is whether the principal had the right to control the manner and method in which the agent performs work. While an agency relationship can be created by contract or by conduct, not all contracts create agency relationships and not all conduct creates agency relationships. Agency requires more than mere authorization to assert a particular interest.**

>   **Here, the fact that the third party may have been authorized to promote the interests of USHA, or make telephone calls regarding a USHA product, is insufficient on its own to establish an agency relationship. The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services from persons who are not agents, and operate independently of interim instructions from a principal.**

>   **In order to prove that a third party caller was an agent in this case for the alleged conduct of violating the TCPA, the Plaintiff must prove that a Defendant controlled the manner and means by which the callers made or initiated the calls at issue in this case. Proving agency means more than mere passive permission or even the existence of a contract; it involves request, direction, control, instruction, or command, and is not created when an agent expressly contradicts actual instructions given by a principal. In addition, mere knowledge, approval, fund administration, or even obtaining a benefit, do not amount to controlling the manner and means by which third parties may have made telephone calls. Plaintiff must prove agency as to each Defendant separately.**

>   **Defendants' Authorities:**

**Restatement (Third) Of Agency § 1.01 & cmt. f(1) (2006); *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013); *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998);**

*Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084–86 (C.D. Cal. 2012), *aff'd*, 582 Fed. Appx. 678 (9th Cir. 2014); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938-9 (7th Cir. 2016); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2014 WL 7717584, at *5–6 (N.D. Ill. Nov. 21, 2014); *Dish Network, LLC*, 28 F.C.C.R. 6574, 6582  (2013); *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013); *Clemons v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, at *3-6 (C.D. Ill. July 21, 2020); *Bilek v. Fed. Ins. Co.*, No. 19 C 8389, 2020 WL 3960445, at *4-6 (N.D. Ill. July 13, 2020); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *3-8 (N.D. Cal. July 9, 2020).

**Plaintiff's Position:**

Deleted. Defendants' Proposed Instruction No. 20 is duplicative because is addressed by Instructions Nos. 13 to 17 above. The addition of a duplicative instruction is unnecessary and will confuse the jury. In the event that the Court disagrees, Plaintiff offers the following instruction: One factor in whether an agency relationship exists is whether the principal has control over the agent. The more control the principal has over the agent, the more likely that the agency relationship exits.

**Plaintiff's Authorities:**

*See* Plaintiff's Authorities for Instructions Nos. 13 to 17 above.

**Instruction No. 21: Telephone Solicitations**

 **Plaintiff's Version:**

 In order to violate the TCPA, the telephone calls and text messages at issue must have been "telephone solicitations." "Solicitation" includes the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. The call or message need not expressly mention a good, product, or service. "Dual purpose" calls, that is, those with both a customer service or informational component and a marketing component, are prohibited and constitute telephone solicitations

 **Plaintiff's Authorities:**

*Morris v. Unitedhealthcare Ins. Co*., No. 415CV00638ALMCAN, 2016 WL 7115973, at \*8 **(E.D. Tex. Nov. 9, 2016) ("The term 'telephone solicitation' in the TCPA means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.' . . . Pursuant to its delegated authority, the FCC has determined that 'dual purpose' calls, those with both a customer service or informational component and a marketing component, are prohibited and constitute telephone solicitations." (quoting 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14)),** *report and recommendation adopted*, **No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016);** *Golan v. Veritas Entm't, LLC*, **788 F.3d 814, 820 (8th Cir. 2015) (solicitation need not contain "an explicit mention of a good, product, or service.").**

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject.  Additional instructions defining various terms and concepts should also be provided to the jury for proper context and to avoid confusion.

 **Defendants' Version:**

 To be violations of the do-not-call rules, the telephone calls and text messages must have been "telephone solicitations." The term telephone solicitation means the making or initiation of a telephone call or message for the purposes of encouraging the purchase of or

investment in property, goods, or services to any person. . In determining whether a call is a telephone solicitation, you should consider whether the purpose of the call was to sell a good or a product on the call.

Telephone calls that are made or initiated with the purpose of scheduling a follow-up call or for acquiring information are not telephone solicitations, so long as there was no intention to encourage the purchase or investment in property, goods, or services to the party that was called.

The term telephone solicitation does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization. The meaning of these terms will be further explained below.

**Defendants' Authorities:**

47 U.S.C. § 227; 47 C.F.R. §§ 64.1200(c) & (d);   *Freyja v. Dun & Bradstreet, Inc*., No. CV147831DSFMRWX, 2015 WL 6163590, at *2 (C.D. Cal. Oct. 14, 2015); *Danehy v. Time Warner Cable Enterprises*, No. 5:14-CV-133-FL, 2015 WL 5534094, *8, *10 (E.D.N.C. Aug. 6, 2015); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 558 (D. Colo. 2014); *Morris v. Unitedhealthcare Ins. Co*., No. 415CV00638ALMCAN, 2016 WL 7115973, at *8 (E.D. Tex. Nov. 9, 2016), report and recommendation adopted, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016).

**Instruction No. 22: Telemarketing Defined**

**Defendants' Version:**

**The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.**

**Defendants' Authorities:**

**47 C.F.R. § 64.1200(f)(12).**

**Plaintiff's Position:**

The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. **In connection with encouraging the purchase of property, goods, or services, telemarketing may also include a call or text to schedule a subsequent call or text as part of the effort to encourage the purchase of property, goods, or services.**

**Plaintiff's Authorities:**

**Courts approach the question of whether a call constitutes telemarketing with a "measure of common sense," and so even "purely informational courtesy calls" are proscribed if they encourage a future sale, even if the property, goods, or services are not mentioned in the call itself.** *See Chesbro v. Best Buy Stores, L.P.*, **705 F.3d 913, 918 (9th Cir. 2012). Thus, so-called mixed purpose calls are repeatedly found to be within the reach of the TCPA.** *See, e.g., Carroll v. SGS N. Am., Inc.*, **No. 16-CV-537, 2017 WL 4183098, at \*4 (M.D. La. Sept. 21, 2017) (calls to schedule car inspection were made for dual purpose of advancing customer loyalty and making further sales);** *Bennett v. Boyd Biloxi, LLC*, **No. 14-CV-0330, 2015 WL 2131231, \*3 (S.D. Ala. May 6, 2015); (offer of free tickets and suggestion to visit website could be telemarketing as website contained various "offers to sell");** *Panacci v. A1 Solar Panel, Inc.*, **No. 15-CV-00532, 2015 WL 3750112 (N.D. Cal. June 15, 2015) (finding a referral to another entity violated the TCPA as "it is reasonable to infer that NREC intended to refer Plaintiff to A1 Solar for the purpose of encouraging Plaintiff to purchase A1's services");** *Herrick v. Qless, Inc.*, **No. 15-CV-14092, 2016 WL 6902544, \*4 (E.D. Mich. Oct. 26, 2016) (finding the defendant "advertised" a free app, used for assessing wait times at various retail establishments, "for the purpose of conveying the quality of its products and services and soliciting plaintiffs to recruit more business customers").**

71

**<u>Defendants Objections:</u>**  Plaintiff's version misstates the law and will confuse the jury because it goes beyond the statutory definition.

**Instruction No. 23: Received Calls and Texts**

**Plaintiff's Version:**

The calls and text messages must have been "received." A call is "received" if the telephone call goes through and is connected so that the phone rings or the call is otherwise capable of being answered. A call can be received in any number of ways. Certainly if the call is answered by a person or picked up by an answering machine, the call is received. But a call is also received if the ringing phone is heard by a person or if a person receives any other indication that there is a phone call available to be answered, such as a beep on call waiting or visual notification from a caller ID service, for example, even if the person does not actually answer the call. In other words, it is not necessary that the call be answered by a live human being or by an answering machine. It is not necessary that the call be of any particular duration. It is not necessary that a conversation occur between the caller and the recipient.

Similarly, a text message can be received in any number of ways. Certainly if the text message is read by the person, the text message is received. But a text message is also received if a text message notification is heard or seen by a person or if a person receives any other indication that there is a text message available to be read, such as a chime or visual notification from the cellular telephone, even if the person does not actually read the content of the text message. In other words, it is not necessary that the text message actually be read, all that the law requires is that it be received.

**Plaintiff's Authorities:**

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018) (The statute itself casts a broad net—it regulates any call, and a "call" includes communication, or an attempt to communicate, via telephone.); *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 619CV196ORL31DCI, 2019 WL 2567971, at *2 (M.D. Fla. June 21, 2019)("[T]he Court

rejects the argument that voicemails, or ringless voicemails, are not subject to the TCPA."); *Schaevitz v. Braman Hyundai*, No. 1:17-cv-23890, 2019 WL 8628817, 2019 U.S. Dist. LEXIS 48906 (S.D. Fla. March 25, 2019) (holding that ringless voicemails can constitute a "call" subject to the TCPA); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) ("routing a call to voicemail counts as answering the call" and can violate the TCPA); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) (holding that for purposes of TCPA liability, it is immaterial whether the calls were answered or went to voicemail)

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject. Defendants object to this entire instruction, and fail to see its relevance or application in this case.

**Defendants' Version:**

**[Instruction fully deleted.]**

**Instruction No. 24: Residential Numbers**

   **Plaintiff's Version:**

   The TCPA provisions at issue in this case do not prohibit calls to business or government numbers, only to residential numbers on the Do Not Call Registry or a telemarketer's Internal Do Not Call list. In determining whether a number is a residential number, you should consider the ordinary English meaning of that phrase.

   For example, if the number is for a landline associated with a home, whether a house, an apartment, a condominium, or any other kind of dwelling place, or if it is cell phone used for personal, family, or household calls, similar to the use of a residential landline, then it would be a residential number.

   **Plaintiff's Authorities:**

**47 C.F.R. § 64.1200(e) ("[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers") (*citing In Re Rules & Regulations Implementing [TCPA]*, 18 F.C.C. Rcd. 14014 (2003); *Smith v. Truman Rd. Dev., LLC*, No. 18-CV-00670, 2020 WL 2044730, at \*10 (W.D. Mo. Apr. 28, 2020); *Rosenberg v. Loan Depot.com LLC*, No. 19-CV-10661, 2020 WL 409634, at \*11 (D. Mass. Jan. 24, 2020); *Hodgin v. Parker Waichman LLP*, No. 14-CV-733, 2015 WL 13022289, at \*3 (W.D. Ky. Sept. 30, 2015); ) ("the FCC has been clear in interpreting 'residential subscriber' to include cell phones"); *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at \*7 (M.D. Fla. Jan. 29, 2020) (sustaining DNC violation as to cell phone users).  Indeed, "cellular numbers that were placed on the DNC registry were presumed to be residential." *Rosenberg v. LoanDepot.com LLC*, No. CV 19-10661-NMG, 2020 WL 409634, at \*11 (D. Mass. Jan. 24, 2020) (citing 2003 FCC Order at 14039).**

**Cell phones can qualify even if they are used in part for business purposes. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (2005); *Southwell v. Mortg. Inv'rs Corp. of Ohio*, No. 13-CV1289, 2014 WL 4057166, at \*3 (W.D. Wash. Aug. 14, 2014) (finding "home based business" qualifying calls to cell phone also used to maintain farm and sell sheep); *Clauss v. Legend Sec., Inc*., No. 13-CV-00381, 2014 WL 10007080, at \*3 (S.D. Iowa Sept. 8, 2014) ("jury could reasonably conclude…phone number was simultaneously a residential and business phone" even cell number listed in publicly available business sources, including on court filings as counsel, on Articles of Organization for a business LLC filed with the Secretary of State, and on a number of websites for that LLC as a "business phone number."); *Blevins v. Premium Merch.***

***Funding One, LLC*, No. 18-CV-377, 2018 WL 5303973, at \*3 (S.D. Ohio Oct. 25, 2018) ("courts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes"); Smith, 2020 WL 2044730, at \*12 (mixed business and personal use a disputed jury issue on residential status).**

**Defendants Objections**: The proposed instruction does not accurately set forth the law on this subject, in particular the definition of residential telephone subscriber – an element of Plaintiff's claims in this case.   The proposed Instruction "Residential Telephone Subscriber Defined" (Instruction No. 25) below precludes any need for this instruction. *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at \*2 (E.D.N.Y. July 23, 2015); *Stevens-Bratton v. TruGreen, Inc*., 437 F. Supp. 3d 648, 654-59 (W.D. Tenn. 2020); *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at \*6 (E.D. Pa. Apr. 16, 2019); 47 C.F.R. 64.1200 (c) and (d).

    **Defendants' Version:**

    **Instruction fully deleted.**

**Instruction No. 25: Residential Telephone Subscriber Defined**

**Defendants' Version:**

The Plaintiff's claims in this case apply only to residential telephone subscribers. The do-not-call rules of the TCPA do not apply to calls made to a business telephone line. You therefore will have to decide if any of the telephone calls to the Plaintiff and the absent proposed class members were made to residential telephone subscribers or to business telephone subscribers.

In deciding whether Mr. Hirsch or an absent proposed class member is a "residential" or "business" telephone subscriber, you must give the word "residential" its usual and ordinary meaning. You may consider whether the telephone line was a cellular telephone line or a landline. You may consider whether the telephone number was publicized or held out to the general public as a business telephone number, even if registered as a residential number. A telephone number should be considered a business telephone number when the called party uses or holds out that telephone number to others as being a business telephone line. The fact that a telephone number that is otherwise a business telephone number may be used for some personal or other non-business purposes does not make the user a residential telephone subscriber.

<u>**Defendants' Authorities:**</u>

*Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 654-59 (W.D. Tenn. 2020); *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019).

<u>**Plaintiff's Position:**</u>

Deleted, as Defendants' proposed instruction misstates the law. In lieu of the above, Plaintiff proposes Instruction No. 26 below.

**Instruction No. 26: Mixed Use Phones**

**Plaintiff's Version:**

The TCPA protects a telephone number that a person uses as both a personal and business phone, such as a cell phone that the person uses for personal calls and in a home-based business, provided that the person uses the phone for personal purposes. That is, the TCPA protects a phone number if it is being used for personal purposes more than business purposes.

Therefore, if you find that it is more likely than not that Mr. Hirsch was using his cell phone for personal purposes more than business purposes during the period in which the relevant calls and texts were made, his cell phone is protected under the TCPA.

**Plaintiff's Authorities:**

47 C.F.R. § 64.1200(e) ("[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers") (*citing In Re Rules & Regulations Implementing [TCPA]*, 18 F.C.C. Rcd. 14014 (2003); *Smith v. Truman Rd. Dev., LLC*, No. 18-CV-00670, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020); *Rosenberg v. Loan Depot.com LLC*, No. 19-CV-10661, 2020 WL 409634, at *11 (D. Mass. Jan. 24, 2020); *Hodgin v. Parker Waichman LLP*, No. 14-CV-733, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015); ) ("the FCC has been clear in interpreting 'residential subscriber' to include cell phones"); *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at *7 (M.D. Fla. Jan. 29, 2020) (sustaining DNC violation as to cell phone users). Indeed, "cellular numbers that were placed on the DNC registry were presumed to be residential." *Rosenberg v. LoanDepot.com LLC*, No. CV 19-10661-NMG, 2020 WL 409634, at *11 (D. Mass. Jan. 24, 2020) (citing 2003 FCC Order at 14039). Cell phones can qualify even if they are used in part for business purposes. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (2005); *Southwell v. Mortg. Inv'rs Corp. of Ohio*, No. 13-CV1289, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014) (finding "home based business" qualifying calls to cell phone also used to maintain farm and sell sheep); *Clauss v. Legend Sec., Inc.*, No. 13-CV-00381, 2014 WL 10007080, at *3 (S.D. Iowa Sept. 8, 2014) ("jury could reasonably conclude…phone number was simultaneously a residential and business phone" even cell number listed in publicly available business sources, including on court filings as counsel, on Articles of Organization for a business LLC filed with the Secretary of State, and on a number of websites for that LLC as a "business phone number."); *Blevins v. Premium Merch. Funding One, LLC*, No. 18-CV-377, 2018 WL 5303973, at *3 (S.D. Ohio Oct. 25, 2018) ("courts have routinely looked at the facts and circumstances surrounding a

78

**particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes"); Smith, 2020 WL 2044730, at \*12 (mixed business and personal use a disputed jury issue on residential status).**

<u>**Defendants Objections**</u>: The proposed instruction does not accurately set forth the law on this subject, in particular the definition of residential telephone subscriber – an element of Plaintiff's claims in this case.   The proposed Instruction "Residential Telephone Subscriber Defined" (Instruction No. 25) above precludes any need for this instruction. *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at \*2 (E.D.N.Y. July 23, 2015); *Stevens-Bratton v. TruGreen, Inc*., 437 F. Supp. 3d 648, 654-59 (W.D. Tenn. 2020); *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at \*6 (E.D. Pa. Apr. 16, 2019); 47 C.F.R. 64.1200 (c) and (d).

    <u>**Defendants' Version:**</u>

    **[Instruction fully deleted.]**

**Instruction No. 27: Individual Damages**

If you find that the Plaintiff has proven his individual claims against one or more of the Defendants then you must determine how much to award that Plaintiff in statutory damages. The TCPA authorizes you to award damages in an amount up to $500. In other words, if you find that the Plaintiff has proven his claim, you may award any amount per call between $0 and $500. You may only find one violation of the TCPA per call proven. If you find that the Plaintiff has failed to prove his individual claim against the Defendants, then you should not consider the question of the damages that the Plaintiff would be entitled to recover.

Authorities:

47 U.S.C. §227 *et al*.; *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363-365 (E.D. Pa. 2019), *aff'd,* 805 F. App'x 156 (3d Cir. 2020); *Drew v. Lexington Consumer Advocacy*, No. 16-CV-00200-LB, 2016 WL 9185292, at *10 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advocacy, LLC*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016); *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011).

**Instruction No. 28: Class Damages**

**Defendants' Version:**

If you find that the Plaintiff has proven a claim on behalf of any proposed class member as against one or more of the Defendants then you must determine how much to award that class member in statutory damages. The TCPA authorizes you to award damages in an amount up to $500. In other words, if you find that the Plaintiff has proven the proposed class member's claim, you may award any amount per call between $0 and $500 to that proposed class member. You may only find one violation of the TCPA per call successfully proven. If you find that the Plaintiff has failed to prove any proposed class member's claim as against the Defendants, then you should not consider the question of the damages that the proposed class member would be entitled to recover.

**Defendants' Authorities:**

47 U.S.C. §227 *et al*.; *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363-365 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020); *Drew v. Lexington Consumer Advocacy*, No. 16-CV-00200-LB, 2016 WL 9185292, at *10 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advocacy, LLC*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016); *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011); *Kohen v. Pac. Inv. Mgmt. Co.,* 571 F.3d 672, 677 (7th Cir.2009), *cert. denied sub nom Pacific Inv. Mgmt. Co. v. Hershey,* 559 U.S. 962, 130 S.Ct. 1504, 176 L.Ed.2d 151 (2010); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 690 (D. Md. 2017); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274, 1277 (11th Cir. 2019); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020).

**Plaintiff's Position:**

Deleted. Defendants misconstrue and misstate the law on class actions under Federal Rule of Civil Procedure 23 and relevant caselaw. Contrary to Defendants' proposed instruction, damages to the class are addressed in the aggregate, and Plaintiff need not show injury to every class member.

<u>**Plaintiff's Authorities:**</u>

*Greenhaw v. Lubbock Cty. Beverage Ass'n,* **721 F.2d 1019, 1026 (5th Cir. 1983) (affirming aggregate class damage award),** *overruled on other grounds, Int'l Woodworkers of Am., AFL-CIO & its Local No. 5-376 v. Champion Int'l Corp.,* **790 F.2d 1174 (5th Cir. 1986);** *Van Gemert v. Boeing Co*., **553 F.2d 812, 815–16 (2d Cir. 1977) (affirming, in part, award of aggregate damages to plaintiff class of bondholders);** *Gerstle v. Gamble–Skogmo, Inc*., **478 F.2d 1281, 1290, 1310 (2d Cir. 1973) (affirming award of aggregate damages in securities class action);** *In re Pharm. Indus. Average Wholesale Price Litig*., **582 F.3d 156, 197-98 (1st Cir. 2009) ("The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself.");** *In re Scrap Metal Antitrust Litig*., **527 F.3d 517, 534 (6th Cir. 2008) ("Damages in an antitrust class action may be determined on a classwide, or aggregate, basis, without resorting to fluid recovery where the [evidence] . . . provide[s] a means to distribute damages to injured class members in the amount of their respective damages.") (citation omitted);** *Torres v. Mercer Canyons Inc.*, **835 F.3d 1125, 1140 (9th Cir. 2016) (approving of calculating damages on an aggregate basis);** *id*. **("There is no requirement in Rule 23 that aggregate damages be calculable, but where they are, they may be all that plaintiffs need to prove.") (quoting William B. Rubenstein,** *Newberg on Class Actions* **§ 12.2 (5th ed.));** *In re Pharm. Indus. Average Wholesale Price Litig*., **582 F.3d 156, 197 (1st Cir. 2009) ("The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself").**

*Mims v. Stewart Title Guar. Co.*, **590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct.");** *Kohen v. Pacific Investment Mgmt. Co*., **571 F.3d 672, 677 (7th Cir. 2009) ("a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable . . . . Such a possibility or indeed inevitability does not preclude class certification.");** *Torres v. Mercer Canyons Inc.,* **835 F.3d 1125, 1136 (9th Cir. 2016) ("even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct..") (emphasis in original);** *Messner v. Northshore Univ. HealthSystem*, **669 F.3d 802, 823 (7th Cir. 2012) (class can contain uninjured members);** *DG ex rel. Stricklin v. Devaughn*, **594 F.3d 1188, 1198 (10th Cir. 2010) ("Rule 23's certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm.")**

**Instruction No. 29: Defendants' Defenses**

**Defendants' Version:**

Even if you find that one or both of the Defendants are liable for any of the claims outlined above, the Defendants have put forward Defendants separate any apart from the analysis above that would shield them from any liability. The Defendants have the burden of proof to show each element of the Defense by a preponderance of the evidence. If you find that Defendant has shown each element of a given Defense, you must find that the Defendant is not liable for the claim, despite the fact that you have already found that Plaintiff has proven each element of the claim.

**Defendants' Authorities:**

*Brooks v. Parr*, 507 S.W.2d 818, 819 (Tex. Civ. App. 1974); *Carlton v. Cobank, Inc*., No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003); *Commercial Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960); *Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. App. Feb. 16, 2007); *Smith v. McDaniel*, No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013).

**Plaintiff's Version:**

Delete. Defendants' proposal is vague and confusing. Moreover, it is untethered to a defense, such that it is not only unhelpful to the jury but inaccurate.

**Instruction No. 30: Actual, Concrete Injury**

**Defendants' Version:**

In order for the Plaintiff and absent proposed class members to prevail they must demonstrate that they suffered an actual, concrete injury as a result of the Defendant's alleged wrongful conduct. The injury must be real and concrete.  That a call may have been made in violation of the statute, alone, is not sufficient.  If you find that the Plaintiff or absent proposed class members did not suffer a real, concrete harm, then you must find in favor of Defendants.

**Defendants' Authorities:**

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Morris v. Unitedhealthcare Ins. Co*., No. 415CV00638 (ALM)(CAN), 2016 WL 7115973, *4, *5 (E.D. Tex. Nov. 9, 2016); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir.); *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462 (7th Cir. 2020); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017); *Leyse v. Bank of Am., Nat'l Ass'n*, No. cv-117128S(DWS)(CM), 2020 WL 1227410, *3, *4 (D.N.J. Mar. 13, 2020).

**Plaintiff's Position:**

Deleted. This is a purely legal question. If the Court decides this is a fact question, Plaintiff proposes this instruction:

For the Plaintiff and members of the class to prevail they must demonstrate that they suffered an actual, concrete injury as a result of the Defendants or their agents' alleged wrongful conduct.  If you find that Plaintiff and members of the class received an unwanted call or text from Defendants or their agents, then you must find that they suffered an actual, concrete injury.

**Plaintiff's Authorities:**

The TCPA confers standing upon recipients of certain unlawful telephone calls. Each call deprives the recipient of "time and mental energy, both of which are precious." *Cordoba v. DIRECTV, L.L.C.*, 942 F.3d 1259, 1270 (11th Cir. 2019) (internal quotes omitted). *Morris v. Unitedhealthcare Ins. Co.*, No. 415CV00638ALMCAN, 2016 WL 7115973, at *5 (E.D. Tex. Nov. 9, 2016) ("an individual may also suffer an injury in fact from unauthorized telephone contact when it causes an occupation of the telephone line or an invasion of privacy"), *report and recommendation adopted*, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016). *See also Krakauer*, 925 F. 3d at 653 ("In enacting § 227(c)(5) of the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests… Our legal traditions, moreover, have long protected privacy interests in the home."); *Susinno v. Work Out World Inc.*, 862 F. 3d 346, 351-52 (3d Cir. 2017) (analogizing TCPA injuries to common law wrong of "intrusion upon seclusion"); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (same); *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017) ("The majority of courts considering similar facts have found them sufficient to satisfy the requirement of concrete injury, and several have held that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing.")

*See Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.' ") (quoting *Spokeo*, 136 S.Ct. at 1549); *Wilkes v. CareSource Mgmt. Grp. Co.*, 2016 WL 7179298, at *3 (N.D. Ind. Dec. 9, 2016) ("district courts within the Seventh Circuit that have addressed this issue, all have held that a violation of the TCPA gives rise to a concrete injury under Article III."); *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1147, 2016 WL 6305992, at *6 (D.N.M. Oct. 19, 2016)  (finding a violation of the TCPA constitutes a "concrete" harm for an Article III injury-in-fact requirement, noting "the TCPA contains a congressionally-identified concrete injury in its language prohibiting certain kinds of telephone calls."); *Krakauer v. Dish Network L.L.C.*, 168 F.Supp.3d 843, 845 (M.D.N.C. 2016) (citing *Spokeo*, 136 S. Ct. at 1549) ("[t]hese calls form concrete injuries because unwanted telemarketing calls are a disruptive and annoying invasion of privacy," and even unheard and unanswered calls create "a risk of an invasion of a class member's privacy," sufficient to meet requirement for concrete injury.); *Rogers v. Capital One Bank (USA), N.A.*, 190 F.Supp.3d 1144, 1147 (N.D. Ga. 2016) (citing the Eleventh Circuit as holding a violation of the TCPA is a concrete injury, court found plaintiffs alleged concrete injury because calls were made to their personal cell phone numbers and "suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls."); *Mey v. Got Warranty, Inc.*, 193 F.Supp.3d 641, 645 (N.D.W. Va. 2016)  (invasions of privacy resulting from unwanted telemarketing calls "meet the requirement of concreteness as interpreted by *Spokeo* because Congress so clearly identified it as a legally cognizable harm."); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (alleged TCPA violations "required Plaintiffs to waste time answering or otherwise addressing widespread robocalls….such an injury is sufficiently concrete to confer standing."); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645, 647 (N.D. W. Va. 2016) (TCPA "liberaliz[es] and codif[ies]" the intrusion-upon seclusion tort and is analogous to

85

trespass-to-chattels); *Sartin v. EKF Diagnostics, Inc.*, No. 16-cv-1816, 2016 WL 7450471, at *4 (E.D. La. Dec. 28, 2016) ("wasted time associated with receipt of an unlawful fax or telephone call suffices to confer standing to sue under the TCPA").

**Instruction No. 31: Safe Harbor Defense**

Even if a person or entity violates the national do-not-call rules under the TCPA, the Defendant can avoid liability if it can establish that a telephone call to a residential subscriber was made in error and that it has the following procedures in place designed to avoid calling, or having others call, telephone numbers on the national do-not-call registry:

    (1)    Written procedures to comply with the national do-not-call rules;

    (2)    It has trained personnel in procedures established pursuant to the national do-not-call rules;

    (3)    It maintained and recorded a list of telephone numbers that the seller may not contact;

    (4)    It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules **employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.**

If the Defendant establishes that telephone calls were made to telephone numbers on the national do-not-call registry in error and the Defendant otherwise had the procedures in place to avoid the likelihood of making such errors, then there is no liability. **By contrast, if you find that the Defendant did not actually adhere to each of the requirements of the so-called safe harbor, the Defendant may be found liable for a violation of the National Do Not Call Registry** .

    <u>Authorities:</u>

*Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 131 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017); *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 925 (C.D. Ill. 2014);

*Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009); *In Re Dynasty Mortg., L.L.C.,* 20 F.C.C. Rcd. 4921, 4929 (2005); *Roylance v. ALG Real Estate Servs., Inc.,* No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *5 (N.D. Cal. Mar. 16, 2015), report and recommendation adopted as modified, No. 14-CV-02445-BLF, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015).

**Defendants' Objections**:  The opposed portions of the instruction are superfluous and will confuse the jury.  Further, the final sentence ignores predicate elements to NDNC violations and Plaintiff's burden of proof. The fact that a person or entity did not have the above procedures in place cannot establish liability without Plaintiff first proving his claim, and each class member's claim.

**Instruction No. 32: Prior Express consent, Invitation or Permission**

**Defendants' Version:**

A telephone call made with the prior express consent, invitation or permission of the called party is not a violation of the do-not-call rules. Defendants each claim that even if a call that would otherwise have constituted a violation of the do-not-call rules was placed to the Plaintiff or an absent proposed class member for which you find they are responsible, that there is no liability because all or some of the calls that were made were made with prior express invitation or permission.

"Prior Express Consent" means that before Defendant made a telephone call to the Plaintiff's cellular telephone number, the Plaintiff had given an invitation or permission to receive telephone calls to that telephone number.  Prior Express Consent can be given in a variety of ways, including in writing, on a website, through email, over the telephone or in person.

If you find the existence of prior express consent, invitation or permission with respect to any calls made to either the Plaintiff or absent proposed class members, then you must find that the Defendant is not liable for a violation of the TCPA for those telephone calls.

**Defendants' Authorities:**

47 C.F.R. § 64.1200; 47 U.S.C. § 227; *Hill v. Homeward Residential, Inc*., No. 2:13-CV-388, (S.D. Ohio 2014); *Matter of Groupme, Inc./skype Commc'ns S.A.R.l Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, 3444 (2014); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838-1844 (Feb. 15, 2012).

**Plaintiff's Position:**

Deleted. Plaintiff Aaron Hirsch and every member of the class (by definition) were listed on the National Do Not Call Registry and/or USHealth's Internal Do Not Call List. Plaintiff and every member of the class had specifically expressed that they did not want to

receive telemarketing calls, including from Defendants. Defendants have produced no evidence that Defendants had written consent or permission to call Plaintiff or any member of the class.

Instead, Defendants futilely attempt to argue that Plaintiff *orally* consented. Even if Defendants had evidence of this (they do not), their argument fails as a matter of law. 47 C.F.R. § 64.1200 expressly requires that consent or "permission must be evidenced by a *signed, written agreement* between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed".  47 C.F.R. § 64.1200(c)(2)(ii) (emphasis added). No such signed, written agreement exists.

Moreover, Defendants' proposed instruction mischaracterizes consent or permission under 47 C.F.R. § 64.1200. That is, Defendants' proposed instruction completely ignores consent or "permission must be evidenced by a *signed, written agreement* between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed". *Id*. Defendants' proposed instruction must be deleted.

Plaintiff's Authorities:

*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016); Johnson v. Yahoo!, Inc., 2016 WL 25711, at *7 (N.D. Ill. Jan. 4, 2016); 47 C.F.R. § 64.1200(c)(2)(ii).

**Instruction No. 33: Personal Relationship Defined**

**Defendants' Version:**

Any person or entity making telephone solicitations will not be liable for violating the do-not-call rules if the person or entity making the call has a personal relationship with the recipient of the call. The term "personal relationship" means any family member, friend or acquaintance of the telemarketer making the call. If you find that a caller had a personal relationship at the time of a call, then you must find that the Defendant is not liable for a violation of the TCPA for those telephone calls.

**Defendants' Authorities:**

47 C.F.R. 64.1200(c)(2)(iii).

**Plaintiff's Position:**

Deleted. Defendants have not pleaded "personal relationship" as an affirmative defense (Dkt. 43) and have not alleged that they had a "personal relationship with Plaintiff Aaron Hirsch or any member of the class. Defendants have not produced discovery to show that Defendants had a "personal relationship" with Plaintiff Aaron Hirsch or any member of the class. To the extent that such an affirmative defense exists, it is waived. Moreover, Defendants' proposed instruction exceeds and mischaracterizes the description of "personal relationship" in 47 C.F.R. § 64.1200(c)(2)(iii).

**Plaintiff's Authorities:**

Dkt 43; *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931-32 (9th Cir. 2018); *In re U.S. Foodservice Inc. Pricing Litig*., 729 F.3d 108, 122 (2d Cir. 2013); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016); Johnson v. Yahoo!, Inc., 2016 WL 25711, at *7 (N.D. Ill. Jan. 4, 2016); 47 C.F.R. § 64.1200(c)(2)(iii).

**Instruction No. 34: Established Business Relationship Explained**

**<u>Defendants' Version:</u>**

The term established business relationship means an existing or prior relationship, and can be formed one of two ways:

First, an established business relationship can be formed by a voluntary communication between a person or entity on the one hand, and a residential telephone subscriber on the other hand, with or without the exchange of money, based on the residential telephone subscriber's purchase or transaction within 18 months immediately preceding the telephone call.

Second, an established business relationship can be formed on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within three months preceding the date of the call.

An entity is permitted to make telephone calls to any person with whom it has an established business relationship even if that person's telephone number might be on the National Do-Not-Call Registry. In addition, an entity is permitted to make solicitation calls to a person with whom it has an established business relationship, even if that person's telephone number might be on the company specific Internal Do-Not-Call list, so long as the established business relationship was created after the time that the person added his or her telephone number to the company-specific internal Do-Not-Call list.

If you have found that the Plaintiff, or each individual proposed class member, had an established business relationship with either or both of the Defendants (or with a caller for which you believe either or both of the Defendants are liable), then you must find that

the Defendant is not liable for a violation of the TCPA for those telephone calls as to Plaintiff or that individual proposed class member.

**Defendants' Authorities:**

47 C.F.R. § 64.1200(c)(2)(ii); 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(5); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14042-14044 (2003); *Hamilton v. Spurling*, No. 3:11CV00102, 2013 WL 1164336, *10-11 (S.D. Ohio Mar. 20, 2013).

**Plaintiff's Position:**

Deleted. Defendants have not pleaded "established business relationship" or "EBR" as an affirmative defense (Dkt. 43) and have not alleged that they had an "established business relationship" with Plaintiff Aaron Hirsch or any member of the class. Defendants have not produced discovery to show that Defendants had an "established business relationship" with Plaintiff Aaron Hirsch or any member of the class. To the extent that such an affirmative defense exists, it is waived for the failure to assert it. Moreover, Defendants' proposed instruction exceeds and mischaracterizes the description of "established business relationship" in 47 C.F.R. § 64.1200(c)(2)(ii), which expressly requires and limits such a relationship to those where the caller "obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed".

**Plaintiff's Authorities:**

Dkt. 43; *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931-32 (9th Cir. 2018); *In re U.S. Foodservice Inc. Pricing Litig*., 729 F.3d 108, 122 (2d Cir. 2013); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016); Johnson v. Yahoo!, Inc., 2016 WL 25711, at *7 (N.D. Ill. Jan. 4, 2016); 47 C.F.R. § 64.1200(c)(2)(ii).

**Instruction No. 35: Class Members Required to Arbitrate**

<u>Defendants' Version:</u>

Some absent proposed class members may have agreed to arbitrate their disputes with either the calling parties for whom Plaintiff is asking the Defendant's to be responsible, or directly with one or both of the Defendants.  In order to determine whether or not an absent proposed class member is required to arbitrate his or her claims against one or both of the Defendants, you must determine whether a valid agreement to arbitrate exists, and whether the issue in the case falls within the scope of the arbitration agreements.  If absent proposed class members agreed to arbitrate their disputes, then you cannot find in favor of the Plaintiff for any calls to those absent proposed class members made in violation of the statute.

<u>Defendants' Authorities:</u>

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003); *Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 WL 4201604, at *8 (N.D. Tex. July 22, 2020); *Qazi v. Stage Stores, Inc.*, No. 4:18-CV-780, 2019 WL 2523564, at *3 (S.D. Tex. June 18, 2019), *motion to certify appeal denied,* No. 4:18-CV-0780, 2020 WL 1431720 (S.D. Tex. Mar. 23, 2020).

<u>Plaintiff's Version:</u>

Deleted. Defendants did not plead arbitration as an affirmative defense (Dkt. 43). Defendants did not produce arbitration agreements during the course of discovery in this litigation.  The arbitration agreements Defendants proffered in support of their Opposition to Plaintiff's Motion for Class Certification are not connected to a single *class member*, placed them in time; therefore, even if Defendants' arbitration affirmative defense is not waived for failure to assert it in Answer (Dkt. 43) or raise it before the close of discovery, the arbitration documents proffered are irrelevant because the Defendants have not attempted to show (or even asserted) that they relate to Plaintiff or any member of the Class. Dkt. 214 at ECF 13-

**14. Many lead generation contracts contain no arbitration provision.** *See* **Dkt. 191-1, App.**

**329-41. Even so, arbitration has been waived because it was not asserted as a defense (***see***

**Dkt. 43) or raised in two years of litigation up to summary judgment.**

**Plaintiff's Authorities:**

**Dkt. 43; Dkt. 214 at ECF 13-14.** *See Morgan Guar. Tr. Co. of New York v. Blum***, 649 F.2d 342, 345 (5th Cir. 1981) ("All affirmative defenses must be specifically pleaded in the answer or be deemed waived.");** *Kramer v. Hammond***, 943 F.2d 176, 179 (2d Cir. 1991) (arbitration waived if party "engage[s] in protracted litigation that result[ed] in prejudice to the plaintiff,").**

**Instruction No. 36:** *In Pari Delicto*/Unclean Hands

<u>**Defendants' Version:**</u>

Defendants claim that the Plaintiff may not recover because Plaintiff is equally responsible for the harmful conduct that occurred, if any. That is, the Plaintiff cannot recover if he has "unclean hands" and is himself responsible for causing the alleged harmful conduct. To succeed on this defense, the Defendants must prove, by a preponderance of the evidence:

      (1)    That the Plaintiff had equal responsibility for the violations he seeks to address; and

      (2)    The policy goals of the TCPA were threatened by the Plaintiff's conduct.

If the Defendants can prove these two components, the Plaintiff is considered equally responsible for the harmful conduct, and the Defendants cannot be liable.

<u>**Defendants' Authorities:**</u>

*Bateman, Eichler, Hill Richard, Inc. v. berner,* **472 U.S. 299, 306, 310-11 (1985);** *Rogers v. McDorman*, **521 F.3d 381, 389 (5th Cir. 2008);** *Park v. Escalera Ranch Owners' Ass'n, Inc.,* **457 S.W.3d 571, 597 (Tex. App. 2015).**

<u>**Plaintiff's Version:**</u>

Deleted. The doctrine of *in pari delicto* is neither cognizable nor warranted in a TCPA case generally or in the case at bar specifically. Defendants' case citations demonstrate as much. Defendants misunderstand the defense embodies two wrongdoers, such as defendants in a RICO case, and even then courts must consider whether to "lend their good offices to mediating disputes among wrongdoers" and may choose to "deny[] judicial relief to an admitted wrongdoer [as] an effective means of deterring illegality." *Rogers v. McDorman*, **521 F.3d 381, 385 (5th Cir. 2008) (analyzing the Supreme Court's decisions in *Bateman,*

*Eichler, Hill Richard, Inc. v. Berner,* **472 U.S. 299, 306, 310-11 (1985) and** *Perma Life Mufflers, Inc. v. International Parts Corp.*, **392 U.S. 134 (1968), which considered the applicability of** *in pari delicto* **to securities and antitrust claims, where the court decided the defense was unavailable in each case; court was "concerned that the defense would be used to defeat claims by persons who were not active participants in the violation of federal law"). Although likewise unwarranted and inappropriate in the case at bar, the defense of unclean hands is an equitable defense for determination by the Court not a jury, and thus an instruction is unwarranted and inappropriate.** *See Park v. Escalera Ranch Owners' Ass'n, Inc.*, **457 S.W.3d 571, 597 (Tex. App. 2015) ("Under the doctrine of unclean hands, a court may refuse to grant equitable relief, such as an injunction, sought by "one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing.").**

**Plaintiff's Authorities:**

*Bateman, Eichler, Hill Richard, Inc. v. berner,* **472 U.S. 299, 306, 310-11 (1985);** *Rogers v. McDorman*, **521 F.3d 381, 389 (5th Cir. 2008);** *Park v. Escalera Ranch Owners' Ass'n, Inc.,* **457 S.W.3d 571, 597 (Tex. App. 2015).**

**Instruction No. 37: Estoppel/Fraud**

**Defendants' Version:**

Defendants claim that the Plaintiff may not recover because the Plaintiff is "estopped," or prevented from claiming any damages because of the Plaintiff's actions or words. A Defendant who seeks to avoid liability under the defense of estoppel must prove the following by a preponderance of the evidence:

> (1)    The Plaintiff made a false representation or concealment of a material fact;
>
> (2)    The Plaintiff made this representation or concealment with knowledge that the facts were false;
>
> (3)    The Plaintiff made the statement with the intent that a Defendant would act upon the statement as though it was true;
>
> (4)    The Plaintiff made the false statement to the Defendant or a person or entity without knowledge or means of obtaining knowledge of the true facts; and
>
> (5)    The Defendant, person, or entity to whom the statement was made relied on the statement to their own detriment.

If you conclude that the Plaintiff is estopped, or prevented, from obtaining relief under the TCPA as a result of his own actions or words, then you should find in favor of the Defendants.

**Defendants' Authorities:**

*Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 529 (Tex. App. 2014); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515 (Tex. 1998).

<u>Plaintiff's Position:</u>

**Deleted.   Defendants' proposed Instruction is either duplicative of their fraud Counterclaim if sustained on summary judgment or will be unwarranted if their fraud Counterclaim if dismissed on summary judgment. Regardless, Defendants' proposed Instruction is incorrect as a matter of law because it erroneously includes a preponderance of evidence standard as opposed to a clear and convincing standard that is applied to fraud, *see* Instruction no. 3 above.**

<u>Plaintiff's Authorities:</u>

**U.S. 5th Cir. Pattern Jury Instruction 2.17. *See, e.g.*, *Malagon v. Crescent Hotel & Resorts*, No. 3:16-cv-0644-D, 2018 WL 5717279, at \*1 (N.D. Tex. Nov. 1, 2018) ("Fraud is never presumed and must always be proven by clear and convincing evidence.") (internal citations omitted); *Commercial Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960) ("Fraud is never presumed, and the burden is on (the party asserting it) to prove it with reasonable certainty by a preponderance of convincing evidence.") (internal citation omitted); 41 *Tex. Jur. 3d Fraud and Deceit* § 75 ("As a general rule, fraud must be established by clear and specific evidence unaided by presumptions, inferences, or intendments.").**

**Instruction No. 38: Ratification Defense**

**Defendants' Version:**

Ratification is a defense that is different than the ratification theory under vicarious liability I previously instructed you on. The ratification defense applies where a person, such as the Plaintiff, approves an act through his words or conduct with knowledge of a previous position he took, with the intent to validate that earlier act. The Defendants allege that the Plaintiff ratified the receipt of the telephone calls and text messages he complains about through his conduct in this case. In order to succeed on this defense, the Defendants must prove by a preponderance of the evidence that:

    (1)    The Plaintiff approved by act, word, or conduct, the receipt of text messages or telephone calls;

    (2)    The Plaintiff had full knowledge of the facts of the earlier act, in which he requested to receive telephone calls or text messages, or by placing calls to callers and/or the Defendants; and

    (3)    The Plaintiff acted with the intent to validate his earlier act.

If you conclude that the Plaintiff ratified the actions of the callers and/or the Defendants, then you should find in favor of the Defendants.

**Defendants' Authorities:**

*White v. Harrison*, 390 S.W.3d 666, 672 (Tex.App.–Dallas 2012, no pet.); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 344 (Tex.2011).

**Plaintiff's Position:**

Deleted. The so-called ratification defense is neither cognizable nor warranted in a TCPA case generally or in the case at bar specifically. Defendants' case citations demonstrate as much. Neither case involved the TCPA, a federal statute with federal

regulations promulgated thereunder, which require adherence to the restrictions and legal formalities set forth by that law. Defendants' self-manufactured law is unavailing. Instructions as to the TCPA claims asserted are addressed by Instructions nos. 5 to 25 above.

> **Plaintiff's Authorities:**

*White v. Harrison*, 390 S.W.3d 666, 672 (Tex.App.–Dallas 2012, no pet.); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 344 (Tex.2011).

**Instruction No. 39: Defendants' Counterclaim for Common law Fraud**

**Defendants' Version**

In order for the Defendants to prevail on their Counterclaim for Common Law Fraud, the Defendants must prove the following elements by a preponderance of the evidence:

(1) That the Plaintiff made at least one material misrepresentation, or that the Plaintiff failed to disclose information when he had a duty to do so;

(2) That the representation was false when made;

(3) That the Plaintiff knew the representation was false, or made the representation recklessly without any knowledge of its truth;

(4) That the Plaintiff made the representation or omitted information with the intent that the other party would act on that representation, or intended to induce the other party's reliance on the representations;

(5) That the other party relied on the representation or omission; and

(6) That the Defendant(s) suffer(ed) damages by relying on the representation or omission.

A person's conduct and representations are material if a reasonable person would attach importance to it and would be induced to act on the information in determining his choice of actions in the transaction in question. A representation may also be material even if it was not the only factor inducing the reliance.

For omissions, a duty to disclose exists when there is a special relationship requiring disclosure, new information that makes an earlier representation misleading or untrue, the person making a statement created a false impression by making a partial disclosure, or if the person making a statement discloses some information, he has a duty to disclose the whole truth. That is, for the fraud by nondisclosure claim, Defendants must prove the same elements of the common law fraud claim, but instead of making a false statement, it must be proven by a preponderance of the evidence that a duty to speak existed, but the Plaintiff failed to do so.

Actionable fraud can come in a wide variety of forms and you may consider any, including words, omissions, conduct or a combination of all.  And a person's intent can be inferred from his acts made after the representation or omission.

Fraud can also be committed indirectly by making a false representation, or omitting information, to a third party with the intent or expectation that it be repeated to deceive another.

In order for Defendants to prove that they relied on Plaintiff's false statements, Defendants must prove by a preponderance of the evidence that they actually relied on the false representations of Mr. Hirsch. So long as Mr. Hirsch's representation was a factor in the Defendant and/or a third parties' conduct in communicating with him, then you must find that the Defendant and/or the third party actually relied on Mr. Hirsch's misrepresentation. In evaluating whether there was actual reliance, you may consider the timing of Mr. Hirsch's conduct relative to the timing of the conduct of the Defendant and/or third parties' conduct. You are permitted to draw inferences based on this timing.

In addition to actual reliance, Defendants must show that they were justified in relying on Plaintiff's false representation. In evaluating whether an entity was justified in relying on a misrepresentation, you may consider the individual characteristics, abilities, and appreciation by the Defendants of the facts and circumstances at or before the time of the alleged fraud.  Defendants can show that they justifiably relied on statements even if they were made to a third party.

A person or company may not justifiably rely on a misrepresentation if that person or entity should have known that such reliance is unwarranted. This knowledge can come in two forms: direct contradictions, or other serious warnings. Direct contradictions are those where the person making the representation has previously made a contradictory representation to the same person. In order to negate justifiable reliance, this warning must be sufficient enough that that, when considering the circumstances of the representation, the party to whom the representation is made could not have been justified when relying on the statement. When considering justifiable reliance, consider who might have had the warning or knowledge, and who actually relied on the representations from the Plaintiff. Here, Plaintiff seeks to show vicarious liability, but you must still distinguish between the knowledge or warning the Defendants had, and those that the independent insurance advisors had.

Defendants may be entitled to actual, nominal, and exemplary damages.  Actual damages include the loss, including fees and costs, that could be expected to result from Plaintiff's fraudulent acts.  If, based on the evidence, you find no definite ascertainable actual damages in the case, but find that there has been fraud by the Plaintiff against the Defendants, the Defendants would be entitled to what is known as "nominal damages."

Nominal damages are some slight, trivial amount given to vindicate the invasion of a private right. Although Defendants are only required to prove their counterclaim by a preponderance of the evidence, Defendants may be entitled to exemplary, or additional damages if they prove their counterclaim for fraud by clear and convincing evidence. In order to award exemplary damages, you must find that the harm Defendants have suffered was a result of fraud. Defendants have the burden of establishing each element of their fraud counterclaim by clear and convincing evidence in order for you to find that they are entitled to exemplary damages. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy. If you find that Defendants have proven their counterclaim for fraud by clear and convincing evidence, you must award them exemplary damages.

**Defendants' Authorities:**

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *First State Bank of Miami v. Fatheree*, 847 S.W.2d 391, 396 (Tex. App. 1993), *writ denied* (Sept. 10, 1993); *Wilmot v. Bouknight*, 466 S.W.3d 219, 227 (Tex. App. 2015); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019), *reh'g denied* (Jan. 17, 2020); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011); *Flood v. Katz*, 294 S.W.3d 756, 763 (Tex. App. 2009); *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 15 (Tex. App. 2016); *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex.1996); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 540 F.Supp.2d 759, 771 (S.D. Tex. 2007); *Mercedes-Benz USA, LLC v. Carduco, Inc,* 583 S.W.3d 553, 558 (Tex. 2019), reh'g denied (Oct. 18, 2019*); Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2010); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013); *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 181 (Tex. App. 2007); *Brooks v. Parr*, 507 S.W.2d 818, 819 (Tex. Civ. App. 1974); *Carlton v. Cobank, Inc*., No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003); *Commercial Credit Corp. v. Sorgel,* 274 F.2d 449, 453 (5th Cir. 1960); *Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. App. Feb. 16, 2007); *Smith v. McDaniel,* No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013); *U.S. Bank, Nat. Ass'n v. Am. Realty Tr., Inc.*, 275 S.W.3d 647, 652 (Tex. App. 2009); § 18-9 Fraud - Nominal Damages, Anderson, S.C. Requests to Charge - Civil, 18-9; Tex. Civ. Prac. & Rem. Code § 41.003. "Exemplary damages are recoverable where…[a

party] proves by clear and convincing evidence that the harm for which he seeks exemplary damages resulted from fraud"); *Citizens Nat'l Bank v. Allen Rae Investments, Inc.,* 142 S.W.3d 459, 484 (Tex. App. 2004); *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 618 (Tex. App. 2000); *Foley v. Parlier*, 68 S.W.3d 870, 881 (Tex. App. 2002); *Lundy v. Masson*, 260 S.W.3d 482, 496 (Tex. App. 2008); Tex. Civ. Prac. & Rem. Code § 41.003; *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816 (Tex. 1997); *Browder v. Eicher*, 841 S.W.2d 500 (Tex. App. 1992), *writ denied* (Mar. 3, 1993).

**Plaintiff's Version:**

In order for the USHealth Advisors LLC and USHealth Group, Inc. to prevail on their Counterclaim for Common Law Fraud, the Defendants must prove the following elements by a clear and convincing evidence:

(1)   That the Plaintiff made at least one material misrepresentation to one of, or both of, USHealth Advisors LLC or USHealth Group, Inc., or that the Plaintiff failed to disclose information when he had a legal duty to do so;

(2)   That the representation was false when made;

(3)   That the Plaintiff knew the representation was false, or made the representation recklessly without any knowledge of its truth;

(4)   That the Plaintiff made the representation or omitted information with the intent that to one of, or both of, USHealth Advisors LLC or USHealth Group, Inc. would act on that representation, or intended to induce reliance on the representations by one of, or both of, USHealth Advisors LLC or USHealth Group, Inc.;

(5)   That one of, or both of, USHealth Advisors LLC or USHealth Group, Inc. relied on the representation or omission; and

106

(6)     That to one of, or both of, USHealth Advisors LLC or USHealth Group, Inc. suffer(ed) reputation and business damages, as defined by expert testimony and evidence, by relying on the representation or omission.

A person's conduct and representations are material if a reasonable person would attach importance to it and would be induced to act on the information in determining his choice of actions in the transaction in question. A representation may also be material even if it was not the only factor inducing the reliance.

For omissions, a duty to disclose exists when there is a special relationship requiring disclosure, new information that makes an earlier representation misleading or untrue, the person making a statement created a false impression by making a partial disclosure, or if the person making a statement discloses some information, he has a duty to disclose the whole truth. That is, for the fraud by nondisclosure claim, USHealth Advisors LLC and USHealth Group, Inc. must prove the same elements of the common law fraud claim, but instead of making a false statement, it must be proven by clear and convincing evidence that a duty to speak existed, but the Plaintiff failed to do so. You must decide if a consumer has a legal duty to tell a telemarketer anything truthful or not truthful in the first place. If you find that a consumer does not have a such a legal duty, then you must find that there was no fraud by omission.

<u>Plaintiff's Authorities:</u>

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *Stabilis Fund II, LLC v. Compass Bank*, No. 3:18-CV-0283-B, 2018 WL 3618012, at *5 (N.D. Tex. July 30, 2018); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 771 (S.D. Tex. 2007). See also *Malagon v. Crescent Hotel & Resorts*, No. 3:16-cv-0644-D, 2018 WL 5717279, at *1 (N.D. Tex. Nov. 1, 2018) ("Fraud is never presumed and must always be proven by clear and convincing evidence.") (internal citations omitted); *Commercial*

*Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960) ("Fraud is never presumed, and the burden is on (the party asserting it) to prove it with reasonable certainty by a preponderance of convincing evidence.") (internal citation omitted); 41 *Tex. Jur. 3d Fraud and Deceit* § 75 ("As a general rule, fraud must be established by clear and specific evidence unaided by presumptions, inferences, or intendments.").

"A loss of goodwill claim compensates for harm to the value of the business as an ongoing concern and involves complex financial calculations." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010). Expert testimony is ordinarily required to prove this — and it is always required if the financial calculations are complex. *See, e.g.*, *Vivint, Inc. v. Northstar Alarm Servs., Ltd. Liab. Co.*, No. 2:16-cv-00106-JNP-EJF, 2019 U.S. Dist. LEXIS 37921, at *32 (D. Utah Mar. 8, 2019) ("Goodwill damages are complex and require expert testimony."); *see also Rosenberg v. DVI Receivables, XIV, LLC*, No. 12-CV-22275, 2012 WL 5198341, 2012 U.S. Dist. LEXIS 151001, at *14 (S.D. Fla. Oct. 19, 2012) (observing that "damage to an individual's reputation is distinguishable from that to a corporation's reputation in that a computation of loss of goodwill requires expert testimony"), *rev'd on other grounds*, 818 F.3d 1283 (11th Cir. 2016); *but see ADT & ADT US Holdings, Inc. v. Alarm Prot. LLC*, No. 9:15-CV-80073, 2017 U.S. Dist. LEXIS 75046, at *32 (S.D. Fla. May 17, 2017) (holding expert testimony was not required to prove "goodwill and reputational damages [at] trial as a matter of law"). *Mee Industries* is instructive. There, the court of appeals affirmed the district court's decision barring goodwill and reputational damage claims "especially in light of [the claimant's] failure to ever present the required computation of alleged goodwill damages and the complexity of the financial calculations that would have required expert testimony." 608 F.3d at 1222.

**Defendants' Objections:** Defendants object because Plaintiff's proposed instruction seeks to give the jury the impression that more is required than proof of the elements of the claim or the description set forth in Defendants' fraud counterclaim instructions.  In addition, the burden of proof for common law fraud in Texas is preponderance of the evidence, not clear and convincing. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex.1996); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013); *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 181 (Tex. App. 2007); *Brooks v. Parr*, 507 S.W.2d 818, 819 (Tex. Civ. App. 1974); *Carlton v. Cobank, Inc.*, No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003); *Commercial Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960); *Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. App. Feb. 16, 2007); *Smith v. McDaniel*, No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013).

**Instruction No. 40: Actual Reliance Instruction**

**Plaintiff's Version:**

For USHealth Advisors LLC and USHealth Group, Inc. to recover on their fraud counterclaim, USHealth Advisors LLC and USHealth Group, Inc. must prove "actual reliance" by clear and convincing evidence. That is, USHealth Advisors LLC and USHealth Group, Inc. must prove by clear and convincing evidence that they *in fact* relied on the alleged misrepresentations of Mr. Hirsch. If you find that USHealth Advisors LLC and USHealth Group, Inc. would have engaged in the conduct anyway, and that the alleged misrepresentation of Mr. Hirsch did not affect its decision, then there was no reliance and your verdict must be for Mr. Hirsch on USHealth Advisors LLC and USHealth Group, Inc.'s fraud counterclaim.

**Plaintiff's Authorities:**

U.S. 5th Cir. Pattern Jury Instruction 7.1. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018)

**Defendants Objections**: Defendants object because Plaintiff's proposed instruction seeks to give the jury the impression that more is required than proof of the elements of the claim or the description set forth in Defendants' fraud counterclaim instructions.  In addition, the burden of proof for common law fraud in Texas is preponderance of the evidence, not clear and convincing. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex.1996); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013); *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 181 (Tex. App. 2007); *Brooks v. Parr*, 507 S.W.2d 818, 819 (Tex. Civ. App. 1974); *Carlton v. Cobank, Inc*., No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003); *Commercial Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960); *Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. App. Feb. 16, 2007); *Smith v. McDaniel*, No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013).  This instruction is not necessary in light of Instruction No. 39.

**Defendants' Version:**

[Instruction fully deleted.]

**Instruction No. 41: Defendants' Counterclaims, Justified Reliance**

    <u>Plaintiff's Version:</u>

    In addition, USHealth Advisors LLC and USHealth Group, Inc. must prove by clear and convincing evidence that its reliance was justified. A party cannot have closed its eyes and refused to investigate the circumstances in disregard of a risk known to it. Rather, a party must protect its own interests through the exercise of reasonable diligence. And company's reliance is not justified if it fails to exercise the due diligence expected of a reasonably prudent company. If you find that USHealth Advisors LLC and USHealth Group, Inc. did not perform reasonable diligence with respect to Mr. Hirsch, USHealth Advisors LLC and USHealth Group, Inc. cannot recover on its fraud claim.

    A person or company may not justifiably rely on a misrepresentation if there are red flags indicating such reliance is unwarranted. Thus, if you find that USHealth Advisors LLC and USHealth Group, Inc. had indications that it should not call Mr. Hirsch, you may conclude that USHealth Advisors LLC and USHealth Group, Inc. annot recover on its fraud claim.

    <u>Plaintiff's Authorities:</u>

U.S. 5th Cir. Pattern Jury Instruction 7.1. *JPMorgan Chase Bank, N.A.* **546 S.W.3d at 654;** *In re Primera Energy, LLC*, **579 B.R. 75, 142 (Bankr. W.D. Tex. 2017),** *aff'd sub nom. Alfaro v. Reiley*, **No. 5:18-cv-0329-JKP, 2019 WL 4765385 (W.D. Tex. Sept. 27, 2019) ("when a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. To this end, that party cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations.")**

The Fifth Circuit instructs that "a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." <u>Lewis v. Bank of Am. NA</u>, **343 F.3d 540, 546 (5th Cir. 2003);** *see also Grant Thornton LLP v. Prospect High Income Fund*, **314 S.W.3d 913, 923 (Tex. 2010) (same).**

**Defendants Objections**: **Defendants object to Plaintiff's suggested phrasing because the term indications suggests too low of a bar to determine that Defendants were not justified in their reliance. "Indications" are not sufficient to negate actual reliance; the jury must evaluate the red flag in the context of the statement and decide whether it was strong enough to negate actual reliance.** *Mercedes-Benz USA, LLC v. Carduco, Inc.,* **583 S.W.3d 553, 558 (Tex. 2019), reh'g denied (Oct. 18, 2019);** *Grant Thornton LLP v. Prospect High Income Fund*, **314 S.W.3d 913, 923 (Tex. 2010);** *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, **546 S.W.3d 648, 658 (Tex. 2018), reh'g denied (June 15, 2018). Defendants object because the burden of proof for common law fraud in Texas is preponderance of the evidence, not clear and convincing. Moreover, 5th Circuit Pattern Jury Instruction 7.1 relates to a Section 10(b) securities fraud claim, no common law fraud (interestingly, it too refers to a preponderance of the evidence standard).** *Grant Thornton LLP v. Prospect High Income Fund*, **314 S.W.3d 913, 923 (Tex. 2010);** *Colonial Refrigerated Transp., Inc. v. Mitchell,* **403 F.2d 541, 549–50 (5th Cir.1968); Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 578 (Tex. 2001);** *Brooks v. Parr*, **507 S.W.2d 818, 819 (Tex. Civ. App. 1974);** *Carlton v. Cobank, Inc.*, **No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003);** *Commercial Credit Corp. v. Sorgel*, **274 F.2d 449, 453 (5th Cir. 1960);** *Huynh v. Phung*, **No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. App. Feb. 16, 2007);** *Smith v. McDaniel,* **No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013). This instruction is not necessary in light of Instruction No. 39. The proposed instruction attempts to group both Defendants together, when they must be treated an evaluated as separate entities.**

**Defendants' Version:**

**[Instruction fully deleted.]**

111

**Instruction No. 42: Defendants' Counterclaims, Materiality Instruction**

**Plaintiff's Version:**

A representation or non-representation is material if it would likely affect the conduct of a reasonable person concerning the transaction. If you find by clear and convincing evidence that Mr. Hirsch's statements or non-statements (omission) to the Dosys agent would have led to a follow-up call to a USHealth agent, then the statement or omission was material. If you are unable to determine if what Mr. Hirsch said to the Dosys agent would have made a difference in leading to a follow-up call by a USHealth agent (for example by not hearing from the Dosys witness), then you must find that Mr. Hirsch's representation is not material. If so, then you must find against fraud and fraud by omission.

**Plaintiff's Authorities:**

*Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 345 (Tex. App. 2003); *Cty. of El Paso, Tex. v. Jones*, No. EP-09-CV-00119-KC, 2009 WL 4730237, at *7 (W.D. Tex. Dec. 4, 2009); *See also Ptasynski v. Shell W. E & P Inc.*, No. 99-11049, 2002 WL 32881277, at *6 (5th Cir. Feb. 13, 2002) ("the test for materiality is whether the contract would have been signed by the plaintiff without such representation having been made" citing *Adickes v. Andreoli*, 600 S.W.2d 939, 946 (Tex. Civ. App.1980)) (internal citations omitted).

**Defendants Objections:** Defendants object because Plaintiff's proposed instruction seeks to give the jury the impression that more is required than proof of the elements of the claim or the description set forth in Defendants' fraud counterclaim instructions.  In addition, the burden of proof for common law fraud in Texas is preponderance of the evidence, not clear and convincing. Defendants further object to this instruction as Plaintiff has made no effort to call the above referenced witness ("Dosys agent") to testify in this case, and Plaintiff's suggestion in the instruction that the jury cannot conclude Plaintiff's statement is material without such testimony does not comport with the law on materiality. The proposed instruction attempts to group both Defendants together, when they must be treated an evaluated as separate entities. This instruction is not necessary in light of Instruction No. 39. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex.1996); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013); *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 181 (Tex. App. 2007); *Brooks v. Parr*, 507 S.W.2d 818, 819 (Tex. Civ. App. 1974); *Carlton v. Cobank, Inc.*, No. 07-02-0258-CV, 2003 WL 1728493, at *3 (Tex. App. Apr. 1, 2003); <u>*Commercial Credit Corp. v. Sorgel*</u>, 274 F.2d 449, 453 (5th Cir. 1960); <u>*Huynh v. Phung*</u>, No. 01-04-00267-CV, 2007 WL 495023, at *2 (Tex. Feb. 16, 2007); <u>*Smith v.*</u>

*McDaniel*, No. 12-12-00165-CV, 2013 WL 5302492, at *6 (Tex. App. Sept. 18, 2013). *Wilmot v. Bouknight*, 466 S.W.3d 219, 227 (Tex. App. 2015); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019), *reh'g denied* (Jan. 17, 2020); *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 277 (Tex. 1995).

**Defendants' Version:**

**[Instruction fully deleted.]**

**EVIDENCE**

**Instruction No. 43: Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence, both direct and circumstantial.

[5th Cir. Pattern Jury Instruction 3.3]

**Instruction No. 44: Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object to the evidence being presented.

If I overrule the objection, the question may be answered, or the exhibit may be presented. If I sustain the objection, the question cannot be answered, and/or the exhibit not presented. Whenever I sustain an objection, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record, and that you disregard or ignore the evidence. That means when you are deciding the case, you must not consider the evidence I have stricken for any purposes.

**Instruction No. 45: Spoilation**

   **Plaintiff's Version:**

   [*If court has made spoliation finding as matter of law.*] **Additionally, USHealth had a duty to retain and produce [*describe the spoliated evidence*]. USHealth has failed to do so.**

   **You may therefore assume that this evidence would have been unfavorable to USHealth.**

   **Plaintiff's Authorities:**

**Texas State Bar Model Spoliation Instruction Fed. R. Civ. P. 37 (providing broad range of sanctions for discovery abuses);** *Orchestrate HR, Inc. v. Trombetta*, **178 F. Supp. 3d 476, 494 (N.D. Tex. 2016) (discussing inherent powers of the court);** *Crawford v. San Marcos ISD*, **No. A-09-cv-649 LY, 2011 WL 5155595, at \*1 (W.D. Tex. Oct. 28, 2011) (court "possesses the inherent power 'to protect the efficient and orderly administration of justice and ... to command respect for the court's orders, judgments, procedures, and authority,' including the power to levy sanctions" for 'abusive litigation practices'") (***quoting In re Stone*, **986 F.2d 898, 902 (5th Cir. 1993);** *Rimkus Consulting Grp., Inc. v. Cammarata*, **688 F. Supp. 2d 598, 646 n.34 (S.D. Tex. 2010) (collecting various spoliation instructions);** *Ashton v. Knight Transp., Inc*., **772 F. Supp. 2d 772, 805-806 (N.D. Tex. 2011) (where defendant had spoliated evidence, remedy must "[r]estor[e] Plaintiff to the litigation position she would occupy absent the spoliation" which "requires removing the evidentiary obstacles caused by the spoliation[,]" struck Defendants' pleadings and defenses to liability as a proper remedy").**

**Defendants' Objections**: The proposed instruction is not relevant to this dispute as spoliation is not at issue. Should spoliation be deemed an issue in this case, Defendants reserve the right to propose a different instruction pending a ruling on Plaintiff's Motion for Sanctions [ECF 244]. The proposed instruction attempts to group both Defendants together, when they must be treated and evaluated as separate entities.  This instruction would only be appropriate if the Court specifically orders this instruction as a sanction. Federal Rule of Procedure 37(e) sets the standard for issuing sanctions when ESI is lost or destroyed. Applying Rule 37(e) involves a two-step process. First, a district court considers Rule 37(e)'s four prerequisite elements are met. The four predicate elements are: are (1) the existence of ESI that a party had a duty to preserve; (2) loss of the ESI; (3) a showing that a party failed to take reasonable steps to preserve the lost ESI; and (4) the inability to restore or replace the lost ESI, or otherwise discover the lost facts, through additional discovery. Second, and only if each element is satisfied, does the court consider whether the moving party was prejudiced and whether to order measures to cure the prejudice under Rule 37(e)(1), which can be "**no greater than necessary** to cure the prejudice.;" or, whether there is an "intent to deprive" that would justify severe sanctions including, at the Court's discretion, to instruct the jury that it may presume the information was unfavorable to the party.  Simply finding spoliation occurred as a matter of law would not warrant this proposed instruction. Defendants object to this entire instruction. Fed. R. Civ. P. 37(e) Committee Notes; Flores v. AT&T Corp., No. EP-17-CV-00318-DB, 2018 WL 6588586, at \*4 (W.D. Tex. Nov. 8, 2018); Grant v. Gusman, No. CV 17-2797, 2020 WL 1864857, at \*8 (E.D. La. Apr. 13, 2020); Orchestrate HR, Inc. v.

Trombetta, 178 F. Supp. 3d 476, 489 (N.D. Tex. 2016), objections overruled sub nom. Orchestratehr, Inc. v. Trombetta, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016; Richard v. Inland Dredging Co., LLC, No. 6:15-0654, 2016 WL 5477750, at *2 (W.D. La. Sept. 29, 2016) (citing Elliot v. Tilton, 64 F.3d 213, 217 (5th Cir. 1995).

**<u>Defendants' Version:</u>**

**[Instruction fully deleted.]**

**Instruction No. 46: Spoilation**

**Plaintiff's Version:**

[*If Court has* **not** *made spoliation finding as matter of law.*] **Where evidence that would properly be part of a case is within the control of, or available to, the party whose interest it would naturally be to produce it, and that party fails to do so without a satisfactory explanation, you may draw the inference that such evidence would be unfavorable to that party. You have heard that USHealth did not produce [*describe the spoilated evidence*], and USHealth did so without a satisfactory explanation. If you should find this to be the case, you may infer that such evidence, had it been produced, would be unfavorable to USHealth.**

**Plaintiff's Authorities:**

**Texas State Bar Model Spoliation Instruction.** *See Rimkus Consulting Grp., Inc. v. Cammarata*, **688 F. Supp. 2d 598, 646 n.34 (S.D. Tex. 2010) (collecting various spoliation instructions); Fed. R. Civ. P. 37 (providing broad range of sanctions for discovery abuses);** *Orchestrate HR, Inc. v. Trombetta*, **178 F. Supp. 3d 476, 494 (N.D. Tex. 2016) (discussing inherent powers of the court);** *Crawford v. San Marcos ISD*, **No. A-09-cv-649 LY, 2011 WL 5155595, at \*1 (W.D. Tex. Oct. 28, 2011) (court "possesses the inherent power 'to protect the efficient and orderly administration of justice and ... to command respect for the court's orders, judgments, procedures, and authority,' including the power to levy sanctions" for 'abusive litigation practices'") (***quoting In re Stone***, 986 F.2d 898, 902 (5th Cir. 1993);** *Rimkus Consulting Grp., Inc. v. Cammarata*, **688 F. Supp. 2d 598, 646 n.34 (S.D. Tex. 2010) (collecting various spoliation instructions);** *Ashton v. Knight Transp., Inc*., **772 F. Supp. 2d 772, 805-806 (N.D. Tex. 2011) (where defendant had spoliated evidence, remedy must "[r]estor[e] Plaintiff to the litigation position she would occupy absent the spoliation" which "requires removing the evidentiary obstacles caused by the spoliation[,]" struck Defendants' pleadings and defenses to liability as a proper remedy").**

**Defendants Objections**: **The proposed instruction is not relevant to this dispute as spoliation is not at issue. Should spoliation be deemed an issue in this case, Defendants reserve the right to propose a different instruction pending a ruling on Plaintiff's Motion for Sanctions [ECF 244]. The proposed instruction attempts to group both Defendants together, when they must be treated and evaluated as separate entities. This instruction is unduly prejudicial and applies a standard that is no longer in effect. Plaintiff has moved the court for sanctions related to alleged spoliation of only ESI. The Advisory Committee Notes for the December 1, 2015 amendments to Rule 37, make clear that amended Rule 37(e) is the only procedural**

118

tool that is appropriate for analyzing allegations of ESI spoliation, and, if necessary imposing sanctions.  A jury instructions regarding spoliation would only be appropriate pursuant to a Court Order explicitly requiring one.  Federal Rule of Procedure 37(e) sets the standard for issuing sanctions when ESI is lost or destroyed. Applying Rule 37(e) involves a two-step process. First, a district court considers Rule 37(e)'s four prerequisite elements are met. The four predicate elements are: are (1) the existence of ESI that a party had a duty to preserve; (2) loss of the ESI; (3) a showing that a party failed to take reasonable steps to preserve the lost ESI; and (4) the inability to restore or replace the lost ESI, or otherwise discover the lost facts, through additional discovery. Second, and only if each element is satisfied, does the court consider whether the moving party was prejudiced and whether to order measures to cure the prejudice under Rule 37(e)(1), which can be "<u>no greater than necessary</u> to cure the prejudice.;" or, whether there is an "intent to deprive" that would justify severe sanctions including, at the Court's discretion, to instruct the jury that it may presume the information was unfavorable to the party.  Simply finding spoliation occurred as a matter of law would not warrant this proposed instruction. Defendants object to this instruction in its entirety. Fed. R. Civ. P. 37(e) Committee Notes; *Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *4 (W.D. Tex. Nov. 8, 2018); *Grant v. Gusman*, No. CV 17-2797, 2020 WL 1864857, at *8 (E.D. La. Apr. 13, 2020); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 489 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016; *Richard v. Inland Dredging Co., LLC*, No. 6:15-0654, 2016 WL 5477750, at *2 (W.D. La. Sept. 29, 2016) (citing *Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995); *Snider v. Danfoss, LLC*, No. 15 CV 4748, 2017 WL 2973464, at *3 (N.D. Ill. July 12, 2017), *report and recommendation adopted,* No. 1:15-CV-04748, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017).

**Defendants' Version:**

**[Instruction fully deleted.]**

**Instruction No. 47: Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

[U.S. 5th Cir. Pattern Jury Instruction 3.4]

**Instruction No. 48: Expert Witnesses**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

[5th Cir. Pattern Jury Instruction 3.5]

**Instruction No. 49: Missing Witnesses**

<u>Plaintiff's Version:</u>

You have heard evidence about [absent witness], who has not been called to testify.

Mr. Hirsch has argued that [absent witness]'s testimony could have been important to this

case and that [absent witness] was available as a witness only to USHealth, not Mr. Hirsch.

If you find that USHealth could have called [absent witness] as a witness and that

[absent witness] would have given important new testimony, and you also find that [absent

witness] was available as a witness only to USHealth, not Mr. Hirsch, and that USHealth

failed to call [absent witness], you may presume that [absent witness]'s testimony would

have been unfavorable to USHealth.

You should not draw such a conclusion if the witness was equally available to both

parties or if the witness's testimony would have merely repeated the testimony of other

witnesses or evidence already presented in the case

<u>Plaintiff's Authorities:</u>

The Fifth Circuit "has long recognized that a party's failure to call available witnesses or
produce evidence that would clarify or explain disputed factual issues can give rise to a
presumption that the evidence, if produced, would be unfavorable to that party." *U.S. v.
Wilson*, 322 F.3d 353, 363 (5th Cir. 2003) (collecting cases). "There is, however, an important
exception to the applicability of the presumption: if the witness is 'equally available' to both
parties, any negative inference from one party's failure to call that witness is impermissible."
*Id*. at 364 n.14 (citation omitted); *see also Labit v. Santa Fe Marine, Inc*., 526 F.2d 961, 963
(5th Cir. 1976) ("The propriety of giving a 'missing witness' instruction is necessarily a
matter committed to the discretion of the trial judge.").

**Defendants Objections**: The proposed instruction is not relevant to this dispute as there is no
indication that certain witnesses will be unavailable at trial. The proposed instruction attempts to
group both Defendants together, when they must be treated an evaluated as separate entities.

<u>Defendants' Version:</u>

**Instruction fully deleted.**

**Instruction No. 50: Transcripts of Oral Conversations**

   **Defendants' Version:**

   A typewritten transcript of an oral conversation, which can be heard on a recording received in evidence [as Exhibit ———] was shown to you. The transcript also purports to identify the speakers engaged in such conversation.

   I have admitted the transcript [as Exhibit ———] for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to the recording, and also to aid you in identifying the speakers.

   You are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine, based on your evaluation of the testimony you have heard about the preparation of the transcript and on your own examination of the transcript in relation to your hearing of the recording itself as the primary evidence of its own contents. If you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

   **Defendants' Authorities:**

   U.S. 5th Circuit Pattern Jury Instruction 2.14

   **Plaintiff's Position:**

   Deleted. Plaintiff is filing a motion in limine as to the introduction of audios. To the extent that audios are nevertheless allowed into evidence, Federal Rule of Evidence 1002 (Requirement of the Original) prohibits the use of and reliance on an alleged transcription of the audios. Such transcriptions would be superfluous and confusing to the jury, and thereby prejudicial.

**Plaintiff's Authorities:**

**Fed. R. Evid. 1002, 403.**

**Instruction No. 51: No Inference from Filing Suit**

     <u>**Plaintiff's Version:**</u>

     The fact that Mr. Hirsch and **USHealth** have **each** asserted claims in this lawsuit creates

no inference that they are entitled to a judgment. Anyone may make a  claim. The act of

making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is

not evidence.

     <u>**Plaintiff's Authorities:**</u>

**U.S. 5th Cir. Pattern Jury Instruction 3.6**

<u>**Defendants Objections**</u>: Defendants object to any instruction that fails to differentiate between
the two named Defendants.  The Plaintiff's proposed instruction also fails to separate the Plaintiff
from the class.  This will result in jury confusion as to the separate claims of the Plaintiff and the
class.

     <u>**Defendants' Version:**</u>

     **The fact that Mr. Hirsch and the proposed class or either Defendant have asserted**

**claims in this lawsuit creates no inference that they are entitled to a judgment. Anyone may**

**make a claim. The act of making a claim in a lawsuit, by itself, does not in any way tend to**

**establish that claim and is not evidence.**

     <u>**Defendants' Authorities:**</u>

**U.S. 5th Cir. Pattern Jury Instruction 3.6**

## DELIBERATIONS AND VERDICT

**Instruction No. 52: Duty to Deliberate; Notes**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

In reaching your verdict, you must collectively fill out one version of the jury verdict form, which I will read aloud to you now.

[5th Cir. Pattern Jury Instruction 3.7]

## [INSERT LANGUAGE FROM THE VERDICT FORM]

126

After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:18-cv-245-P** |
| **USHealth Advisors, LLC and USHealth Group, Inc.,** | |
| **Defendants.** | |

## PLAINTIFF'S PROPOSED VERDICT FORM

## QUESTION 1

Did USHealth Advisors, LLC, whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to Aaron Hirsch?

[   ]  YES

[   ]  NO

*If Yes, please answer the following additional questions.*

For how many total calls and texts to Aaron Hirsch is USHealth Advisors, LLC liable?

_____.

What amount, up to $500, do you award for each call or text to Aaron Hirsch for which USHealth Advisors, LLC is liable?

$_____

**QUESTION 2**

Did USHealth Group, Inc., whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to Aaron Hirsch?

[   ]  YES

[   ]  NO

*If Yes, please answer the following additional questions.*

For how many total calls and texts to Aaron Hirsch is USHealth Group, Inc. liable?

_____.

What amount, up to $500, do you award for each call or text to Aaron Hirsch for which USHealth Group, Inc is liable?

$_____

**QUESTION 3**

Did USHealth Advisors, LLC, whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to the Class?

[   ]  YES

[   ]  NO

*If Yes, please answer the following additional questions.*

What amount, up to $500, do you award for each call or text to the Class for which USHealth Advisors, LLC is liable?

$_____

## **QUESTION 4**

Did USHealth Group, Inc., whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to the Class?

> [   ]   YES

> [   ]   NO

> *If Yes, please answer the following additional questions.*

> What amount, up to $500, do you award for each call or text to the Class for which USHealth Group, Inc. is liable?

> $_____

_____          _____
            Date                                  Jury Foreperson (signature)


                                        _____
                                        Jury Foreperson (printed name)

# **EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

**AARON HIRSCH, individually and on
behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**USHealth Advisors, LLC and USHealth
Group, Inc.,**

**Defendants.**

Civil Action No. 4:18-cv-245-P

## DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED VERDICT FORM

### QUESTION 1

Did USHealth Advisors, LLC, whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to Aaron Hirsch?

[   ]  YES

[   ]  NO

*If Yes, please answer the following additional questions.*

For how many total calls and texts to Aaron Hirsch is USHealth Advisors, LLC liable?

_____ .

What amount, up to $500, do you award for each call or text to Aaron Hirsch for which USHealth Advisors, LLC is liable?

$_____

133

### *Defendants' Objections*

As an initial matter, Defendants object to any trial on the merits moving forward prior to a determination of whether or not a class will be certified and, if so, what that class will be.  Federal Rule of Civil Procedure 23, the rule against one-way intervention, and due process preclude a trial on the merits at this time.  Under settled law, prior to certification, absent class members are not parties to a lawsuit.  Defendants thus object to any verdict form that discusses or references a class, class claims or absent class members.  Defendants are participating in the procedures and deadlines set forth in DE 121 subject to the foregoing.

Defendants further object on the ground that Plaintiff's Question 1 is overly simplistic and fails to provide the jury a framework to ensure it makes the necessary findings consistent with, and indeed required by, the law.  Plaintiff's formulation combines the concepts of direct liability and indirect liability, along with two different types of potential violations – the National Do-Not-Call Rules and the Internal Do-Not-Call-Rules.  It would be indecipherable from Plaintiff's formulation what exactly the jury found was a violation, and on what basis it found USHA liable.  Different elements and affirmative defenses apply to the two sets of "Rules," and without breaking the issues down, including whether the telephone calls even qualify as telephone solicitation calls and if Plaintiff consented, gave permission, or had an existing business relationship with USHA on any of the numerous telephone calls at issue (the answers to these questions will not necessarily be the same for each telephone call).  Will the jury have found direct liability or vicarious liability?  If the latter, on which basis?  Defendants' proposed verdict form addresses these deficiencies and will ensure that the jury engages in the correct analysis and makes all necessary determinations, and will permit an opportunity to review the jury's verdict to ensure it is supported by the evidence presented at trial.

**QUESTION 2**

Did USHealth Group, Inc., whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to Aaron Hirsch?

      [   ]  YES

      [   ]  NO

*If Yes, please answer the following additional questions.*

For how many total calls and texts to Aaron Hirsch is USHealth Group, Inc. liable?

_____.

What amount, up to $500, do you award for each call or text to Aaron Hirsch for which USHealth Group, Inc is liable?

$_____

***Defendants' Objections***

As an initial matter, Defendants object to any trial on the merits moving forward prior to a determination of whether or not a class will be certified and, if so, what that class will be. Federal Rule of Civil Procedure 23, the rule against one-way intervention, and due process preclude a trial on the merits at this time. Under settled law, prior to certification, absent class members are not parties to a lawsuit. Defendants thus object to any verdict form that discusses or references a class, class claims or absent class members. Defendants are participating in the procedures and deadlines set forth in DE 121 subject to the foregoing.

Defendants further object on the ground that, like the largely identical Question 1, Plaintiff's Question 2 is overly simplistic and fails to provide the jury a framework to ensure it makes the necessary findings consistent with, and indeed required by, the law. Plaintiff's formulation combines the concepts of direct liability and indirect liability, along with two different

135

types of potential violations – the National Do-Not-Call Rules and the Internal Do-Not-Call-Rules. It would be indecipherable from Plaintiff's formulation what exactly the jury found was a violation, and on what basis it found USHG liable.  Different elements and affirmative defenses apply to the two sets of "Rules," and without breaking the issues down, including whether the telephone calls even qualify as telephone solicitation calls and if Plaintiff consented, gave permission, or had an existing business relationship with USHA on any of the numerous telephone calls at issue (the answers to these questions will not necessarily be the same for each telephone call).  Will the jury have found direct liability or vicarious liability?  If the latter, on which basis? Defendants' proposed verdict form addresses these deficiencies and will ensure that the jury engages in the correct analysis and makes all necessary determinations, and will permit an opportunity to review the jury's verdict to ensure it is supported by the evidence presented at trial.

## **QUESTION 3**

Did USHealth Advisors, LLC, whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to the Class?

    [    ]  YES

    [    ]  NO

    *If Yes, please answer the following additional questions.*

    What amount, up to $500, do you award for each call or text to the Class for which USHealth Advisors, LLC is liable?

    $_____

### ***Defendants' Objections***

    As an initial matter, Defendants object to any trial on the merits moving forward prior to a determination of whether or not a class will be certified and, if so, what that class will be.  Federal

Rule of Civil Procedure 23, the rule against one-way intervention, and due process preclude a trial on the merits at this time.  Under settled law, prior to certification, absent class members are not parties to a lawsuit.  Defendants thus object to any verdict form that discusses or references a class, class claims or absent class members.  Defendants are participating in the procedures and deadlines set forth in DE 121 subject to the foregoing.

As is the case with the largely identical Questions 1 and 2, Plaintiff's Question 3 is overly simplistic and fails to provide the jury a framework to ensure it makes the necessary findings consistent with, and indeed required by, the law.  Plaintiff's formulation combines the concepts of direct liability and indirect liability, along with two different types of potential violations – the National Do-Not-Call Rules and the Internal Do-Not-Call-Rules.  It would be indecipherable from Plaintiff's formulation what exactly the jury found was a violation, and on what basis it found USHA liable.  Different elements and affirmative defenses apply to the two sets of "Rules," and without breaking the issues down, including whether the hundreds of thousands, and potentially millions, of telephone calls regarding absent class members even qualify as telephone solicitation calls and if any of the absent class members consented, gave permission, or had an existing business relationship with USHA on any of the numerous telephone calls at issue (of course, the answers to these questions will not necessarily be the same for each telephone call).  How can a jury possibly answer questions regarding hundreds of thousands of telephone calls regarding thousands of different people with differing and individualized evidence of consent, established business relationship, permission to be called in such a glib manner?  Will the jury have found direct liability or vicarious liability?  If the latter, on which basis, especially when there are conceivably thousands of purported principal-agent and even more sub-agent relationships that would have to be determined by the jury under federal common law agency principles.

Defendants' proposed verdict form addresses these deficiencies, to the extent that is even possible given such a dissimilar potential class where individualized questions predominate,  and will do a much better job of ensuring that the jury engages in the correct analysis and makes all necessary determinations (again, to the extent humanly possible), and will permit a far better opportunity to review the jury's verdict to ensure it is supported by the evidence presented at trial.

## QUESTION 4

Did USHealth Group, Inc., whether directly or through others acting on its behalf, violate the Telephone Consumer Protection Act as to the Class?

[    ]  YES

[    ]  NO

*If Yes, please answer the following additional questions.*

What amount, up to $500, do you award for each call or text to the Class for which USHealth Group, Inc. is liable?

$_____

### *Defendants' Objections*

As an initial matter, Defendants object to any trial on the merits moving forward prior to a determination of whether or not a class will be certified and, if so, what that class will be.  Federal Rule of Civil Procedure 23, the rule against one-way intervention, and due process preclude a trial on the merits at this time.  Under settled law, prior to certification, absent class members are not parties to a lawsuit.  Defendants thus object to any verdict form that discusses or references a class, class claims or absent class members.  Defendants are participating in the procedures and deadlines set forth in DE 121 subject to the foregoing.

As is the case with the largely identical Questions 1, 2, and 3, Plaintiff's Question 4 is overly simplistic and fails to provide the jury a framework to ensure it makes the necessary findings consistent with, and indeed required by, the law.  Plaintiff's formulation combines the concepts of direct liability and indirect liability, along with two different types of potential violations – the National Do-Not-Call Rules and the Internal Do-Not-Call-Rules.  It would be indecipherable from Plaintiff's formulation what exactly the jury found was a violation, and on what basis it found USHG liable.  Different elements and affirmative defenses apply to the two sets of "Rules," and without breaking the issues down, including whether the hundreds of thousands, and potentially millions, of telephone calls regarding absent class members even qualify as telephone solicitation calls and if any of the absent class members consented, gave permission, or had an existing business relationship with USHG on any of the numerous telephone calls at issue (of course, the answers to these questions will not necessarily be the same for each telephone call).  How can a jury possibly answer questions regarding hundreds of thousands of telephone calls regarding thousands of different people with differing and individualized evidence of consent, established business relationship, permission to be called in such a glib manner?  Will the jury have found direct liability or vicarious liability?  If the latter, on which basis, especially when there are conceivably thousands of purported principal-agent and even more sub-agent relationships that would have to be determined by the jury under federal common law agency principles. Defendants' proposed verdict form addresses these deficiencies, to the extent that is even possible given such a dissimilar potential class where individualized questions predominate,  and will do a much better job of ensuring that the jury engages in the correct analysis and makes all necessary determinations (again, to the extent humanly possible), and will permit a far better opportunity to review the jury's verdict to ensure it is supported by the evidence presented at trial.

_____       _____
        Date                          Jury Foreperson (signature)


                              _____
                                    Jury Foreperson (printed name)

# **EXHIBIT C**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS (FORT WORTH)

AARON HIRSCH, individually and on behalf
of all others similarly situated,

      Plaintiff,

            v.

USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC.,

      Defendants.

**CASE NO.:**  4:18-cv-00245-P

**CLASS ACTION**

# DEFENDANTS'
## PROPOSED VERDICT FORM[4]

---

[4] Defendants object to any trial on the merits moving forward prior to a determination of whether or not a class will be certified and, if so, what that class will be. Federal Rule of Civil Procedure 23, the rule against one-way intervention and due process preclude a trial on the merits at this time. For the same reasons, Defendants object to any instruction to or finding by the jury that discusses or references a class, class claims or absent class members.  In the absence of class certification, absent class members are not parties to a lawsuit and cannot be subject to any judgment. Defendants further object, generally, to any proposed jury instructions or jury determinations on issues that are part of Defendants' pending Motion for Summary Judgment. Defendants are participating in the procedures and deadlines set forth in DE 121 subject to the foregoing.

## PLAINTIFF'S CLAIMS - LIABILITY

### QUESTION 1

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that two or more telephone solicitations in a twelve-month period were made to him, as a residential telephone subscriber, on a residential telephone number that he had registered on the National Do-Not-Call Registry at least 31 days prior?  If yes, how many?

Number: _____

Yes _____   No _____   that he suffered an actual, concrete injury as a result of the telephone solicitations you found, if any, that Plaintiff received?

### QUESTION 2

**If you answered both parts of Question 1 with "yes," do you find . . .**

Yes _____   No _____   that Plaintiff consented or gave permission to make any of the telephone solicitations that were made to him?  If yes, please identify how many telephone solicitations Plaintiff consented or gave permission to call.

Number: _____

Yes _____   No _____   that Defendant USHEALTH Advisors LLC (also known as "USHA") had an established business relationship with Plaintiff?   If yes, please identify how many telephone solicitations were made pursuant to an established business relationship with Plaintiff?  *Do not include any telephone solicitations, if any, from your response to the previous item.*

Number: _____

### QUESTION 3

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that two or more telemarketing calls in a twelve-month period were made to him, as a residential telephone subscriber, on a residential telephone number that he had registered on USHA's Internal Do-Not-Call List at least 30 days prior (Count III)?  If yes, how many?

Number: _____

Yes _____   No _____   that, at the time any such telemarketing calls were made to Plaintiff, Defendants had failed to institute procedures for maintaining a list of people that asked to be placed on the company's internal do-not-call list and failed to provide training on that subject?  If the answer is "Yes," identify for which Defendant(s).

Yes _____   No _____   that Plaintiff suffered an actual, concrete injury as a result of the telemarketing calls you found, if any, that Plaintiff received?

## QUESTION 4

**If you answered all three parts of Question 3 with "yes," do you find . . .**

Yes _____   No _____   Plaintiff consented or gave permission to make any of the telemarketing calls that were made to him?  If yes, please identify how many telemarketing calls Plaintiff consented or gave permission to call.

Number: _____

Yes _____   No _____   that USHA had an established business relationship with Hirsch?   If yes, please identify how many telephone calls were made pursuant to an established business relationship with Hirsch.  *Do not include any telemarketing calls, if any, from your response to the previous item.*

Number: _____

## QUESTION 5

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that USHA physically placed or made any of the telephone calls to Plaintiff that you found to be in violation of the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?  If the answer to this question is "yes," please identify how many such telephone calls USHA physically placed or made to Plaintiff (if a telephone call violated both sets of rules, it counts once).

Number: _____

Yes _____   No _____   that Defendant USHEALTH Group, Inc. (also known as "USHG") physically placed or made any of the telephone calls to Plaintiff that you found to be in violation of the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?  If the answer to this question is "yes," please identify how many telephone such calls USHG physically placed or made to Plaintiff (if a telephone call violated both sets of rules, it counts once).

Number: _____

144

## QUESTION 6

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that USHA had control, or the right to control, the means and manner by which the independent insurance advisors or other persons who contacted Plaintiff made or initiated the telephone calls to Plaintiff?

**If your answer to the above item is "no," please proceed to Question 7**.

Yes _____   No _____   that the scope of the authority granted by USHA to the independent insurance advisors or other persons who made or initiated telephone calls to Plaintiff included permission to violate the  National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes _____   No _____   that, with respect to the independent insurance advisors or other persons who made or initiated telephone calls to Plaintiff, that USHA directly made a representation, in conduct or words, to Plaintiff that led him to believe that the callers were authorized by USHA to make telephone calls in violation of the  National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes _____   No _____   that a benefit was conferred upon USHA from Plaintiff as a result of the telephone calls independent insurance advisors or other persons made or initiated to Plaintiff?

Yes _____   No _____   **(if your answer to the above item is "yes")** that USHA knew or should have known that such calls to Plaintiff were in violation the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

how many telephone calls the legal agents of USHA physically placed or made to Plaintiff that you found to be in violation of the National Do-Not-Call Rules and/or the Internal Do-Not-Call Rules (if a telephone call violated both sets of rules, it counts once)?

Number:_____

## QUESTION 7

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that USHG had control, or the right to control, the means and manner by which the independent insurance advisors or other persons who contacted Plaintiff made or initiated the telephone calls to Plaintiff?

**If your answer to the above item is "no," please proceed to Question 8.**

Yes _____   No _____   that the scope of the authority granted by USHG to the independent insurance advisors or other persons who made or initiated telephone calls to Plaintiff included permission to violate the  National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes _____   No _____   that, with respect to the independent insurance advisors or other persons who made or initiated telephone calls to Plaintiff, that USHG directly made a representation, in conduct or words, to Plaintiff that led him to believe that the callers were authorized by USHG to make

145

telephone calls in violation of the  National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes _____   No _____   that a benefit was conferred upon USHG from Plaintiff as a result of the telephone calls independent insurance advisors or other persons made or initiated to Plaintiff?

Yes _____   No _____   **(if your answer to the above item is "yes")** that USHG knew or should have known that such calls to Plaintiff were in violation the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

how many telephone calls the legal agents of USHG physically placed or made to Plaintiff that you found to be in violation of the National Do-Not-Call Rules and/or the Internal Do-Not-Call Rules (if a telephone call violated both sets of rules, it counts once)?

Number: _____

## CLASS CLAIMS – LIABILITY

### QUESTION 8

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that two or more telephone solicitations in a twelve-month period were made to absent class member residential telephone subscribers who had registered their residential telephone number that they had registered on the National Do-Not-Call Registry at least 31 days prior? If yes, how many?

Number: _____

Yes _____   No _____   **(if your answer to the above item is "yes")** that all of the absent class members suffered an actual, concrete injury as a result of the telephone solicitations you found, if any, that they received?  If not, please identify by categories which absent class members did not suffer an actual, concrete injury.

Identification: _____

### QUESTION 9

**If you answered the first item of Question 8 with "yes," do you find . . .**

Yes _____   No _____   that an absent class member consented or gave permission to make any of the telephone solicitations that were made to him or her?  If yes, please identify to how many telephone solicitations an absent class member consented or gave permission to call.

Number: _____

Yes _____   No _____   that USHA had an established business relationship with an absent class member?   If yes, please identify how many telephone solicitations were made pursuant to an established business relationship with an absent class member.

Number: _____

Yes _____   No _____   that the calling party had a personal relationship with an absent class member?   If yes, please identify how many telephone solicitations were made by a calling party with a personal relationship with an absent class member.

Number: _____

147

## QUESTION 10

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that two or more telemarketing calls in a twelve-month period were made to absent class member residential telephone subscribers who had registered their residential telephone number on USHA's Internal Do-Not-Call List at least 30 days prior?  If yes, how many?

Number: _____

Yes _____   No _____   that, at the time any such telemarketing calls were made to absent class members, Defendants had not instituted procedures for maintaining a list of people that asked to be placed on the company's internal do-not-call list and providing training on that subject?  If the answer is "Yes," identify for which Defendant(s).

Yes _____   No _____   that all of the absent class members suffered an actual, concrete injury as a result of the telemarketing calls you found, if any, that they received?  If not, please identify by categories which absent class members did not suffer an actual, concrete injury.

Identification: _____

## QUESTION 11

**If you answered the first two parts of Question 10 with "yes," do you find . . .**

Yes _____   No _____   that an absent class member consented or gave permission to make any of the telemarketing calls that were made to him or her?  If yes, please identify how many telemarketing calls absent class members consented or gave permission to call.

Number: _____

Yes _____   No _____   that USHA had an established business relationship with an absent class member?   If yes, please identify how many telemarketing calls were made pursuant to an established business relationship with an absent class member.

Number: _____

148

## **QUESTION 12**

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes \_\_\_\_    No \_\_\_\_    that USHA physically placed or made any of the telephone calls to the absent class members that you found to be in violation of the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?  If the answer to this question is "yes," please identify how many such telephone calls USHA physically placed or made to the absent class members (if a telephone call violated both sets of rules, it counts once).

Number: _____

Yes \_\_\_\_    No \_\_\_\_    that USHG physically placed or made any of the telephone calls to the absent class members that you found to be in violation of the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?  If the answer to this question is "yes," please identify how many such telephone calls USHG physically placed or made to the absent class members (if a telephone call violated both sets of rules, it counts once).

Number: _____

## **QUESTION 13**

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes \_\_\_\_    No \_\_\_\_    that USHA had control, or the right to control, the means and manner by which the independent insurance advisors or other persons who contacted the absent class members made or initiated the telephone calls to the absent class members?

**If your answer to the above item is "no," please proceed to Question 14**.

Yes \_\_\_\_    No \_\_\_\_    that the scope of the authority granted by USHA to the independent insurance advisors or other persons who made or initiated telephone calls to the absent class members included permission to violate the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes \_\_\_\_    No \_\_\_\_    that, with respect to the independent insurance advisors or other persons who made or initiated telephone calls to the absent class members, that USHA directly made a representation, in conduct or words, to the absent class members that led any of them to believe that the callers were authorized by USHA to make telephone calls in violation of the  National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes \_\_\_\_    No \_\_\_\_    that a benefit was conferred upon USHA from the absent class members as a result of the telephone calls independent insurance advisors or other persons made or initiated to the absent class members?

149

Yes _____   No _____   **(if your answer to the above item is "yes")** that USHA accepted a benefit from the absent class members as a result of those telephone calls when USHA knew or should have known that such calls to the absent class members were in violation the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

how many telephone calls the legal agents of USHA physically placed or made to the absent class members that you found to be in violation of the National Do-Not-Call Rules and/or the Internal Do-Not-Call Rules (if a telephone call violated both sets of rules, it counts once).

Number: _____

## QUESTION 14

Did the Plaintiff, Aaron Hirsch, prove the following?

Yes _____   No _____   that USHG had control, or the right to control, the means and manner by which the independent insurance advisors or other persons who contacted the absent class members made or initiated the telephone calls to the absent class members?

**If your answer to the above item is "no," please proceed to Question 15**.

Yes _____   No _____   that the scope of the authority granted by USHG to the independent insurance advisors or other persons who made or initiated telephone calls to the absent class members included permission to violate the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes _____   No _____   that, with respect to the independent insurance advisors or other persons who made or initiated telephone calls to the absent class members, that USHG directly made a representation, in conduct or words, to the absent class members that led any of them to believe that the callers were authorized by USHG to make telephone calls in violation of the  National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

Yes _____   No _____   that a benefit was conferred upon USHG from the absent class members as a result of the telephone calls independent insurance advisors or other persons made or initiated to the absent class members?

Yes _____   No _____   **(if your answer to the above item is "yes")** that USHG accepted a benefit from the absent class members as a result of those telephone calls when USHG knew or should have known that such calls to the absent class members were in violation the National Do-Not-Call Rules or the Internal Do-Not-Call Rules?

how many telephone calls the legal agents of USHG physically placed or made to the absent class members that you found to be in violation of the National Do-Not-Call Rules and/or the Internal Do-Not-Call Rules (if a telephone call violated both sets of rules, it counts once).

Number: _____

## AFFIRMATIVE DEFENSES

## QUESTION 15

If you answered "yes" to both parts of Question 1, and found that any Defendant violated the National Do-Not-Call Rules with respect to any telephone solicitation to Plaintiff Aaron Hirsch, did that Defendant prove the following (please answer for each applicable Defendant)? **Note**:  any telephone solicitations you identified in response to the items in Question 2 should not be included in answering these questions.

Yes _____   No _____   That the telephone solicitation in violation of the National Do-Not-Call Rules was the result of an error?  If the answer with respect to any violative telephone solicitation is "yes," please identify by date, name, or category the telephone solicitations to which your answer applies.

Identification: _____

**If your answer to the above item is "no," please proceed to Question 16**.

Yes _____   No _____   That the Defendant established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the National Do-Not-Call Rules.

**If your answers to both items of Question 15 are "yes,"** to how many of the telephone solicitations made to Plaintiff do you find the "yes" answers apply?

Number: _____

## QUESTION 16

Did Defendants prove the following?  **Note**:  any telephone calls you identified in response to the items in Question 2 or Question 4 should not be included in answering these questions.

Yes _____   No _____   that Plaintiff is equally responsible for the violations that he seeks to address in this lawsuit and that the policy goals of the TCPA were threatened by Plaintiff's conduct?  If yes, please identify the number of telephone calls for which you find Plaintiff is equally responsible for any violations, and Defendants cannot be held liable.

Number: _____

Yes _____   No _____   that Plaintiff made false misrepresentations to the Defendants, including concealing a material fact from Defendants?  If yes, please identify the number of telephone calls for which you find Plaintiff made false representations, *but without double-counting any telephone calls that you already identified in your response to the item above, if any.*

Number: _____

151

Yes _____   No _____   that Plaintiff ratified receipt of the telephone calls he complains about in this case through his conduct?  If yes, please identify the number of telephone calls for which you find Plaintiff ratified receipt, *but without double-counting any telephone calls that you already identified in your responses to the two items above, if any.*

Number: _____

## QUESTION 17

If you answered "yes" to the first item of Question 8, and found that any Defendant violated the National Do-Not-Call Rules with respect to any telephone solicitation to an absent class member, did that Defendant prove the following (please answer for each applicable Defendant)?  **Note**:  any telephone solicitations you identified in response to the items in Question 9 should not be included in answering these questions.

Yes _____   No _____   That the telephone solicitation in violation of the National Do-Not-Call Rules was the result of an error?  If the answer with respect to any violative telephone solicitation is "yes," please identify by date, name, or category the telephone solicitations to which your answer applies.

Identification: _____

**If your answer to the above item is "no," please proceed to Question 18**.

Yes _____   No _____   That the Defendant established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the National Do-Not-Call Rules.

**If your answers to both items of Question 18 are "yes,"** to how many of the telephone solicitations made to Plaintiff do you find the "yes" answers apply?

Number: _____

152

**QUESTION 18**

Did Defendants prove that any class members entered into a valid agreement to arbitrate the claims asserted on their behalf in this case?  If your answer is "yes," please identify by name or category those absent class members, and the number of telephone calls you found were made to those absent class members in violation of the National Do-Not-Call Rules and/or the Internal Do-Not-Call Rules (if a telephone call violated both sets of rules, it counts once)

Yes _____          No _____

Identification: _____

Number of Telephone Calls: _____

## <u>DAMAGES</u>

## <u>QUESTION 19</u>

**If you answered "yes" to (a) both items of Question 1 or (b) all three items of Question 3**, and found that Plaintiff has proven telephone calls were made to him as a residential telephone subscriber on a residential telephone number that he had registered on the National Do-Not-Call Registry or on USHA's Internal Do-Not-Call-List for which Plaintiff may be able to recover damages, please answer the following questions.

What amount, up to $500, do you award for each telephone call to Plaintiff for which USHA is liable?

$_____

What amount, up to $500, do you award for each telephone call to Plaintiff for which USHG is liable?

$_____

## <u>QUESTION 20</u>

**If you answered "yes" to (a) the first item of Question 8 or (b) the first two items of Question 10**, and found that Plaintiff has proven telephone calls were made to absent class member residential telephone subscribers who had registered their residential telephone number on the National Do-Not-Call Registry or on USHA's Internal Do-Not-Call-List for which an absent class member may be able to recover damages, please answer the following questions.

What amount, up to $500, do you award for each telephone call to an absent class member for which USHA is liable?

$_____

What amount, up to $500, do you award for each telephone call to an absent class member for which USHG is liable?

$_____

## <u>DEFENDANTS' COUNTERCLAIM</u>

### <u>QUESTION 21</u>

Did either Defendant prove that the Plaintiff, Aaron Hirsch, committed fraud?

Yes     _____          No     _____

### <u>QUESTION 22</u>

If your answer to Question 21 is "yes," how much in actual damages do you award the Defendants?

USHA:  $_____

USHG:  $_____

### <u>QUESTION 23</u>

Did either Defendant prove by clear and convincing evidence that Plaintiff committed fraud and that the harm that Defendant suffered was a result  of Plaintiff's fraud?

Yes     _____          No     _____

### <u>QUESTION 24</u>

If your answer to Question 23 is "yes," how much in exemplary damages do you award the Defendants?

USHA:  $_____

USHG:  $_____


_____                _____
Date                                                 Jury Foreperson (signature)




                                                        _____

                                                        Jury Foreperson (printed name)

**Proposed Verdict Form**

_____ Given
_____ Rejected
_____ Withdrawn
_____ Objected to

# **<u>EXHIBIT D</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **AARON HIRSCH, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:18-cv-245-P** |
| **USHEALTH ADVISORS, LLC and USHEALTH GROUP, INC.,** | |
| **Defendants.** | |

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED VERDICT FORM**

Plaintiff Aaron Hirsch objects to Defendants' Proposed Verdict Form, submitted as Exhibit C to the parties' Agreed Charge. The special questions that Defendants propose for the jury are confusing, conflicting, and misleading. Those questions are also ambiguous, duplicitous, and misstate the law. The purpose of a general verdict form with interrogatories is to assist the jury by framing the issues with clear, consistent, and straightforward questions. *See, e.g.*, *Stowe v. Amtrack*, 793 F. Supp. 2d 549, 562 n.11 (E.D.N.Y. 2011) (quoted below); *Cooper v. Paychex, Inc.*, 960 F. Supp. 966, 973 (E.D. Va. 1997) (same). Defendants' proposed verdict form does not. It should be rejected.

As a threshold matter, the law has long been settled that when separate issues are submitted to the jury in a verdict form, the issues must be framed in a manner that avoids "conflicts and inconsistencies in the issues as framed." *Martin v. Gulf States Utilities Co.*, 344 F.2d 34, 37 (5th Cir. 1965) (reversing and remanding for new trial because "the conclusion is inescapable that the conflicts and inconsistencies in the issues as framed made it impossible for the jury to render a

158

verdict in accordance with the convictions which they held"); *see also Wright v. Kroeger Corp*., 422 F.2d 176, 178 (5th Cir. 1970) (reversing and remanding because the issues as framed were "so conflicting and inconsistent that they cannot be reconciled"); *Prudential Ins. Co. of Am. v. Morrow*, 339 F.2d 411, 412 (5th Cir. 1964) (reversing and remanding because the issues as framed were "duplicitous and confusing"); *Jackson v. King*, 223 F.2d 714, 718 (5th Cir. 1955) (reversing and remanding because "the form of the special issues submitted to the jury was misleading").

Collecting cases, Wright & Miller likewise observes, "The jury's findings on the essential issues in the case must be certain and definite. An ambiguous or unclear response is always a source of judicial trouble and may render the judgment void. Thus, the immediate elimination upon discovery of any ambiguity in the questions by the trial judge is desirable." 9B Charles Allan Wright & Arthur C. Miller, *Federal Practice & Procedure* § 2510 (3d ed. 2020 update) (footnotes omitted). The Court should therefore eliminate questions that are "conflicting and inconsistent." *Wright*, 422 F.2d at 178. The Court should likewise eliminate questions that are "duplicitous and confusing." *Morrow*, 339 F.2d at 412. Instead, the Court should provide questions to the jury that are clear, consistent, and straightforward.

Here, Defendants' proposed questions are far from clear, consistent, and straightforward. Defendants' proposed Question 1 is illustrative. It first asks the jury to answer whether Plaintiff Hirsch has proven that he received two or more calls in violation of the TCPA. It then asks whether he has proven he suffered "an actual, concrete injury as a result." This is nonsensical. The telephone calls *are* the actual, concrete injury. *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264-65 (11th Cir. 2019) ("[T]he receipt of more than one unwanted phone call is enough to establish injury in fact."); *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 653 (4th Cir. 2019) (allegation that "telemarketer disregards the [NDNC] registry and actually places multiple calls"

satisfies injury-in-fact), *cert. denied*, 140 S. Ct. 676 (2019); *Susinno v. Work Out World Inc*., 862 F.3d 346, 351-52 (3d Cir. 2017) (receipt of a single unsolicited call to a cell phone and a voicemail recording constituted an injury in fact); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls" constitute TCPA injury-in-fact because "by their nature, [they] invade the privacy and disturb the solitude of their recipients."); *Jamison v. Esurance Ins. Servs., Inc.*, No. 15-cv-2484, 2016 WL 320646, at *2-3 (N.D. Tex. Jan. 27, 2016) (finding that the plaintiff adequately alleged TCPA injury because the plaintiff suffered an occupation of his telephone line).

This pattern of confusing, conflicting, and misleading framing of the issues is repeated, and compounded, throughout Defendants' proposed verdict form. Question 2, for instance, attempts to build upon the defective foundation laid in Question 1. It begins "If you answered both parts of Question 1 with 'yes,' do you find …." For the reasons discussed above, however, the two "parts" of Defendants' proposed Question 1 are duplicitous, confusing, and misstate the law. Question 2 incorporates all these defects – and adds to them. And it further misstates the law, asking if Plaintiff "consented or gave permission to make any of the telephone solicitations." This presents an unreasonable risk of misleading the jury, since the law requires that consent or "permission *must* be evidenced by a *signed, written agreement* between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed". 47 C.F.R. § 64.1200(c)(2)(ii) (emphasis added). Defendants' proposed Question 2 ignores this blackletter requirement.

Question 3 continues the pattern. It too asks the jury to answer whether Plaintiff has proven that he received two or more calls in violation of the TCPA (based on violations of Defendants'

IDNC). It too then asks whether he has proven he suffered "an actual, concrete injury as a result." Again, nonsensical, as the telephone calls *are* the actual, concrete injury.

Question 4 attempts to build upon the fatally flawed foundation laid in Question 3. It begins "If you answered all three parts of Question 3 with 'yes,' do you find …." For the reasons discussed above, however, the "parts" of Defendants' Question 3 are duplicitous, confusing, and misstate the law. Defendants' Question 4 also suffers from several other fatal flaws. It seeks to present an "established business relationship defense" to the jury. Defendants have not pleaded "established business relationship" or "EBR" as an affirmative defense (Dkt. 43) and have not alleged that they had an "established business relationship" with Plaintiff Aaron Hirsch or any member of the class. Defendants have not produced discovery to show that Defendants had an "established business relationship" with Plaintiff or any member of the class. To the extent that such an affirmative defense exists, it is waived for the failure to assert it. Moreover, Defendants' proposed instruction exceeds and mischaracterizes the description of "established business relationship" in 47 C.F.R. § 64.1200(c)(2)(ii), which expressly requires and limits such a relationship to those where the caller "obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed."

Questions 5, 6, and 7 continue the pattern of duplicitous and confusing questions. Improperly attempting to invade the province of the jury and unnecessarily micromanage, these three questions have at least 16 sub-parts. Duplicative and confusing, they also misstate the law on Defendants' responsibility for TCPA violations, as well as actual agency, apparent agency, and ratification.

Questions 8 through 14 then repeat the litany of errors discussed above for the class, repeating them all for the class claims. Questions 15 through 18 repeat the litany of errors discussed above for Defendants' affirmative defenses. And Questions 19 *et seq.* repeat the litany of errors discussed above for damages and Defendants' counterclaim.

Confusing, conflicting, and misleading throughout, Defendants' proposed verdict sheet presents an unreasonable risk of confusing and misleading the jury, as well as leading to an inconsistent verdict. They should be squarely rejected in favor of Plaintiff's clear, consistent, and straightforward questions.

The purpose of a verdict form with interrogatories, as noted, is to assist the jury by framing the issues with clear, concise, straightforward questions. This commonsense rule applies with full force to TCPA cases. In recent TCPA cases, several courts have thus used a concise jury verdict form, each of which is, effectively, on all fours with the one proposed by Plaintiff Hirsch in this case. *See attached* Exhibits D-1 (Dkt. 439, entered Apr. 5, 2018, in *Krakauer v. Dish Network LLC*, No. 1:14-cv-00333 (M.D.N.C.)); D-2 (Dkt. 282, entered Aug. 12, 2019, in *Wakefield v. Visalus, Inc.*, No. 3:15-cv-1857-SI (D. Or.)); D-3 (Dkt. 347, entered May 13, 2019, in *Perez v. Rash-Curtis & Assoc.*, No. 4:16-cv-3396-YGR (N.D. Cal.)).

As a sister court has observed, "A jury form is intended to assist the jury in analyzing and presenting its decision." *Cooper v. Paychex, Inc.*, 960 F. Supp. 966, 973 (E.D. Va. 1997). In this, the goal is straightforward: "keep the special verdict sheet as simple as possible." *Stowe v. Amtrack*, 793 F. Supp. 2d 549, 562 n.11 (E.D.N.Y. 2011); *see also Cooper*, 960 F. Supp. at 973 ("The jury form submitted by [the defendant] would have failed that goal due to its length and its confusing structure."). Defendants' voluminous, convoluted questions would inevitably confuse the jury far more than they would provide assistance. The goal of any verdict form is to assist the

162

jury in rendering its verdict, not to make the process as difficult and confusing as possible.

Defendants' proposed verdict form should be rejected.

Dated:  August 24, 2020                              Respectfully submitted,


                                                    */s/ Michael Dell'Angelo*
                                                    Michael Dell'Angelo
                                                    Lane L. Vines
                                                    **BERGER MONTAGUE PC**
                                                    1818 Market Street, Suite 3600
                                                    Philadelphia, PA  19103
                                                    Telephone: (215) 875-3000
                                                    mdellangelo@bm.net

                                                    *Attorneys for Plaintiff and the Proposed Class*

163

# **EXHIBIT D-1**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED
IN THIS OFFICE
JAN 19 2017
Clerk U.S. District Court
Greensboro, NC
BY

THOMAS H. KRAKAUER,                    )
                                       )
            Plaintiff,                 )
                                       )
       v.                              )        1:14-CV-333
                                       )
DISH NETWORK L.L.C.,                   )
                                       )
            Defendant.                 )

## VERDICT SHEET

1.   Was SSN acting as Dish's agent when it made the telephone calls at issue from
May 11, 2010, through August 1, 2011?

     [ ✓ ] YES

     [   ] NO

           *If Yes, continue to Question 2.  If No, skip all other questions and sign the
           verdict sheet.*

2.   Did SSN make and class members receive at least two telephone solicitations to a
     residential number in any 12-month period by or on behalf of Dish, when their
     telephone numbers were listed on the National Do Not Call Registry?

     [ ✓ ] YES as to Dr. Krakauer and all class members

           *If Yes, continue to Question 3 and skip the following questions.*

     [   ] YES as to Dr. Krakauer and all class members except the following, whose
           numbers plaintiff has not proven were residential:

           [   ] Telephone numbers that LexisNexis always identifies as
                 "unknown"

           [   ] Telephone numbers that LexisNexis identifies as residential before
                 May 11, 2010 or after August 1, 2011

165

[   ]   Telephone numbers that LexisNexis identifies as "unknown" in the
        May 2010 to August 2011 time period that the calls were made but
        identifies differently at other times

[   ]   Telephone numbers that LexisNexis identifies as both residential
        and "unknown"

[   ]   Telephone numbers that LexisNexis always identifies as residential,
        including in the May 2010 to August 2011 time period that the calls
        were made

[   ]   Telephone numbers that LexisNexis identifies as cellular and
        possibly cellular

[   ]   NO

        *If you answer Yes in whole or in part, also answer Question 3.  If you
        answer No to Question 2, skip Question 3 and sign the verdict sheet.*

3.   What amount, up to $500, do you award for each call made in violation of the
     TCPA?

     $ _400.00_____

     _Robt S Jackson_____        _01/19/2017_____
     Foreperson                   Date

2

# **EXHIBIT D-2**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD, individually and on behalf of a class of others similarly situated,** | Case No. 3:15-cv-1857-SI |
| Plaintiff, | **SPECIAL VERDICT** |
| v. | |
| **VISALUS, INC.,** | |
| Defendant. | |

**WE, THE JURY**, being first duly sworn, unanimously find as follows:

### COUNT ONE

### Ms. Wakefield's Individual Claim

1.      Did the Plaintiff, Ms. Wakefield, prove by a preponderance of the evidence that the Defendant, ViSalus, Inc., made or initiated at least one telemarketing call using an artificial or prerecorded voice to a residential telephone line (residential landline) belonging or registered to Ms. Wakefield, in violation of the TCPA?

YES ___✓___          NO _____

*If you answered "Yes" to Question No. 1, please proceed to Question No. 2. If you answered "No" to Question No. 1, please skip Question No. 2 and proceed to Question No. 3.*

PAGE 1 – SPECIAL VERDICT

2.    How many telemarketing calls using an artificial or prerecorded voice made or initiated to a residential telephone line (residential landline) belonging or registered to Ms. Wakefield did the Plaintiff prove by a preponderance of the evidence?

_____ 4 _____ (number)

## COUNT TWO

### Class Claim

A.    Mobile (Cellular) Telephones and Residential Landlines **Combined**

3.    Did the Plaintiff, as Class Representative, prove by a preponderance of the evidence that the Defendant, ViSalus, Inc., made or initiated at least one telemarketing call using an artificial or prerecorded voice to either: (a) a mobile (or cellular) telephone or (b) a residential telephone line (residential landline), belonging or registered to one or more class members other than Ms. Wakefield, in violation of the TCPA?

YES ___✓___          NO _____

*If you answered "Yes" to Question No. 3, please proceed to Question No. 4. If you answered "No" to Question No. 3, please skip all remaining questions and have the presiding juror date and sign this form.*

4.    How many telemarketing calls using an artificial or prerecorded voice made or initiated by the Defendant, ViSalus, Inc., to either: (a) a mobile (or cellular) telephone or (b) a residential telephone line (residential landline), belonging or registered to one or more class members other than Ms. Wakefield, in violation of the TCPA, did the Plaintiff, as Class Representative, prove by a preponderance of the evidence?

1,850,436 _____ (number)

PAGE 2 – SPECIAL VERDICT

**B.    Mobile (Cellular) Telephones Underlined Only**

5.    Did the Plaintiff, as Class Representative, prove by a preponderance of the evidence that the Defendant, ViSalus, Inc., made or initiated at least one telemarketing call using an artificial or prerecorded voice to a mobile (or cellular) telephone belonging or registered to one or more class members other than Ms. Wakefield, in violation of the TCPA?

YES ___✓___          NO _____

*If you answered "Yes" to Question No. 5, please proceed to Question No. 6. If you answered "No" to Question No. 5, please skip Question No. 6 and proceed to Question No. 7.*

6.    How many telemarketing calls using an artificial or prerecorded voice made or initiated by the Defendant, ViSalus, Inc., to a mobile (or cellular) telephone belonging or registered to one or more class members other than Ms. Wakefield, in violation of the TCPA, did the Plaintiff, as Class Representative, prove by a preponderance of the evidence?

 *We cannot tell* (number)

**C.    Residential Landline Telephones Underlined Only**

7.    Did the Plaintiff, as Class Representative, prove by a preponderance of the evidence that the Defendant, ViSalus, Inc., made or initiated at least one telemarketing call using an artificial or prerecorded voice to a residential telephone line (residential landline) belonging or registered to one or more class members other than Ms. Wakefield, in violation of the TCPA?

YES ___✓___          NO _____

*If you answered "Yes" to Question No. 7, please proceed to Question No. 8. If you answered "No" to Question No. 7, please skip Question No. 8 and have the presiding juror date and sign this form.*

PAGE 3 – SPECIAL VERDICT

8.      How many telemarketing calls using an artificial or prerecorded voice made or
initiated by the Defendant, ViSalus, Inc., to a residential telephone line (residential landline)
belonging or registered to one or more class members other than Ms. Wakefield, in violation of
the TCPA, did the Plaintiff, as Class Representative, prove by a preponderance of the evidence?

_We cannot tell_ (number)

*Your deliberations are now complete. Please have the presiding juror date and sign this form
and inform the Courtroom Deputy that you are ready to return to the Courtroom.*

DATED this __12th__ day of April, 2019.

PAGE 4 – SPECIAL VERDICT

# **<u>EXHIBIT D-3</u>**

**F I L E D**

MAY 1 3 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1

2

3              UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5

6   IGNACIO PEREZ, ET AL.,                CASE NO. 16-cv-03396-YGR

7              Plaintiffs,                CLASS ACTION
                                          VERDICT FORM
8        vs.

9   RASH CURTIS & ASSOCIATES,

10             Defendant.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**WE, THE JURY IN THE ABOVE-ENTITLED CASE,** unanimously render the following

verdicts in accordance with the instructions provided by the Court:

**A. On Plaintiff Perez's individual claims under the <u>Telephone Consumer Protection</u>**
**<u>Act</u>:**

1. Did Rash Curtis call Plaintiff Ignacio Perez on his cellular telephone during the class
   period with the Global Connect dialer?

   ⎯⎯⎯X⎯⎯⎯          ⎯⎯⎯⎯⎯⎯
         Yes                      No

   **If you answered "no" to Question No. 1, skip Question Nos. 2 and 3 and proceed**
   **to Question No. 4.  If you answered "yes" to Question No. 1, answer Question**
   **Nos. 2 and 3.**

2. How many times did Rash Curtis call Plaintiff Ignacio Perez on his cellular telephone
   during the class period with the Global Connect dialer?

   ⎯⎯⎯⎯14⎯⎯⎯⎯⎯⎯⎯

3. How many of the calls in your answer to Question No. 2 were made using an artificial
   or prerecorded voice?

   ⎯⎯⎯⎯14⎯⎯⎯⎯⎯⎯⎯

**B. On Class Members' claims under the <u>Telephone Consumer Protection Act</u>, with**
**respect to defendant's use of the Global Connect Dialer:**

4. Did Rash Curtis make calls with its Global Connect dialer to Class Members' cellular
   telephone numbers obtained through skip-tracing during the class period without their
   prior express consent?



   ⎯⎯⎯X⎯⎯⎯          ⎯⎯⎯⎯⎯⎯
         Yes                      No

VERDICT FORM                                                        NO. 4:16-CV-03396-YGR

174

**If you answered "no" to Question No. 4, skip Question Nos. 5 and 6 and proceed to Question No. 7.  If you answered "yes" to Question No. 4, answer Question Nos. 5 and 6.**

5. State the number of calls Rash Curtis made with its Global Connect dialer to Class Members' cellular telephone numbers during the class period without their prior express consent:

_501,043_

6. How many of the calls in your answer to Question No. 5 were made using an artificial or prerecorded voice?

_501,043_

**C. On Class Members' claims under the <u>Telephone Consumer Protection Act</u>, with respect to defendant's use of the VIC Dialer:**

7. Did Rash Curtis make calls with its VIC dialer to Class Members' cellular telephone numbers obtained through skip-tracing during the class period without their prior express consent?

_X_              _____
Yes                  No

**If you answered "no" to Question No. 7, skip Question Nos. 8 and 9 and proceed to Question No. 10.  If you answered "yes" to Question No. 4, answer Question Nos. 8 and 9.**

8. State the number of calls Rash Curtis made with its VIC dialer to Class Members' cellular telephone numbers during the class period without their prior express consent:

_2,591_

VERDICT FORM

·175·

No. 4:16-CV-03396-YGR

*United States District Court*
*Northern District of California*

9.  How many of the calls in your answer to Question No. 8 were made using an artificial or prerecorded voice?

_____2,591_____

**D.  On Class Members' claims under the <u>Telephone Consumer Protection Act</u>, with respect to defendant's use of the TCN Dialer:**

10. Did Rash Curtis make calls with its TCN dialer to Class Members' cellular telephone numbers obtained through skip-tracing during the class period without their prior express consent?

_____X_____            _____

Yes                        No

**If you answered "no" to Question No. 10, you are finished.  If you answered "yes" to Question No. 10, answer Question No. 11.**

11. State the number of calls Rash Curtis made with its TCN dialer to Class Members' cellular telephone numbers during the class period without their prior express consent:

_____31,064_____

**Please sign and date this verdict form, then return to the Court.**

Dated: _____5/13/19_____

3
_____
FOREPERSON NUMBER

_____
FOREPERSON SIGNATURE

Dated:  August 24, 2020                                Respectfully submitted,


/s/  *Michael Dell'Angelo*                             /s/  *Jeffrey A. Backman*
Michael Dell'Angelo                                    Jeffrey A. Backman
Lane L. Vines                                          Florida Bar No. 662501
BERGER MONTAGUE PC                                     Admitted *Pro Hac Vice*
1818 Market Street, Suite 3600                         GREENSPOON MARDER, LLP
Philadelphia, PA 19103                                 200 East Broward Boulevard, Suite 1800
Telephone: (215) 875-3000                              Fort Lauderdale, FL 33301
Facsimile: (215) 875-4604                              Telephone: (954) 491-1120
mdellangelo@bm.net                                     Facsimile: (954) 213-0140
lvines@bm.net                                          jeffrey.backman@gmlaw.com
                                                       khia.joseph@gmlaw.com
Max F. Maccoby
WASHINGTON GLOBAL LAW GROUP PLLC                       Daniel L. Bates
1701 Pennsylvania Avenue, NW, Suite 200                Texas Bar No. 01899900
Washington, D.C. 20006                                 DECKER JONES, P.C.
Telephone: (202) 248-5439                              801 Cherry Street, Suite 2000, Unit #46
Facsimile: (202) 580-6559                              Fort Worth, TX 76102
maccoby@washglobal-law.com                             Telephone: (817) 336-2400
                                                       Facsimile: (817) 336-2181
Jamshyd (Jim) M. Zadeh                                 dbates@deckerjones.com
Texas Bar No. 222239000
LAW OFFICES OF JIM ZADEH, P.C.                         *Attorneys for Defendants USHEALTH*
1555 Rio Grande Avenue                                 *Advisors, LLC and USHEALTH Group,*
Fort Worth, TX  76102                                  *Inc.*
Telephone: (817) 335-5100
jim@zadehfirm.com


Warren T. Burns, Texas Bar No. 24053119
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com


*Attorneys for Plaintiff and*
*the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically filed the foregoing Agreed Charge with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered on the CM/ECF system for this matter, and also, in accord with the Amended Scheduling Order (Dkt. 121), sent an MS-Word version (Word-Perfect compatible) to the Court and counsel for defendants via electronic mail:

Honorable Mark T. Pittman
United States District Judge
United States District Court
  for the Northern District of Texas
United States Courthouse
501 West 10th Street, Room 202A
Fort Worth, Texas 76102-3673
pittman_orders@txnd.uscourts.gov

Daniel L. Bates
Decker Jones, P.C.
801 Cherry Street, Unit #46
Burnett Plaza, Suite 2000
Fort Worth, TX  76102
dbates@deckerjones.com
ggosai@deckerjones.com

Jeffrey A. Backman
Gregg Strock
Khia Joseph
Greenspoon Marder
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL  33301
jeffrey.backman@gmlaw.com
gregg.strock@gmlaw.com
khia.joseph@gmlaw.com

*Attorneys for USHealth Group, Inc. and USHealth Advisors, LLC*

/s/ Michael Dell'Angelo
Michael Dell'Angelo

178