## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **AARON HIRSCH, ET AL.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00245-P** |
| | § | |
| **USHEALTH ADVISORS, LLC, ET** | § | |
| **AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION AND ORDER

Plaintiff/Counterclaim Defendant Aaron Hirsch brings this case under the Telephone Consumer Protection Act (TCPA), which prohibits certain telephone solicitations to residential phones after the number is listed on either a national or internal do-not-call list. Hirsch alleges Defendants/Counterclaim Plaintiffs USHealth Advisors, LLC (USHA) and USHealth Group, Inc. (USGA) (collectively, Defendants) and their agents, after he listed his number on both do-not-call lists, solicited health insurance to his cell phone. Defendants deny this allegation and counterclaim that Hirsch fraudulently represented his interest in Defendants' product—repeatedly inveigling Defendants' agents to call him—solely to bring this TCPA claim.

Before the Court is Hirsch's Motion for Class Certification and briefs and appendixes in support (ECF Nos. 176–180), Defendants' Opposition to Plaintiff's Motion for Class Certification and briefs and appendixes in support (ECF Nos. 190–91, 193), Hirsch's reply brief and appendixes (ECF No. 214–15, 218), and Defendants' Answer and

Affirmative Defenses to Plaintiff's Amended Class Action Complaint and Counterclaim (ECF No. 43).[1] Having reviewed the motion, briefing, pleadings, evidence, record, and applicable law, the Court finds that Hirsch's Motion for Class Certification (ECF No. 177) should be **DENIED**.

## BACKGROUND

### A.    The TCPA framework

Unwanted telemarketing calls cause annoyance, inconvenience, and frustration. "Telemarketing calls are also intrusive, . . . interfere with [consumers'] lives, tie up their phone lines, and cause confusion and disruption on phone records." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir.), *cert. denied*, 140 S. Ct. 676 (2019). Congress recognized the problem and, in 1991, passed the TCPA. 47 U.S.C. § 227. The TCPA created the national do-not-call list (NDNC), regulations that require companies to create internal do-not-call lists (IDNC), and a private right of action against companies that call residential phone numbers on either list. *Id.* For each prohibited call, the TCPA awards an individual $500. *Id.* § 227(c)(5)(B).

### B.    Defendants' Business

These laws form a guidepost for any business that uses telephone solicitations such as Defendants. USHG is an insurance holding company and does not market, sell, or

---

[1]Also before the Court are Defendants' Motion to Supplement the Record Regarding Their Opposition to Plaintiff's Motion to Certify Class, and Incorporated Memorandum of Law (ECF No. 344) and Hirsch's Motion and Incorporated Memorandum of Law for Leave to File Supplemental Authority (ECF No. 365) ("Motions for Leave"). Having considered the Motions for Leave, the Court finds that they should be and hereby are **DENIED.**

underwrite any insurance products. Defs.' Mot. Cert. Appx. 1398.  USHA is USHG's wholly owned subsidiary and a licensed insurance agency. *Id*. USHA contracts with Independent Insurance Advisors (Agents) who work exclusively for USHA to solicit personal health insurance to consumers nationwide. Pl.'s Class Cert. Appx. at 65–81. The Agents work under contractors acting as "Regional Leaders," who are themselves overseen by USHA. Pl.'s Class Cert. Appx. at 11–13. However, those Regional Leaders oversee and help their Agents according to their discretion, and the Agents freely perform the job as they want. Defs.' Class Cert. Appx. at 50–51. Through these channels, USHA holds sales calls with its agents, provides sales information, and assists Agents with TCPA compliance. Pl.'s Class Cert. Appx. at 11–13. USHA's TCPA assistance comprises training, regular emails containing new numbers for USHA's IDNC list, and occasional scrubbing of phone numbers against the NDNC and USHA's IDNC. *Id.*; Def.'s Class Cert. Appx. 47, 745–50. Over the last six years, USHA contracted with more than 20,000 Agents who have made telemarketing calls on USHA's behalf numbering in the "billions." Defs.' Class Cert. Appx. 116; Pl.'s Class Cert. Appx. 49.

USHA's Agents do not generally make "cold calls" to random numbers, but instead call "leads." In the industry, "leads" refer to individuals who have expressed interest in a product. Leads can be developed through referrals, networking, and advertisements. Defs.' Class Cert. Appx. at 63. Agents also obtain leads from "lead vendors." Defs.' Class Cert. Appx. at 44–47, 108–16, 120–21. These "lead generation vendors" target specific groups, such as small-business owners, and ask if those individuals would be interested in speaking with a sales agent. *Id.* If the individual consents to be contacted, then the lead-generation

company sells that lead. *Id.* USHA buys leads from lead vendors, but of total leads, those leads only account for about two percent. Defs.' Class Cert. Appx. at 44. The vast majority of leads are either bought by Regional Leaders, bought by individual Agents, or developed from other sources.

## C.   Hirsch and the allegedly prohibited calls

Hirsch is a real-estate agent from Maryland, and like many real-estate agents, he uses his cell phone for business, personal, and residential uses. Defs.' Class Cert. Appx. at 6–16, 1622–82. In 2003, Hirsch registered his cell phone on the NDNC. Pl.'s Mem. Supp. Mot. Class Cert. at 29. But for the past few years, he advertised his business with his cell phone number and has even taken partial tax deductions for his cell phone. Defs. Class Cert. Appx. at 1261–1381, 1396–97, 1400–1403, 1618–20, 1622–1749, 2914–2917, 3520. In early 2017, Hirsh and his friend Max Maccoby, a lawyer, developed a plan to profit through the TCPA. Defs.' Class Cert. Appx. at 5, 22, 2883–2890. Hirsch logged any telemarketing calls he received, and Maccoby reviewed the log for potential litigation. *Id.* Through this scheme, Hirsch learned to feign interest to elicit the caller's company. Defs.' Class Cert. Appx. at 17. This plan spawned other TCPA actions. Defs.' Class Cert. Appx. at 28; 2883–2890.

On November 10, 2017, a lead-generation vendor—called Dosys, a nonparty—called Hirsch's cell phone and asked if he was interested in buying health insurance. He was not, but he said he was and scheduled a call with an USHA Agent. Defs.' Class Cert. Appx. at 17. Three days later, at the scheduled time, an USHA Agent called Hirsch. After

confirming the call was from USHA, Hirsch promptly asked to be placed on USHA's IDNC list, which he was. *Id.*

This pattern repeated three more times. Pl.'s Amend. Class Action Cmpt. at 15–16, ECF 42; Defs.' Class Cert. Appx. at 23, 26. In May 2018, Dosys called Hirsch again, and Hirsch scheduled another appointment for a USHA Agent to call him. The Agent called him, and Hirsch asked to be placed on USHA's IDNC list. Two months after that, in July 2018, the same pattern repeated. And again in November 2018. Pl.'s Brief in Supp. of Cert. at 29. There were, however, other calls that did not fit this pattern. On December 1, 2017, Hirsch received a call from someone he alleges identified as Jim White with USHA, but Defendants deny this. Pl.'s Amend. Cmp. at 15–16. And on August 13, 2018 and December 18, 2018, Agents sent Hirsch text messages. *Id*.

## D.    Hirsch sues and moves for class certification

On March 29, 2018, Hirsch sued Defendants for violating TCPA and Maryland's state-version TCPA and requested the Court to certify the case as a class. On May 2, 2020, Hirsch moved to bring claims on behalf of all members of a putative class and subclass who received calls from Defendants in violation of the TCPA and Maryland TCPA. *Id*. at 17–20. Specifically, Hirsch moves to certify a class consisting of:

> All natural persons in the United States who, from March 29, 2014 to the date of the Court's Order granting class certification: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of USHealth more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do-Not-Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with USHealth's Internal Do-Not-Call list.

Pl.'s Mem. Supp. Mot. Class Cert. at 30. Although not a final tally, Hirsch estimates that the IDNC class (subsection (b) in the definition) includes over 16,000 members; and the NDNC class (subsection (a) in the definition)—for just one region of the country—includes over 75,000. *Id.* at 36. It is unclear how many members, if any, fall into both definitions, but given that NDNC class now only includes one region, the class will likely exceed 100,000 members.

Additionally, Hirsch seeks to certify a subclass who are Maryland residents based on claims arising under the Maryland TCPA:

> The "Maryland Subclass," consisting of all natural persons who are members of the Class who are residents of the State of Maryland.

*Id* at 30.

## LEGAL STANDARD

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). In this case, Hirsch "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, and so on." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545–46 (5th Cir. 2020) (internal quotations omitted) (emphasis in original).

Rule 23 requires the district court to put the Rule's application through "rigorous analysis." *Id.* This means that "Rule 23 does not set forth a mere pleading standard" and often requires the district court "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350–51. The Court cannot take the parties at their word, but instead must review the evidence and consider the parties' claims and defenses. *Id.* Indeed, the Court's mandated duty is to

> understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination. If some of the determinations cannot be made without a look at the facts, then the judge must undertake that investigation.

*Chavez*, 957 F.3d at 546. Having performed this rigorous analysis, the district court must then "detail with specificity its reasons" behind its conclusions, "explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses," and "articulat[e] why the issues are [or are not] fit for classwide resolution." *Id.* This is certainly no rubber-stamp procedure.

"This rigorous analysis mandate is not some pointless exercise," but protects due process of law. *Id.* at 547. "It is no secret that certification can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *Id.* Moreover, after certifying a class, any judgment in this case will bind absent class members for good or ill. *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 454 (5th Cir. 2016). Thus, the "existence of a class fundamentally alters the rights of present and absent members." *Chavez*, 957 F.3d at 547. For these reasons, the Court's analysis commands an exacting and laborious effort.

7

**ANALYSIS**

"To obtain class certification, parties must satisfy Federal Rule of Civil Procedure 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020) (internal brackets omitted) (citations omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Hirsch argues for certification under Rule 23(b)(3).

Defendants oppose class certification on numerous grounds, arguing that Hirsch's proposed class does not satisfy the prerequisites under Rules 23(a) or 23(b)(3), that Hirsch lacks Article III standing to bring this lawsuit, and that Hirsch failed to comply with Local Rule 23.2. Defs.' Opp. to Class Cert., at 17–32. Because Hirsch failed to prove two of Rule 23(a)'s four prerequisites and the subclass requirements under Rule 23(b)(3), his motion to certify is hereby **DENIED.**

## A.    Hirsch has Article III standing

Standing must be decided before moving to the certification issue because, "if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). Defendants argue that Hirsch lacks standing because he did not suffer any injury. The typical injury in a TCPA case is the nuisance from the unwanted call. But Hirsch flipped the telephone solicitations into an opportunity to make money. Therefore, the calls did not harm Hirsch; they helped him—or so the argument goes.

The Court is not persuaded. Defendants rely on a single, non-binding authority that is distinguishable. *See Leyse v. Bank of Am., Nat'l Ass'n*, No. CV-11-7128, 2020 WL

8

1227410 (D.N.J. Mar. 13, 2020). In *Leyse*, the plaintiff worked as an investigator for a lawyer preparing TCPA claims, placed over twenty calls to the defendant, was paid for his time on the calls, and never asked to be placed on the defendant's IDNC list. *Id.* at *1–2. Under these facts, the District Court of New Jersey held that the plaintiff "welcomed such calls in his role as paid investigator . . . ." *Id.* at *4. But here, Hirsch was not compensated for his time on the calls, never called Defendants or their Agents back, and asked to be placed on both the NDNC and IDNC lists. And even if Hirsch may justifiably be called a "professional TCPA plaintiff," this designation does not strip away his Article III standing. *See e.g. Cunningham v. Rapid Resp. Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1194–96 (M.D. Tenn. 2017). Thus, Hirsch has standing.[2]

---

[2] Even if Hirsch has individual standing to bring this lawsuit, the Court must seriously question whether it has thus far been is a wise use of the Court's and parties' resources to pursue this action. As Abraham Lincoln sagely advised new lawyers over 150 years ago:

> Discourage litigation. Persuade your neighbors to compromise whenever you can. Point out to them how the **nominal** winner is often a **real** loser; in fees, expenses, and waste of time. As a peace-maker; the lawyer has a superior opportunity of being a good man. There will still be business enough.

Abraham Lincoln, LINCOLN'S NOTES FOR A LAW LECTURE, IN AMERICA'S LAWYER-PRESIDENTS: FROM LAW OFFICE TO OVAL OFFICE 146–47 (Norman Gross ed., 2004) (emphasis in original); *cf.* Thomas Jefferson, AUTOBIOGRAPHY (1821), *reprinted in* THOMAS JEFFERSON: WRITINGS 53 (Merrill D. Peterson, ed., 1984) (It is the trade of lawyers "to question everything, yield nothing, and talk [or write] by the hour.").

Indeed, this lawsuit is one of the most contentious the undersigned has encountered in his years on the Texas trial and appellate courts and now on the federal bench. The parties' filings are not only overly numerous, they are stacked full of inappropriate and inflammatory invective. Judge Mahon wisely observed after three decades on the federal bench, "name-calling and personal attacks, like those present in several of the parties' filings, do little to advance a party's position and only serve to cloud the real issues before the Court." *U.S. Fleet Servs. v. City of Fort Worth*,

**B.      Hirsch does not meet two of Rule 23(a)'s four prerequisites**

Rule 23(a) imposes four prerequisites on class certification. The prerequisites are as follows:

>   (1)      the class is so numerous that joinder of all members is impracticable;
>
>   (2)      there are questions of law or fact common to the class;
>
>   (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>   (4)      the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These four threshold conditions are "commonly known as numerosity, commonality, typicality, and adequacy of representation." *Flecha*, 946 F.3d at 766 (quotation omitted). Defendants challenge Rule 23(a)(4)'s adequacy requirement, Rule 23(a)(2)'s commonality requirement, and Rule 23(a)(3)'s typicality requirement. The Court addresses each challenged element.

1.  Adequacy

Hirsch has proven adequacy of representation. To comply with Rule 23(a)(4)'s requirements, the movant must show that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement is met when: (1) class counsel prosecutes the action zealously and competently; (2)

---

141 F. Supp. 2d 631, 634 (N.D. Tex. 2001) (Mahon, J.). Judge Mahon's wisdom applies with the same force in this case.

representative parties are willing and able to control the litigation and protect absentee class members' interests; and (3) there are no conflicts of interest between the representative parties and the class members. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017). Rule 23(a)(4)'s adequacy inquiry "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

With respect to Rule 23(a)(4), Hirsch claims that he meets the adequacy requirement for the following reasons:

> (1) his claims are representative of the proposed class;
>
> (2) he is fully committed to the class;
>
> (3) he has no conflicts with the class;
>
> (4) he is a sophisticated representative; and
>
> (5) he has selected proposed class counsel who are accomplished class counsel and well suited to assume the financial responsibility to prosecute this litigation.

Pls.' Mem. Supp. Mot. Class Cert. at 40 (quotations omitted). Defendants counter that Hirsch fails to satisfy this requirement because (1) Hirsch and his counsel failed to timely move for class certification in compliance with Local Rule 23.2 and (2) Hirsch's close association with one of the attorneys of record, Max F. Maccoby, creates a conflict rendering both inadequate. Defs.' Opp. to Class Cert., at 17–32.

Although concerning, Hirsch's failure to comply with Local Rule 23.2 does not— *per se*—deem counsel inadequate; instead, it merely "bears strongly on the adequacy of the representation." *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.

1981). Similarly, although Hirsch's relationship with Mr. Maccoby merits review, Defendants fail to explain how that relationship creates a conflict of interest for counsel or as between Hirsch and the putative class. Accordingly, taken as a whole, the Court finds that Hirsch satisfies the adequacy requirement for the reasons set forth in his brief.

2. Commonality

Rule 23(a)(2) states that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Before 2011, courts sometimes described the commonality threshold as "not high." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). But in 2011, the Supreme Court "heightened the standards for establishing commonality under Rule 23(a)(2)." *M.D. ex rel. Stukenberg*, 675 F.3d at 839 (*citing Dukes*, 564 U.S. at 350).

Current law requires Hirsch to show that there is at least one common question that will resolve a central issue in each class member's claims. "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Thus, common questions do not cut it—the common questions must generate common answers that resolve issues central to the dispute. Under this heightened standard, the Court must review both the similarities among class members' claims and the dissimilarities. *Stukenberg*, 675 F.3d at 842–44; *see also Dukes*, 654 U.S. at 351 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."); *Chavez*, 957 F.3d at 547–49.

12

In addition, "district courts must only certify class actions filed under the TCPA when" the plaintiff has advanced "a viable theory employing generalized proof to establish liability with respect to the class involved." *Gene and Gene*, 541 F.3d at 328.[3] If a central issue turns on evidence specific to each class member, then class-wide resolution is not possible. *Id.* Generalized proof may not require evidence to come from a single source, but that is the likely method. *Id.* Whatever the method, the plaintiff must advance a theory that can establish liability on a classwide basis. *Dukes*, 654 U.S. at 356.

Turning to the proposed class, Hirsch offers three common questions of law and fact. L.R. N.D. TEX. 23.2 (requiring briefs accompanying a motion to certify to set out specific factual allegations concerning the "questions of law and fact that are common"). They are as follows:

- USHealth's Agents (a) completed more than one telephone solicitation call (b) in a 12-month period (c) more than 31 days after the landline, wireless, cell or mobile telephone number to which the call was placed was registered with the NDNC;

- USHealth's Agents (a) completed one or more calls (b) to a landline, wireless, cell, or mobile telephone numbers; (c) which was requested to be registered on USHealth's IDNC; and

- USHealth is vicariously liable for those calls; and the violations were knowing or willful.

---

[3]Although this case, which pre-dates *Dukes*, analyzes Rule 23(b)'s requirements, the Court holds that the principles supporting predominance cited in the case apply equally to commonality.

Pl.'s Mem. Supp. Mot. Class Cert. at 37, ECF 176. While no doubt these are common *questions*, Hirsch must show that a class action would "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original).

Hirsch's alleged commonalities fail that test. Even if these questions are answered in the affirmative, for the reasons described below, they would not establish Defendants' liability. *See Gene and Gene*, 541 F.3d at 328 (requiring plaintiff to advance theory capable of establishing "*liability* with respect to the class") (emphasis added). And if liability is not established, these common questions are not apt to drive the litigation's resolution. *See Dukes*, 564 U.S. at 350. "Rule 23(a)(2) requires that all of the class members' claims depend on a common issue of law or fact whose resolution will *resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Stukenberg*, 675 F.3d at 840 (emphasis in original). Hirsch's alleged common questions ignore the crucial questions that would drive resolution.

To determine the crucial questions resolving liability, it is "necessary for the court to probe behind the pleadings" and dig into the "merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51. After clearing away the superficial questions, the case's substance is not whether Defendants made calls, but were those calls prohibited? As Defendants point out, Hirsh's common questions ignore these issues. Then, if the calls were prohibited, are Defendants vicariously liable? Hirsch poses this question but, as described below, fails to advance a generalized theory of proof.

Regarding the prohibited nature of the calls, Hirsch's putative class suffers from the same flaw as the putative class in *Wal-Mart Stores, Inc. v. Dukes*. In *Dukes*, the plaintiffs

alleged Walmart's discretionary employment promotions discriminated against women. *Id.*
at 353. The plaintiffs moved to certify the class, alleging the common question of "whether
Wal-Mart's female employees nationwide were subjected to a single set of corporate
policies . . . that may have worked to unlawfully discriminate against them in violation of
Title VII." *Id.* at 347. But this question was superficial. The crucial question was specific
to each class member: what reasons lie behind each woman's failure to be promoted? As
Justice Scalia aptly noted, the plaintiffs "sue[ed] about literally millions of employment
decisions at once. Without some glue holding the alleged *reasons* for all those decisions
together, it will be impossible to say that examination of the class members' claims for
relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.*
(emphasis in original). The plaintiffs ignored that crucial question, so the district court's
certification was reversed.

Likewise, Hirsch's alleged common questions ignore the crucial questions. These
un-asked questions are the real issues, and, like the central contention in *Dukes*, nothing
holds the answers to these questions together. This case's crux centers around the
circumstances of each call. The issues that will drive the resolution of this case are as
follows:

(a)     Whether the 100,000 or so class members consented to the calls;

(b)     whether the phone numbers were residential; and

(c)     whether Defendants are vicariously liable for the calls.

But a class action would not generate common answers to these questions. Each of these
questions defies class resolution because they cannot be answered from a single source.

15

*See Gene and Gene*, 541 F.3d at 327–29. Instead, the questions require individualized evidence, which "leads to the conclusion that myriad mini-trials cannot be avoided." *Id.* at 329.

The result is that Hirsch failed to establish a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As explained below, Hirsch failed to advance a viable theory of generalized proof to establish liability with respect to these three crucial questions.

     *a.* <u>Consent</u>

The TCPA does not prohibit solicitations if an individual consented, but Hirsch failed to advance a theory of generalized proof that could establish consent for all class members. *Gene and Gene*, 541 F.3d at 328. Under the TCPA, consent takes many forms.[4] For instance, there is no liability when there is an "established business relationship," such as a prior purchase, subscription, application, or inquiry for information. 47 C.F.R. § 64.1200(c)(2)(ii), (f)(5), (f)(14). Also, the TCPA excepts solicitations where there is a prior personal relationship, such as a "family member, friend, or acquaintance." *Id.* § 64.1200(c)(2)(iii), (f)(16). And last, the residential number's owner may provide express

---

[4] Hirsch correctly states that consent is an affirmative defense. But that is irrelevant. *Gene & Gene*, 541 F.3d at 318. Because the consent affects the class-action prerequisite of commonality, the Court must put the evidence under the examination of rigorous analysis and "probe behind the pleadings before coming to rest on the certification question . . . ." *Dukes*, 564 U.S. at 350–51.

consent through "email, website form, text message, telephone keypress, or voice recording." *In re Rules & Regs. Implementing the Tel. Cons. Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012).

Consent often creates an obstacle to TCPA class certification. In *Gene and Gene*, a TCPA consent case, the Fifth Circuit noted that, although TCPA cases involving consent are not *per se* unsuitable for class resolution, certification hinges on each case's unique facts. *Gene & Gene*, 541 F.3d at 328. There, the defendant submitted evidence that it developed its leads from various sources, including some purchased from lead-generation vendors. *Id.* at 328–29. The undisputed evidence showed the defendant obtained at least some of the solicited phone numbers by consent. *Id.* at 328. Since the phone numbers originated from multiple sources, consent could not be proven by general evidence—each number had its own story. *Id.* at 329. The Fifth Circuit therefore reversed the district court's certification. *Id.*; *see also, e.g.*, *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291–92 (7th Cir. 2018); *Sandusky Wellness Cnt., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 469 (6th Cir. 2017); *Ung v. Univ. Acceptance Corp.*, 319 F.R.D. 537 (D. Minn. 2017) (holding "the issue of consent is unique to each individual class member."); *cf. Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) (holding commonality existed where defendant obtained phone numbers from single source and consent could be determined from common evidence).

Similarly, Hirsch offers no way to establish consent on a classwide basis. Like the defendant in *Gene and Gene*, USHA obtained *some* of the numbers by consent. Defs.' Class Cert. Appx. at 565–743. Defendants and Defendants' Agents used various methods

to obtain consent, including personal relationships, existing business relationships, explicit requests, and multiple lead-generation vendors. *Id.* at 63, 192. And even from leads Defendants bought from lead-generation vendors, there is evidence that at least some of those were screened or verified for TCPA. *Id.* at 115. Accordingly, even the purchased leads defy generalized proof. Like the defendants in *Gene and Gene*, Defendants' obtained phone numbers from numerous sources—preventing any attempt to show consent from a single source or "in one stroke."

Hirsch's attempt to resolve this difficulty fails. Hirsch's expert removed calls coded to past customers (because they would have an "established business relationship"), but Hirsch did not account for the numerous other methods Defendants used to obtain consent. One unaccounted for consent category likely includes Hirsch: each time he scheduled an appointment, he made a "subscriber's inquiry." *See Hamilton v. Spurling*, No. 3:11-cv-00102, 2013 WL 1164336, *10 (S.D. Ohio Mar. 20, 2013) (By "setting up an appointment to meet [the defendant], Mrs. Hamilton [the plaintiff] created an 'established business relationship' with [the defendant]."). Hirsch was called, initially, by a nonparty to schedule a call with an Agent. Defendants' Agent called at the scheduled time. This is a fact situation unique to Hirsch. Other class member's consent will have their own story—defying any generalized proof. Moreover, Defendants submitted substantial evidence, albeit disputed, that their solicitations only target leads who have consented or are exempt from the TCPA (such as a business). Defs.' Class Cert. Appx. 108–16. From the evidence presented, the Court finds that at least some individuals consented to the calls, and also that no single source of evidence determines which individuals consented.

18

The dissimilarities among class members' consent, or lack of consent, prevent class certification. Hirsch's failed to advance a viable theory employing generalized proof to establish liability with respect to the claim involved. As a result, there is no commonality.

### b. *Residential Number*

Hirsch's claims require that Defendants called a "residential telephone," but Hirsch failed to advance a theory of generalized proof that could establish each class member's phone number's residential status. The TCPA creates a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). One relevant regulation prohibits unsolicited calls to "a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." 47 C.F.R. § 64.1200(c)(2). Another prohibits "call[s] for telemarketing purposes to residential telephone subscribers . . . ." *Id.* 64.1200(d). In both cases, the number called must be "residential."

Although the TCPA does not define "residential telephone subscriber," the Court agrees with those courts that have required plaintiffs to show the number called was used for "residential purposes." *See e.g.*, *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 655 (W.D. Tenn. 2020). Defendants suggest that cell phones, as a matter of law, cannot be "residential subscribers." *See Cunningham v. Politi*, No. 4:18-cv-00362-ALM-CAN, 2019 WL 2517085, *4 (E.D. Tex. Apr. 30, 2019). But the Court disagrees with this isolated authority, and instead follows common sense and the greater weight of authorities in making this a fact question for trial. *See e.g.*, *Stevens-Bratton*, 437 F. Supp. 3d at 655–

56 (collecting cases); *Riley v. California*, 573 U.S. 373, 385 (2014) (stating cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.").

This question, however, is not susceptible to generalized proof. The inquiry is fact intensive. Hirsch supplies a good example. He uses his cell for both business and personal use. His business advertisements state his cell number. The past few years, he has deducted his cell phone costs as a business cost. Whether or not Hirsch's cell phone is a residential number is not before the Court. But this demonstrates the inquiry's fact-specific nature. *See Mattson v. Quicken Loans Inc.*, No. 3:18-cv-00989-YY, 2019 WL 7630856 (D. Org. Nov. 7, 2019) (granting summary judgment that cell phone use was not residential). If this case goes to trial, the Court expects this issue to be central.

And Hirsh must show not only that his number is residential, but also that each alleged class member's number is residential. Hirsch attempts to provide generalized proof by culling out phone numbers listed as a business in a commercial database. Hirsch's expert compared the numbers Defendants called against a database of business numbers, removed the business numbers from the alleged class, and submitted the remaining, allegedly residential, numbers. But this method is unreliable. Of the remaining numbers, Defendants' expert opined that a significant amount were still business numbers and supplied specific examples. Moreover, at least one database identifies Hirsch's number as a "business." This is in no way dispositive of the issue, which proves the point. No single source answers this question for each phone number. Each must be tested individually. Thus, resulting in a Herculean task at best.

In short, resolving each phone number's residential status requires a fact-intensive inquiry. And the burden to show the residential status is on Hirsch, who failed to advance a viable theory employing generalized proof to establish residential status and therefore liability. As a result, there is no commonality.

      *c. Vicarious Liability*

Hirsch correctly identifies this question as a potential commonality, but he fails to show the existence of common answers. Hirsch's failure dooms his claim because vicarious liability is necessary. Defendants themselves did not contact Hirsch or the class members; instead, the solicitations were made by non-parties. Defendants can still be liable under the TCPA if the calls were made "on behalf of" Defendants. 47 U.S.C. § 227(c)(5). This standard follows general agency principles. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014) (citing *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 28 (2013) (finding that a "seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers.")).

Under common-law principles of agency, whether vicarious liability exists depends on the principle's level of control over the agent. *Jones v. Royall Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018); *Chinitz v. NRT West, Inc.*, No. 18-CV-06100-NC, 2019 WL 4142044, *4–5 (N.D. Cal. Aug. 30, 2019). When moving to certify a class, "plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved." *See Gene and Gene*, 541 F.3d at 328. Failure to show that each class member was called by the defendant's agent kills certification. *Chinitz*, 2019 WL 4142044,

21

*4–5. In *Chinitz*, the plaintiff sued NRT for TCPA phone calls and moved to certify a class. *Id.* NRT had multiple "sales associates," all of which called members of the putative class. *Id.* The plaintiff provided some evidence of the relationship between NRT and the sales associate that called him, but he provided "no evidence of a broader practice by NRT's associates." *Id.* at *5. Given the paucity of evidence, the defendant "may exert different levels of supervisory control over its associates, such that it is vicariously liable for the actions of some associates, but not others." *Id.* The result was that the plaintiff failed to show that common answers exist to vicarious liability, and the class certification was denied. *Id.*

Similarly, the path from USHA to each residential phone number is unique. The variety of potential relationships thwarts any "generalized proof to establish liability with respect to the class involved . . . ." *Gene and Gene*, 541 F.3d at 328. The calls forming the basis of the putative class came from over 20,000 Agents, each with a different relationship to USHA. The potential differences in control prove fatal to certification. Like the plaintiff in *Chinitz*, Hirsch may be able to show that each Agent who contacted him did so "on behalf of" Defendants, but he cannot show that every person who contacted every class member had such a relationship. *See Chinitz*, 2019 WL 4142044 at *5 ("Chinitz provides no evidence of a broader practice by NRT's associates; he only submits evidence of Christensen's practice."). That requires individualized evidence of each potential agency relationship, which Hirsh did not provide. The evidence shows that each Agent engages with USHA in differing degrees. Some Agents work from an office with many Agents, and other Agents work from their homes. *See e.g.*, Defs.' Class Cert. Appx. at 34. Each

Regional Manager may take different levels of oversight and control. And then there are the lead-generation vendors. They may work directly with Defendants, but also with Regional Managers and individual Agents. *Id.* at 46. Each relationship, and Defendants' control over each relationship, could be different.

Hirsch counters with two arguments that the Court finds unavailing. *First*, Hirsch claims USHA's arbitration agreements with individual consumers prohibit it from disavowing an agency relationship with the Agents because USHA "cannot invoke an agreement and claim the benefit of his status under it while attempting to escape its consequences." *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002). This is a correct statement of law but inapplicable. Hirsch confuses contracts. USHA seeks to enforce arbitration agreements with individual consumers. Separately, it argues that its agreements with Agents do not create vicarious liability. This is not contradictory—they are separate contracts. These two arguments peacefully coexist.

*Second*, Hirsch states that *Chinitz* is distinguishable because it relied on apparent authority, not, like here, standardized contracts. Pl.'s Reply for Class Cert. at 15, ECF 214. It is true that each Agent signed the same contract, but that contract specifies an independent-contractor relationship and does not claim any control over the Agent. Defs.' Class Cert. Appx. at 32–33, 42, 51, 61, and 1008. Therefore, the contract does not create actual authority, and Hirsch must also rely on apparent authority. And, as stated above, Hirsch did not advance a viable theory employing generalized proof to establish apparent authority with respect to the class involved. *Gene and Gene*, 541 F.3d at 328. The potential variety of relationships defies classwide resolution.

23

3. <u>Typicality</u>

Even if Hirsch's claim satisfied commonality, it would still fail the test for typicality because circumstances unique to Hirsch will likely become the litigation's focus. Hirsch, as the movant, has the burden to show typicality. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–81 (5th Cir. 2001). Much of the commonality analysis applies equally to typicality because, as the Supreme Court noted, the "commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 350, n. 5.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018) (internal quotations omitted). Although the class representative's claim does not need to be factually identical with the class members, "class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* Specifically, a defense or counter claim defeats typicality if it is likely to become the litigation's focus. *See e.g.*, *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–301 (3rd Cir. 2006); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2nd Cir. 1990); *Bridge*, 294 F. Supp. 3d at 1034; *Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999) ("Where unique defenses against a named plaintiff exist, the Court must consider the potential danger that the attention to this individual defense might harm the class.").

24

The Court first notes that, in non-legal terms, Hirsch's claims and defenses are not typical. Hirsch, unlike the presumably typical member, scheduled appointments to speak with Defendants' Agents solely to request placement on their IDNC list. Defs.' Class Cert. Appx. at 17, 1408. This pattern repeated four times: a non-party called Hirsch; Hirsch then **agreed** to speak with Defendants' Agent and even scheduled a specific time; when an Agent called, Hirsch requested not to be called again. Under Hirsch's pleaded facts, Defendants would never have contacted Hirsch **but for** his request. This is highly atypical.

Hirsch's atypical behavior leads to an atypical case. Defendants have brought counterclaims against Hirsch for fraud. Defendants allege Hirsch misrepresented his interest in Defendants' product solely to bring this case. There is nothing wrong or prohibited in such a deliberately contrived lawsuit. But, in this case, does it cause "a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [him]"? *Gary Plastic*, 903 F.2d at 108. The Court believes so. In this case's trial, Hirsch will play as much defense as offense. This involves more than just defending the counterclaims—although that is a consideration. Hirsch created the case's factual foundation by scheduling the calls. But for his actions, there would not be a case. Also, his records and behavior make his status as a professional plaintiff unavoidable. For some potential jurors, this may be decisive.

Two additional issues also separate Hirsch from the putative class. *First*, Defendants note the that Hirsch's claim are atypical of any class members who may have agreed to arbitration. *See Avilez v. Pinkerton Gov't Servs. Inc.*, 596 Fed. Appx. 579 (9th Cir. 2015) (holding plaintiff atypical when class members had potential defenses unavailable to

25

representative). *Second*, Hirsch and one of his lawyers are neighbors and friends. Together, they worked out a plan to bring TCPA-enforcement actions like this one. Again, this is atypical. Although these issues alone would not defeat typicality, the confluence of these and the other issues create a class representative whose unique issues threaten the absent class members.

Hirsch correctly notes that a counterclaim does not defeat typicality *per se*. *See Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001). That is not the Court's reasoning. Instead, the Court finds that Hirsch's situation and behavior—i.e., his phone number's residential status, his scheduling of calls, and his relationship with class counsel—"raise[] a significant danger that this litigation will focus on issues and defenses unique to" Hirsch. *Bridge*, 294 F. Supp. 3d at 1034.

For these reasons, the Court holds that Hirsch's claims and defenses are atypical of the class members' claims and defenses.

## C.   Hirsch did not prove Rule 23(b)(3)'s requirements

Although Hirsch failed to satisfy two of Rule 23(a)'s requirements, even if he had, he must also satisfy one Rule 23(b) requirement. He has not. Hirsch moved to certify under Rule 23(b)(3), which has two requirements:

1) "common questions must predominate over any questions affecting only individual members"; and

2) "class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy."

26

*Cruson v. Jackson Nat't Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020). Hirsch failed to show that common questions predominate over individualized questions. Accordingly, the Court does not address the superiority element.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 253. "At bottom, the predominance inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Id.* (internal quotations omitted). An individual question, which can derail class certification, is "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations omitted); *see also Gene and Gene*, 541 F.3d at 326.

This inquiry overlaps with the commonality requirement of Rule 23(a)(2) but is "far more demanding." *Gene and Gene*, 541 F.3d at 326. Like the commonality analysis, the court must "go beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law"; "identify the substantive issues that will control the outcome, assessing which issues will predominate"; and then determine whether those issues are common to the class, or if the class will "degenerate[] into a series of individual trials." *Cruson*, 954 F.3d at 254. And "district courts must only certify class actions filed under the TCPA when" the plaintiff has advanced "a viable theory employing generalized proof to establish liability with respect to the class involved." *Gene and Gene*, 541 F.3d at 328.

In this case, individual questions predominate over common questions. As noted above, only evidence specific to each class member's consent and phone number can determine liability. Also, only evidence specific to each Agent can establish Defendants' vicarious liability. These issues prevent a finding of commonality and, for the same reasons, prevent Hirsch from meeting the "even more demanding" element of predominance. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

This conclusion results from considering what a trial would look like. *Gene and Gene*, 541 F.3d at 326 (stating that the "predominance inquiry requires a court to consider how a trial on the merits would be conducted if a class were certified."). Hirsch and his behavior would permeate the trial. Although Hirsch will focus on Defendants' TCPA training, scrubbing policies, and lead-gathering methods, everything falls back to Hirsch's behavior that created the dispute—Hirsch requested and scheduled four of five alleged calls. This is not simply a case brought by a professional plaintiff, although it may be that too. Hirsch caused (arguably solicited) Defendants' Agents to call him. The Court does not consider whether this meets fraud's prima facie elements, but factually, Hirsch's acts form this case's inescapable foundation.

Hirsch claims that common liability questions and evidence predominate. But Hirsch failed to show how common liability questions predominate. He could prove each component of his class's description—that Defendants "(a) completed more than one telephone solicitation call, (b) in a 12-month period, (c) more than 31 days after the landline, wireless, cell or mobile telephone number to which the call was placed was registered with the NDNC"—and still not prove liability. Pl.'s Mem. Supp. Mot. Class

28

Cert. at 43–44. Hirsch would not have shown that the numbers were residential, nor could the Court determine that no class members consented. Those questions require "evidence that varies from member to member." *Tyson Foods*, 136 S. Ct. at 1045. The fact of the calls may not even be disputed because the evidence comes from Defendants' records. Instead, Defendants' defenses will focus on residential status, consent, vicarious liability, and other individualized issues. Thus, individual issues will likely predominate.

Nor would the evidence be common. Much of the evidence supporting liability— which includes evidence of each class member's residential status and consent—is not common to the class. Hirsch failed to advance a theory of generalized proof that establishes liability. Only evidence specific to each class member and each call answers these questions. *Tyson Foods*, 136 S. Ct. at 1045. Hirsch relies heavily on USHA's Agents customer-management software as though it were a call log. But it is not a call log. Defs.' Class Cert. Appx. at 2940–41. In fact, this evidence does not even show that USHA's Agents called Hirsch. *Id.* He requires additional evidence to prove this. And if additional evidence is required to prove such a basic point for Hirsch, it is likely that additional evidence will be required to prove necessary facts for some of the other **100,000** class members. Inevitably, "this leads to the conclusion that myriad mini-trials cannot be avoided." *Gene and Gene*, 541 F.3d at 329. With the putative class numbering around 100,000 members, the "trial of this case would become this court's life work." *Rosen v. Chrysler Corp.*, no. 97-cv-60374-AA, 2000 WL 34609135, *16 (E.D. Mich. July 18, 2000); *cf.* Democritus, *quoted in* WEBSTER'S BOOK OF QUOTATIONS 128 (3d ed. 1992)

("One great difference between a wise man and a fool is, the former only wishes for what he may possibly obtain; the latter desires impossibilities.").

Because Hirsch failed to show that common questions predominate over questions only affecting individual members, he failed to satisfy Rule 23(b)(3). No amount of additional discovery or further rounds of lengthy motions would change this outcome.

## CONCLUSION

Based on the foregoing, the Court determines that Hirsch failed to meet his burden under Federal Rule of Civil Procedure 23(a)(2), 23(a)(3), and 23(b)(3). Accordingly, the Court finds that the Motion for Class Certification (ECF No. 177) should be and hereby is **DENIED**.

**SO ORDERED** on this **7th day** of **December, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE